**IT IS ORDERED as set forth below:**

**Date: January 19, 2021**



_____
**Lisa Ritchey Craig
U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **IN THE MATTER OF:** | : | **CASE NUMBER** |
| | : | |
| DAVID L. SMITH, JR., | : | 17-67324-LRC |
| | : | |
| | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 7 OF THE |
| DEBTOR. | : | BANKRUPTCY CODE |

### ORDER

Before the Court is a *Motion for Expedited Comfort Order Confirming Jurisdiction of Superior Court to Conduct Criminal Contempt Proceedings Against Debtor* (Doc. 227) (the "Motion") filed by Britton McLeod and D. Hayden Smith ("Movants") on December 22, 2020. On January 7, 2021, the Court conducted a hearing on the Motion (the "Hearing") where counsel for Movants and counsel for David L. Smith, Jr. ("Debtor") appeared. This matter constitutes a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. §§ 157(b)(2)(A); 1334.

I.  Background

Through the Motion, Movants explain that they are plaintiffs in pending litigation against the Debtor in the Superior Court of Fulton County (*Britton McLeod and D. Hayden Smith vs. David L. Smith Jr. et al.*, Civil Action File No. 2015CV26052 (the "State Court Litigation")). On May 23, 2017, the judge presiding over the State Court Litigation entered an *Order on Motion for Emergency Relief and Management of Party Communications* (the "State Court Order") which provides that:

> insofar as the parties and attorneys involved in the litigation are subject to the Court's authority, and pursuant to its inherent power to manage the conduct of litigation, communications between parties and attorneys in the above styled case and the related action pending before the Court shall proceed as follows: All parties are represented by counsel. Parties and attorneys shall only communicate with opposing parties and attorneys through counsel. Any party wishing to communicate directly to an opposing party shall go through counsel to seek permission for such communications. No communications with opposing parties or their attorneys shall be initiated directly by any litigant unless express permission to communicate directly is obtained in writing in advance of such communications. The term communications shall include phone calls, texts, e-mails and social media posts, as well as in person contacts.

*See* Doc. 227 at 7. Debtor apparently violated the terms of the State Court Order and, on June 23, 2017, the state court entered an *Order on Petitioner's Motion for Contempt Regarding Order on Party Communication* (the "Contempt Order") which provides that Debtor "was found in willful contempt of the May 23, 2017 Order" and, as a result, he was ordered to "be incarcerated for a period of 48 hours in the Fulton County Jail." *See id.* at 8.

On October 3, 2017, Debtor filed a petition for voluntary relief under Chapter 7 of the Bankruptcy Code (the "Petition Date"). After the Petition Date, however, Movants assert that Debtor continued to violate the State Court Order by "repeatedly contact[ing], threaten[ing] and harass[ing]" Movants, Movants' spouses, and Movants' counsel. Thus, Movants filed additional motions for contempt in the State Court Litigation, one in February of 2020 and the other in September of 2020, seeking further criminal contempt sanctions against Debtor. *See id.* at 9-38 (the "Contempt Motions"). Attached as exhibits to the Contempt Motions are several emails sent from Debtor to Movants and other parties of the State Court Litigation; the dates of these emails range from February 5, 2019, to July 12, 2020.

On December 17, 2020, the state court entered an *Amended Rule Nisi* setting a hearing on Movant's Contempt Motions for December 21, 2020 (the "Contempt Hearing"). *See id.* at 40. However, prior to the Contempt Hearing, Debtor filed a *Response to Amended Rule Nisi*, contending that prosecution of the Contempt Motions may violate the automatic stay. *See id.* at 43-50. Debtor also filed a *Notice of Filing of State Court Amended Rule Nisi Hearing and Reservation of Rights* (Doc. 226) (the "Notice") in this bankruptcy case on December 21, 2020, which also asserts that the prosecution of the Contempt Motions in state court "constitute a willful violation of the automatic stay and may also violate other provisions of the Bankruptcy Code." The filing of the Notice prompted Movants to file the Motion, wherein Movants argue that their Contempt Motions in state court constitute

3

criminal contempt proceedings which are not subject to the automatic stay. Thus, Movants request that the Court enter a comfort order confirming the state court's jurisdiction to conduct criminal contempt proceedings against Debtor for violation of the State Court Order.

At the Hearing, Debtor opposed the Motion and argued that the Contempt Motions were brought by movants solely for the purpose of harassing Debtor and that the automatic stay prevents such actions even if the contempt proceedings are criminal in nature. In support of this argument, Debtor cited three cases during oral argument at the Hearing: *International Distribution Centers, Inc. v. Walsh Trucking Co. Inc.*, 62 B.R. 723 (S.D.N.Y. 1986); *In re Rook*, 102 B.R. 490 (Bankr. E.D.V.A. 1989); and *In re Fridge*, 239 B.R. 182 (N.D. Ill. 1999). Because no response to the Motion had been filed prior to the Hearing, the Court asked Debtor's counsel to file a brief laying out the cited cases and her argument as to why the automatic stay applies to the contempt proceedings in the State Court Litigation. Accordingly, on January 10, 2021, Debtor filed a response to the Motion (Doc. 230) (the "Response") which does not cite any of the cases mentioned at the Hearing, but instead cites the Fifth Circuit case of *In re Steward*, 571 F.2d 958 (5th Cir. 1978) for the proposition that "in situations where a contempt action is pursued to uphold a court order and does not seek to enforce a monetary judgment, pursue collection efforts[,] or harass a defendant[,] such a contempt order would not violate the automatic stay." Debtor also argues that "the interpretation of a contempt order by a bankruptcy court depends on the

4

facts and circumstances of each individual case" and, thus, contends that the Court should "review and analyze the facts and circumstances giving rise to the situation." To that end, Debtor argues: (1) that the State Court Order does not prohibit all communications, just communications regarding the State Court Litigation; (2) there were "minimal communications [between Debtor and Movants] involving mostly matters unrelated to the [S]tate [C]ourt [L]itigation; and (3) that Movants "are pursuing this action in order to harass the Debtor by incarcdertating hin [sic]." Therefore, Debtor argues that Movants are "stayed from pursuing the criminal contempt action in state court" and ask that the Court deny the Motion.

On January 14, 2021, Movants filed a reply to Debtor's Response (Doc. 231) (the "Reply") wherein they argue that Debtor essentially concedes that the contempt proceedings in state court are criminal in nature, that the state court should be the one to determine the limits and scope of the State Court Order, and that Debtor's argument that the Contempt Motions were brought by Movants for the sole purpose of harassing Debtor is "plainly outweighed by the indisputable evidence of Debtor's own harassment of Movants done in criminal contempt of the [S]tate [C]ourt [O]rder." Thus, Movants request that the Court grant their Motion, determine that the state court has jurisdiction over the Contempt Motions, and "[a]ward reasonable attorneys' fees to Movants for having to respond to patently specious pleadings."

II.   Discussion

5

> The automatic stay, as provided in § 362(a)(1), prevents the
>
> commencement or continuation. . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

As an initial matter, the Court notes that the Contempt Motions complain of, and the attachments thereto demonstrate, communications conducted by Debtor after the Petition Date. Thus, it does not appear that the automatic stay of § 362(a)(1) would prevent commencement or continuation of a judicial proceeding relating to this post-petition conduct by Debtor. Nevertheless, even if the Contempt Motions do involve some pre-petition actions by Debtor, the automatic stay does not apply to "commencement or continuation of a criminal action or proceeding against the debtor" and Courts have held that this exception to the automatic stay applies to criminal contempt proceedings. *See* § 362(b)(1); *In re Storozhenko*, 459 B.R. 697, 705-06 (Bankr. E.D. Mich. 2011) ("Findling does not lose the benefit of § 362(b)(1) to the extent he filed a contempt motion that is truly a criminal contempt proceeding, even if his primary motive, or his sole motive, was to try to pressure or force the Debtor into paying a pre-petition debt. If the proceeding is criminal, the § 362(b)(1) exception applies, and the automatic stay does not apply.").

Georgia courts have stated that "whether a contempt proceeding is civil or criminal is determined by the purpose of the proposed sanctions." *In re Tate*, 521 B.R. 427, 440 (S.D. Ga. 2014) (citing *In re Jove Eng'g, Inc.*, 92 F.3d 1539, 1557–58 (11th Cir. 1996)).

"The purpose of civil contempt sanctions is to '(1) compensate the complainant for losses and expenses it incurred because of the contemptuous act, and (2) coerce the contemnor into complying with the court order.' In contrast, sanctions for criminal contempt are 'punitive in nature and are imposed to vindicate the authority of the court.'" *Id*. "The test to determine whether a sanction for contempt is coercive and not punitive has been said to be '(1) whether the award directly serves the complainant rather than the public interest, and (2) whether the contemnor may control the extent of the award.'" *Id*. Finally, "[a] sanction is punitive if it is defined by the court and may not be purged through any action of the contemnor." *Id*. (citing *In re Jove Eng'g, Inc*., 92 F.3d at 1559).

Here, the Contempt Motions filed by Movants request that the state court hold Debtor in "willful criminal contempt for violating [the State Court] Order" and impose "sanction[s] and punish[ment]" against Debtor for his "criminal contempts." Thus, it appears that Movants are requesting that the state court punish Debtor rather than compensate them for losses and expenses related to Debtor's violation of the State Court Order. Further, the state court's previous Contempt Order resulted in Debtor's being incarcerated for 48 hours with no opportunity to purge the sanction. Accordingly, the Court finds that the contempt proceedings in the State Court Litigation relating to Movants' Contempt Motions are criminal in nature, rather than civil. Thus, the exception to the automatic stay provided in § 362(b)(1) applies and the continuation of the contempt proceedings by Movants does not violate § 362(a)(1).

However, Debtor argues that even if the contempt proceedings are criminal in nature, they nonetheless violate the automatic stay because they were brought for the sole purpose of harassing Debtor. Assuming Debtor is correct that criminal contempt proceedings brought for the sole purpose of harassing a debtor violate the automatic stay, the Court does not find that the record in this case supports a conclusion that the Contempt Motions were brought solely for the purpose of harassing Debtor. The various emails attached to the Contempt Motions, and included as exhibits to the Motion, show that Debtor has repeatedly contacted Movants and Movants' counsel directly, in violation of the State Court Order. Moreover, many of these emails are threatening in nature. For example, Debtor threatens on multiple occasions to file police reports and bar complaints against Movants and their counsel if his various demands are not met. *See* Doc. 227 at 31-38. Debtor also makes vague and threatening comments in the emails, such as "[y]all will be held accountable," "this is going to be the most expensive education you have ever received," "you are no match for Jesus," and "you clearly have no idea what is going to go down in the future." *See generally id.* at 19-22. In fact, in a particular email, Debtor informed one of the Movants that he "saw [them] in Damascus yesterday" and that he will "get [his belongings] one way or another." *See id.* at 34. Accordingly, the Court does not find any support in the record for Debtor's arguments that the Contempt Motions were brought by Movants for the sole purpose of harassing Debtor. Rather, it appears that the Contempt Motions were brought to punish Debtor for his harassment of Movants, in

8

violation of the State Court Order.

Finally, even if there is some evidence that is not before the Court showing that the Contempt Motions truly are just frivolous attempts to harass Debtor, the Court has full confidence in the state court to determine whether Debtor actually did violate the State Court Order and whether any criminal sanctions should be imposed. The Court also believes the state court is a more appropriate forum to determine the validity of the Contempt Motions and the nature and extent of the State Court Order. Thus, the Court finds no reason to further litigate the nature of the Contempt Motions in this Court and, instead, believes that such litigation should take place in the state court.

Lastly, with regard to Movants' request for an award of reasonable attorney's fees for "having to respond to patently specious pleadings," the Court at this time declines to award any attorney's fees to Movant. Nonetheless, the Court does recognize that many of the arguments advanced by Debtor in opposition to the Motion were unsupported, and a future request for attorney's fees may be warranted if Debtor makes further unsubstantiated factual allegations and/or legal contentions unwarranted by existing law. *See generally* Fed. R. Bankr. P. 9011.

## CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS HEREBY ORDERED** that the *Motion for Expedited Comfort Order Confirming Jurisdiction of Superior Court to Conduct Criminal Contempt Proceedings*

9

*Against Debtor* (Doc. 227) is **GRANTED**.

**IT IS FURTHER ORDERED** that continuation of criminal contempt proceedings against Debtor in the State Court Litigation will not violate the automatic stay;

**IT IS FURTHER ORDERED** that imposition of criminal contempt sanctions against Debtor by the Superior Court of Fulton County for Debtor's violation of the State Court Order would not violate the automatic stay;

**IT IS FURTHER ORDERED** that Movants' request for attorney's fees is **DENIED**;

Because Debtor's address with the Court is in the care of Debtor's counsel, Debtor's counsel is hereby **DIRECTED** to file a certificate of service evidencing the manner of service utilized when serving Debtor with this Order.

## END OF DOCUMENT

**Distribution List**

**David L. Smith, Jr.**
c/o M. Denise Dotson, LLC
P.O. Box 435
Avondale Estates, GA 30002

**Tom Pye**
Waterford Centre, Suite 120
Parkway
Norcross, GA 3092

**M. Denise Dotson**
M. Denise Dotson, LLC
P.O. Box 767
Avondale Estates, GA 30002

**Brendon McLeod**
3520 Piedmont Road, Suite 110
Atlanta, GA 3035