

# MCDOWELL KNIGHT
### MCDOWELL KNIGHT ROEDDER & SLEDGE L.L.C.
LAWYERS

Edward S. Sledge, III

Direct Dial: (251) 431-8803
esledge@mcdowellknight.com

June 16, 2016

**VIA EMAIL AND U.S. MAIL**

Brendon McLeod, Esq.
McManamy McLeod Heller LLC
3520 Piedmont Road, Suite 110
Atlanta, Georgia  30305
bren@mmhfirm.com

Re:    *McLeod, et al. v. Smith, et al.*

Dear Bren:

This is being sent to you with the request that you share it with Britton and Hayden and as a prelude to Edward and I entering the lawsuits involving the Smith siblings.

There is no debating whether the Smith family relationship is in shambles. It did not have to be this way and indeed for a time seemed to me it was not. Hayden and Britton were in Caroline and David's wedding and Leighton was a flower girl. David was in Hayden's wedding and Nancy and I went to Hayden and Angela's wedding at Sea Island. Britton and your children vacationed at the Sledge family beach house. Bren, you and Tommy spent weekends at Nancy's family country place outside of Montgomery. Bren, Nancy remembered each of your children's birthdays and Christmas with gifts until recently. Tommy and little David were best buddies. Caroline was committed to trying to bring the families together and was a catalyst for a lot they did together. A family the Smiths can never be again, but this fight among them can end. This litigation has taken its toll on David's financial condition, which is against your interest and makes the settlement process and substance more difficult.

I have been a litigation/trial lawyer for 44 years. I have handled every conceivable kind of case you can imagine, including family disputes like this. I have tried over 50 cases. I have won cases I should have won, lost cases I should have won and won cases I should have lost. Your cases have claims and counterclaims. Think or say what you want, but to leave the outcome in the hands of 12 people who will know virtually nothing about you and who are first introduced to all of the litigants and the claims at the trial is dicey to say the least. In family disputes, it is not unusual for a jury to leave the litigants where they are with no award to either side. While Edward has not been at it as long as me, his experiences square with mine. These are some of the reasons 90+% of the civil cases are settled.

EXHIBIT
T-1
Blumberg No. 5118

June 16, 2016
Page 2

It seems from my perspective, Britton and Hayden's strategy has been to destroy David, despite the fact that could never under any circumstance be in Britton or Hayden's financial interests. And even his lawyers, Britton and Hayden are attempting to sue them, unheard of. I have never seen litigants who are after money attempt to shut down the opposition's ability to make money, not to mention the continued dissipation of David's assets due to legal expenses from responding to frivolous motion, after motion. Even when it appeared money would be generated from the sale of The Metropolitan that could have gone to try to satisfy a claim, your individual actions interfering with the sale by wrongfully claiming Britton and Hayden had an ownership interest in the property destroyed any expectation of collecting money, and exposed you, Britton and Hayden to significant liability. It should be plain for you to see that your strategy is counter to the prospect of collecting money. If you continue to pursue the strategy, I expect you will discover it first-hand. Unless you get back to mediation and get together on a settlement, the outcome is likely to be unfavorable to all. Surely, even if you prevail in the end, the result is no recovery. David may ultimately be required to pursue bankruptcy or Chapter 11 reorganization to enable asset protection and a court enforced payment plan. What's that hollow victory worth in the face of the costs both financially and emotionally to all sides? In a bankruptcy, David could even get protection while the trustee pursued Britton and Hayden on David's counterclaims. Britton and Hayden would be required to retain a bankruptcy attorney with experience in federal bankruptcy court to pursue a claim, at significant expense to Britton and Hayden.

Bren, you have lawyered up for Britton and Hayden with no resulting expense to them. David has had to pay the freight for legal expense every step of the way. It's time David got some free help. If you do not get your clients back to the mediation table and work on getting this case settled, Edward and I are going to join in the case and represent David and his companies along with his Atlanta counsel. Edward's emphasis, as mine, is litigation/trial practice. He is a partner at Bradley, Arant, Boult and Cummings. If we have to come in, we are in for the duration and that includes trial and vigorous prosecution of David's counterclaims and the enforcement of any judgment on those counterclaims. There will be no shortage of legal talent and resources on this end to see it all the way through. Hopefully, you all will get it settled and our appearance in the case won't be necessary.

Sincerely,

Edward S. Sledge, III
For the Firm

ESS/dsp

## EXHIBIT 8

### IN THE SUPERIOR COURT OF FULTON COUNTY
### STATE OF GEORGIA

BRITTON SMITH MCLEOD and　　　　　　)
D. HAYDEN SMITH　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　Civil Action No. 2015-cv-260502
　　　　Plaintiffs,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　HON. Constance C. Russell
　　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　　)　　JURY TRIAL DEMANDED
　　　　　　　　　　　　　　　　　　　)
DAVID L. SMITH, JR.;　　　　　　　　　)
RESIDENTIAL SOUTH PARTNERS,　　　　)
LLC; RSP I, LLC; RSP ARDEN WAY,　　　)
LLC; FS RE PARTNERS, LLC;　　　　　　)
SPRINGLAKE RESIDENTIAL, LLC;　　　　)
2050 SPRINGLAKE, LLC;　　　　　　　　)
SPRINGLAKE-LOT 5, LLC; and JOHN　　　)
DOES 1-9,　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　　)

### ORDER

This matter came on for a noticed hearing on "Plaintiffs' Amended Motion for Appointment of a Receiver and Supporting Authority" ("Plaintiffs' Receiver Motion"). Defendants oppose Plaintiffs' Receiver Motion in all respects. After a portion of Parties' counsels' opening arguments, the Parties' counsel conferred as allowed by the Court for the purpose of reaching an interim solution rather than fully litigate the Plaintiffs' Receiver Motion. After the Court's conference with opposing counsel and the Parties, and on consent of counsel, it is hereby ordered:

　　1)　　No receiver is appointed by this Order; and



2)   To protect Plaintiffs' alleged entitlement to obtain funds from one or more of the Defendants, and to enable Defendants to continue their ongoing business it is hereby Ordered:

   a)   Defendant David L. Smith, Jr. ("Defendant Smith") will not sell his one (1) real estate investment owned personally, *i.e.*, his home at 3795 North Stratford Road, Atlanta, Georgia, without either written consent of Plaintiffs or Order of this Court after motion and hearing.

   b)   The remaining Defendants will not sell their real estate assets which are held by Defendant Residential South Partners, LLC in the form of three (3) unimproved residential lots and one (1) residential lot on which a house is being constructed unless either Plaintiffs consent to the sale or the Court approves the sale after notice and hearing.

   c)   Regarding bank accounts in Defendant David Smith's name either exclusively or jointly with his wife, Defendant Smith will furnish bank statements to Plaintiffs' counsel regarding all bank accounts in Defendant Smith's name either exclusively or jointly with his wife. Commencing with entry of this Order, Defendant Smith is authorized to continue expending for

- 2 -

personal use on a monthly basis, an amount equal to the average monthly expenses for twelve (12) months preceding October 1, 2015.

d)    Regarding bank accounts in the name of any of the other Defendants, these Defendants are authorized to spend funds on a monthly basis for normal and necessary business purposes, including: office rent, office utilities, insurance, temporary clerical and administrative assistance, survey costs, environmental consultant costs, engineering costs, appraisal fees, permit fees, and hazard insurance on property. If Defendants contemplate spending funds in addition to the above categories plus **$17,777.41** monthly to Defendant Smith for monthly living expenses, Defendants shall not pay such additional expenses without either obtaining consent of Plaintiffs or Order of this Court after notice and hearing. Bank statements for all open bank accounts of any Defendants shall be furnished to Plaintiffs' counsel on a monthly basis within five (5) business days from receipt.

e)    Defendants are authorized to pay their trial counsel in this case for all fees incurred based on actual hours billed at their normal

- 3 -

rates.

f)    Defendants will escrow net proceeds from the sale of any real estate owned by Defendant Residential South Partners, LLC in an amount either agreed by Plaintiffs' counsel or Ordered by this Court. Provided however, Defendants may move on notice to Plaintiffs, for an Order terminating or reducing the amount of any escrow of net proceeds of sale of real estate owned by Defendant Residential South Partners, LLC.

g)    This Order will be placed under seal. However, Defendants may show a copy of this Order to a bank or other financial lender and to title companies used by closing attorneys in connection with sale of real estate owned by Defendants.

Notwithstanding what is set forth above:

1)    Defendants are permitted to pay monthly payments due on all secured debts; however, any other liens or encumbrances on Defendants' real estate cannot be paid without either consent of Plaintiffs or Order entered by this Court.

2)    The restrictions on sale of all real estate shall apply to all Defendants.

3)    Defendants are required to disclose to Plaintiffs, in advance, all proposed contracts or creation of new entities; however, Defendants

- 4 -

Case 17-67324-lrc   Doc 244-1   Filed 04/13/21   Entered 04/13/21 15:39:10   Desc
Case 17-67324-lrc   Doc 235-1 Trustees Filed 03/29/21   Page 7 of 154 04/13/21 15:43:49   Desc
Exhibit Exhibits 1 to 29   Page 48 of 132

are not required to obtain Plaintiffs' consent to these activities.

4)   Defendants shall provide copies of all bank statements in their names
     for the 12 months preceding October 1, 2015.

5)   Any funds received by Defendants from the foreclosure of Units 2, 8,
     9, and 10 of The Metropolitan will be preserved and escrowed with
     Defendants undersigned attorneys pending agreed selection of another
     escrow and will not be used by Defendants until Defendants
     demonstrate to the Court that The Metropolitan project was not
     purchased or developed with use of any funds taken from Trust funds
     claimed by Plaintiffs, or otherwise Ordered by the Court.

SO ORDERED, this ___12___ day of November, 2015.

CONSTANCE C. RUSSELL, JUDGE
Fulton County Superior Court
Atlanta Judicial Court

- 5 -

*Prepared and presented by:*


CHAMBERLAIN, HRDLICKA,
WHITE, WILLIAMS & AUGHTRY

Jimmy L. Paul
*Georgia Bar No. 567600*
Drew V. Greene
*Georgia Bar No. 940511*
191 Peachtree Street, N.E., 34th Floor
Atlanta, Georgia 30303

*Counsel for all Defendants*


2212172_1.docx

- 6 -

# EXHIBIT 14

**Chantelle Tiblier**

| | |
|---|---|
| **From:** | Edward Sledge |
| **Sent:** | Thursday, January 26, 2017 10:37 AM |
| **To:** | david@residentialsouthpartners.com; smithsledge@yahoo.com |
| **Cc:** | 'esledge@bradley.com' |
| **Subject:** | Smith Matters |

David and Caroline. I know all are disappointed about the continuing delay of the Court and the lack of response on the part of David's lawyers with trying to address issues that are important to your livelihood and well-being. I know David has repeatedly asked his lawyers to prepare a motion to sell the house and has been put off with one excuse or another. I'm offering to prepare a draft motion to sell the house to be circulated among us, edited and then sent to David's Atlanta lawyers for review, editing and hopefully filing. The thought would be that by giving them something already prepared, it would be easy for them to make a few edits if they thought necessary and file. If you would like for me to prepare the motion, David, please send me the letter requesting permission to sell the house and the letter from, I guess Bren, refusing. I don't have either.

The other issue I see looming is the continuing need for money to live until some projects can come through and protecting loans and advances on the part of Caroline initially and me now. I understand Caroline has advanced money both for living expenses and for the Milton project and David plans to pay her back. I don't know what that number is but I'm sure Caroline can put it together easily. I advanced Caroline $10,000 last week for living expenses. I'm concerned given the complete lack of responsiveness on the part of the Court that this may go on for some period of time. I know there are a couple of projects that will make all the difference in the world if they come through, but I raise the question of whether we should count on that at this time. I believe David can grant a mortgage on the home without violating the Consent order. Assuming that to be the case, I think the best way to protect the positions of Caroline and me (from David's siblings or even the Court allowing the sale and requiring all monies to be deposited in the court) and going forward is for David to grant Caroline a line of credit mortgage for say $200,000 that would not have to be used up if other things went well. This would cover the money advanced by Caroline and future advances by me to Caroline and Caroline to the joint account with David. Rob McGinley in my office will do the paperwork. Rob suggested this is the cleanest way to do it and by depositing the money in a joint account and using it for the joint expenses of family, that better insures the purpose of the money as advances for living expenses and David's obligation that can be secured by mortgage and a note. Caroline then can just pay me back when the house is sold or other project funds become available. Caroline does not wish to charge interest on the transaction, but we may have to put some small interest rate in the note for IRS purposes. I will check with Rob on that. Let me know if you would like to consider pursuing this approach and I will verify the mortgage will not violate the consent order and we can then talk. As an aside, the grant of this mortgage by David to Caroline I think might excite Bren and company into trying to file something with the court could push David' lawyers into filing the motion to sell the house if they drag their feet once I get them the motion and might help to get the Judge off the dime.

I know these are difficult issues to be addressing, but I like to think in terms of doing what can best be done to protect the assets of David and Caroline for their use and benefit. Let me know what you think of these items

Ed


Edward S. Sledge
McDowell Knight Roedder & Sledge LLC
RSA Battle House Tower
11 North Water Street Suite 13290

1



Case 17-67324-lrc    Doc 244-1    Filed 04/13/21    Entered 04/13/21 15:39:10    Desc
Case 17-67324-lrc    Exhibit Trustee Exhibits 1 to 29 Entered 04/13/21 15:43:49    Desc
Exhibit Exhibits 1 to 29    Page 90 of 132

# EXHIBIT 18

**Chantelle Tiblier**

| | |
|---|---|
| **From:** | Edward Sledge |
| **Sent:** | Thursday, February 09, 2017 10:47 AM |
| **To:** | 'david@residentialsouthpartners.com' |
| **Cc:** | 'esledge@bradley.com'; smithsledge@yahoo.com |
| **Subject:** | RE: CBB closing docs - N. Stratford//Second Mortgage-Line o0f Credit loan |

David. Thank you for sending the mortgage to the home. The plan, as we have discussed, is for you to give a second mortgage to Caroline to cover her earlier advances (money spent) made and future advances (money to be spent spent) that she may make. These would include the $10,000 that I deposited in Caroline's account at Wells Fargo last month and deposits I anticipate making in the future in Caroline's account. These would constitute loans from me to Caroline. Caroline has indicated that it cost about $13,000 for the whole array of living expenses, that includes mortgage, life insurance and everything else involved in running a family. I think we would create line of credit loan for $200,000. It would stipulate  Caroline is not required to make the advances or pay the referenced expenses, but as she does, they would be secured by this 2nd mortgage.

I would point out that the first mortgage does have a provision that makes a further encumbrance or a lien such as a second mortgage an event of default
without obtaining the consent of the lender. We can talk about whether you would like to try to do that or just ignore it. Rob McGinley at McDowell Knight will prepare the mortgage and promissory note. Rob is licensed in Georgia and can take care of the transaction. Can you get your title person to take a quick look at title since the first mortgage to make sure nothing of any significance has been filed since then, in particular, something by Bren or your siblings?

David do you know how much of Caroline's money she has previously put into the family expenses so they can be mentioned in the note? Caroline can you get this information from your check register?

Rob expects that he will be able to complete this by the middle of next week.

Let me know if you have any questions.

David. As you, Edward and I discussed over the phone last week, you are urged and should feel free to have your own/independent attorney look at this if you have any concerns whatsoever, questions you need answered etc.

Hopefully the house can be sold soon or some other event to produce some cash will enable the loan to be paid and the mortgage is to be canceled. As I've discussed with you and Caroline, I cannot proceed indefinitely this way and look at this as a short-term solution.

I don't know what more to do to get your lawyers to file the motion to sell the house. I don't see where holding it back is of any benefit in the case and it certainly is not otherwise of any benefit. The inability to sell the house is putting considerable financial pressure on everyone. Maybe the filing of the second mortgage will get some movement out of them. Based on the Consent Order, you will have to notify the other side of the second mortgage and note.

Ed

Edward S. Sledge
McDowell Knight Roedder & Sledge LLC
RSA Battle House Tower
11 North Water Street Suite 13290
Mobile, AL 36602
Phone:  251/431-8803
Fax:  251/432-5303
Cell:  251/379-0486

**EXHIBIT**

**T-18**

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message

1

is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.

# McDowell Knight

## McDowell Knight Roedder & Sledge L.L.C.
### Lawyers

Home | Firm News | Firm Overview | Areas of Practice | Our Attorneys
Contact Us | Recruitment | Resources | Representative Clients

www.mcdowellknight.com



**From:** david@residentialsouthpartners.com [mailto:david@residentialsouthpartners.com]
**Sent:** Saturday, February 04, 2017 4:40 PM
**To:** Edward Sledge <esledge@mcdowellknight.com>
**Subject:** FWD: CBB closing docs – N. Stratford

Attached is a copy of my mortgage

---------- Original Message ----------
Subject: FWD: CBB closing docs – N. Stratford
From: david@residentialsouthpartners.com
Date: 2/4/17 4:24 pm
To: david@residentialsouthpartners.com

---------- Original Message ----------
Subject: CBB closing docs – N. Stratford
From: "Victoria Bennett" <victoria@victoriabennettpc.com>
Date: 6/26/14 4:00 pm
To: david@residentialsouthpartners.com

See attached.

*Victoria V Bennett*

2

# EXHIBIT  19

**Chantelle Tiblier**

| | |
|---|---|
| **From:** | Edward Sledge |
| **Sent:** | Monday, February 13, 2017 11:28 AM |
| **To:** | 'david@residentialsouthpartners.com' |
| **Cc:** | 'esledge@bradley.com'; smithsledge@yahoo.com |
| **Subject:** | RE: CBB closing docs – N. Stratford//Second Mortgage–Line o0f Credit loan |

David, Following up on the second mortgage, Caroline has advised that she has advanced/loaned a total of $42,000 of her money, plus $10,000 that I loaned her several weeks ago for household/living expenses and that she advanced or used. I'm about to lend her another $13,000 this week for household/living expenses. These monies would be rolled into the mortgage which will be set up as a line of credit mortgage, with these advances having been made covered as well as advances to be made. As I recall, under the Order, you have to give notice to the other side of any contract you make and the second mortgage/loan would constitute a contract. Also, we need to let Jimmy Paul and his team know. I would like to be able to get a second mortgage and note up for you to sign on Wednesday. Have you had the title updated since the first mortgage? I think we ought to do that and I can imagine it would not cost much of anything. We don't need title insurance. Can you give me a call when you have a second and let's talk about some of these questions and the logistics of dealing with your Atlanta firm and the other side. I don't believe we want to share any information with the other side about the second mortgage loan until the mortgage is filed of record. My memory is, which I will have to confirm that under the order, you do not have to give very much information about a contract. I will double check that and you should  too. I think as for notice to the other side, all that would have to be said is "This is notice that David Smith has entered into a second mortgage loan on the residence at 3795 North Stratford Rd."
Give me a call today sometime and let's talk through this little bit please.
Ed


Edward S. Sledge
McDowell Knight Roedder & Sledge LLC
RSA Battle House Tower
11 North Water Street Suite 13290
Mobile, AL 36602
Phone:  251/431-8803
Fax:  251/432-5303
Cell:  251/379-0486

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.





Case 17-67324-lrc    Doc 244-1    Filed 04/13/21    Entered 04/13/21 15:39:10    Desc
Case 17-67324-lrc    Exhibit Exhibits 1 to 29    Page 13 of 132 04/13/21 15:43:49    Desc
Exhibit Exhibits 1 to 29    Page 93 of 132

**Chantelle Tiblier**

## EXHIBIT 20

| | |
|---|---|
| **From:** | Edward Sledge |
| **Sent:** | Friday, February 17, 2017 11:10 AM |
| **To:** | 'Paul, Jimmy L.'; Greene, Drew V. (Drew.Greene@CHAMBERLAINLAW.COM); McKenna, Lauri |
| **Cc:** | 'esledge@bradley.com'; david@residentialsouthpartners.com |
| **Subject:** | Loans and 2nd Mortgage on Residence/Related |
| **Attachments:** | 484440.pdf; 479781.pdf |

Jimmy and Drew. Due to the delay in David getting the $128K and getting the Court to approve sale of the residence, my daughter, Caroline, has been forced to advance/loan funds of her own for David's benefit to run a household. She and David are working to verify that amount. Within the last few weeks the situation has gotten desperate and I have had to assist as well. I advanced/loaned my daughter $10,000 in late January, 2017, and $13,000 on 2/15/17, which she has advanced/loaned for David's benefit to continue running the household (Emergency Loans). Steps are being taken taken to incorporate all of these advances/loans (Caroline's and mine) into a 2nd mortgage/note which will allow for future advances secured by a second mortgage on the residence. It may be that the second mortgage/note is created in Caroline's favor or my favor. In any event, I will be advancing/loaning additional monies to maintain the household until the residence is sold. I think if I hold the 2nd mortgage/note and maybe even if I don't and Caroline does, since I will be advancing the money for David's benefit, I could be in violation of 1.8(e) of the Georgia bar rules of ethical conduct and governance addressing financial assistance by a lawyer to a client (See below). I've discussed this with David and he understands and agrees that if ethics require it, I should withdraw. I don't believe that I have ever been formally admitted pro hac vice in the case. I think my motion is one of the pending motions. Consequently, I think we can just withdraw the motion to appear pro hac vice (Motion Attached). Please let me have your thoughts on the ethics of the situation and my approach.

As for the second mortgage/note and the Consent Order, I do not believe there is any restriction imposed against it. The only restriction I see with respect to the home is that which requires permission from the opposing parties or an order of court to "sell "It 2 a) (Consent Order Attached). Certainly in common parlance a mortgage is not a sale and if the restriction had been intended to apply to a mortgage, it should have said so. Please advise if you concur. Of course, since it will be a contract entered into by David, notice will have to be given to the opposition which does appear to be required by the Order 3).

Please let me have the benefit of your opinion on these matters as quickly as possible. As I feel I need to move on this right away.

Ed

1.8(e) below
A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
1.   a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; or
2.   a lawyer representing a client unable to pay court costs and expenses of litigation may pay those costs and expenses on behalf of the client.

Edward S. Sledge
McDowell Knight Roedder & Sledge LLC
RSA Battle House Tower
11 North Water Street Suite 13290



Mobile, AL 36602
Phone:  251/431-8803
Fax:  251/432-5303
Cell:  251/379-0486

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.

# MCDOWELL KNIGHT

## MCDOWELL KNIGHT ROEDDER & SLEDGE L.L.C.
### LAWYERS

Home | Firm News | Firm Overview | Areas of Practice | Our Attorneys
Contact Us | Recruitment | Resources | Representative Clients

www.mcdowellknight.com



Case 17-67324-lrc    Doc 244-1    Filed 04/13/21    Entered 04/13/21 15:39:10    Desc
Case 17-67324-lrc    Exhibit Trustee Exhibits 1 to 29    Page 15 of 154 21 15:43:49    Desc
Exhibit Exhibits 1 to 29    Page 95 of 132

## EXHIBIT 21

**Chantelle Tiblier**

| | |
|---|---|
| **From:** | Edward Sledge |
| **Sent:** | Thursday, February 23, 2017 12:50 PM |
| **To:** | 'Paul, Jimmy L.'; Greene, Drew V. (Drew.Greene@CHAMBERLAINLAW.COM); 'McKenna, Lauri' |
| **Cc:** | 'esledge@bradley.com'; david@residentialsouthpartners.com |
| **Subject:** | RE: Loans and 2nd Mortgage on Residence/Related |

All. Meant to say. Leaving town today. Will return Monday night and will get with David about notice to Hayden and Britton and immediate execution and recording of 2nd mtg on residence after. Will get with Chamberlain about withdrawing request to appear in case pro hac until loan is paid.
Ed

SORRY for confusion

Edward S. Sledge
McDowell Knight Roedder & Sledge LLC
RSA Battle House Tower
11 North Water Street Suite 13290
Mobile, AL 36602
Phone: 251/431-8803
Fax: 251/432-5303
Cell: 251/379-0486

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.

# MᶜDOWELL KNIGHT

## MᶜDOWELL KNIGHT ROEDDER & SLEDGE L.L.C.
### LAWYERS

Home | Firm News | Firm Overview | Areas of Practice | Our Attorneys
Contact Us | Recruitment | Resources | Representative Clients



EXHIBIT
T-21

www.mcdowellknight.com



1

Case 17-67324-lrc    Doc 244-1    Filed 04/13/21    Entered 04/13/21 15:39:10    Desc
Case 17-67324-lrc    Doc 285-1  Filed 03/26/21    Page 16 of 154
Exhibit Exhibits 1 to 29    Page 97 of 132

Chantelle Tiblier

### EXHIBIT 23

| | |
|---|---|
| **From:** | Edward Sledge |
| **Sent:** | Wednesday, March 01, 2017 11:29 AM |
| **To:** | david@residentialsouthpartners.com |
| **Cc:** | 'esledge@bradley.com' |
| **Subject:** | Smith Litigation/Residence Title update |

David. Please make arrangements to get the title updated on the home from the date of the first mortgage to the present ASAP. We need to go and get that closed out. Please also give me a call on my cell sometime today; this afternoon later is fine if that works better for you. I would like to go over the matters of the loans and the mortgage with you. Rob McGinley prepared a draft of the second mortgage and note. I've not looked at them, but when I feel like they are final from this end, I will send to you for review.

I'm going to put together the papers to be filed to withdraw my application to appear pro hac vice in the receiver case. I don't believe the judge ever acted on the application and thus I should just be able to unilaterally **withdraw it.** We never filed similar papers in the Lenox Pines case. I will forward them around today to you and Edward for any comments you may have. If there's time, and it gets completed and ready to go, I intend to forward it to Atlanta lawyers and tell them I intend overnight tomorrow the papers tomorrow with the request they file them.

Ed

Edward S. Sledge
McDowell Knight Roedder & Sledge LLC
RSA Battle House Tower
11 North Water Street Suite 13290
Mobile, AL 36602
Phone: 251/431-8803
Fax: 251/432-5303
Cell: 251/379-0486

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.

## McDowell Knight

### McDowell Knight Roedder & Sledge L.L.C.
#### Lawyers

EXHIBIT
T-23

Blumberg No. 5118

Fulton County Superior Court
***EFILED***MH
Date: 3/6/2017 4:56:48 PM
Cathelene Robinson, Clerk

## EXHIBIT  24

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

BRITTON SMITH MCLEOD and )
D. HAYDEN SMITH )
 )
    Plaintiffs, )
 )
vs. )
 )
DAVID L. SMITH, JR.; )
RESIDENTIAL SOUTH PARTNERS, )
LLC; RSP I, LLC; RSP ARDEN WAY, )
LLC; FS RE PARTNERS, LLC; )
SPRINGLAKE RESIDENTIAL, LLC; )
2050 SPRINGLAKE, LLC; )
SPRINGLAKE-LOT 5, LLC; and JOHN )
DOES 1-9, )
 )
    Defendants. )

Civil Action No. 2015-cv-260502

HON. Constance C. Russell

JURY TRIAL DEMANDED

**NOTICE OF WITHDRAWAL BY EDWARD S. SLEDGE, III OF
VERIFIED APPLICATION TO APPEAR PRO HAC VICE**

NOW COMES Edward S. Sledge, III, and hereby gives notice of withdrawal

of his Verified Application to Appear Pro Hac Vice as a Domestic Lawyer for

Defendant David L. Smith, Jr. ("Notice"), in the above styed cause filed on July

12, 2016.  As of the date of this filing, the aforesaid Application to Appear Pro Hac

Vice has not been the subject of a ruling and would remain pending but for this

Notice.

Dated this 2ⁿᵈ day of March, 2017.



Case 17-67324-lrc    Doc 244-1    Filed 04/13/21    Entered 04/13/21 15:39:10    Desc
Case 17-67324-lrc    Exhibit Exhibits 1 to 29    Page 99 of 132    Desc Entered 03/29/21 15:43:49    Desc
Exhibit Exhibits 1 to 29    Page 99 of 132

By: _____
EDWARD S. SLEDGE, III
*Alabama State Bar #ASB-7917-L61E*


JIMMY L. PAUL
*Georgia Bar No. 567600*
DREW V. GREENE
*Georgia Bar No. 940511*
CHAMBERLAIN, HRDLICKA, WHITE,
        WILLIAMS & AUGHTRY
191 Peachtree Street, N.E., 46th Floor
Atlanta, Georgia 30303
jimmy.paul@chamberlainlaw.com
(404) 659-1410
(404) 659-1852 (facsimile)

*Counsel for Defendants David L. Smith, Jr.;
Residential South Partners, LLC; RSP I, LLC; RSP
Arden Way, LLC; FS RE Partners, LLC; Springlake
Residential, LLC; 2050 Springlake, LLC;
Springlake-Lot 5, LLC, and John Does 1-9*

## CERTIFICATE OF SERVICE

This is to certify that on this date the undersigned has filed "Withdrawal by Edward S. Sledge III of Verified Application to Appear Pro Hac Vice" with the Clerk using the Court's Odyssey efile system which will give electronic notice to the following:

Tom Pye
Law Offices of Tom Pye, P.C.
Waterford Centre, Suite 120
5555 Triangle Parkway
Norcross, Georgia 30092
*tpye@pyelawoffices.com*

Brendon McLeod
McManamy McLeod & Heller, LLC
3520 Piedmont Road, Suite 110
Atlanta, Georgia 30305
*bren@mmhfirm.com*

Dated this 6th day of March, 2017.

By:   */s/ Jimmy L. Paul*
      JIMMY L. PAUL
      *Georgia Bar No. 567600*
      DREW V. GREENE
      *Georgia Bar No. 940511*

      *Counsel for Defendants David L. Smith, Jr.;
      Residential South Partners, LLC; RSP I,
      LLC; RSP Arden Way, LLC; FS RE
      Partners, LLC; Springlake Residential,
      LLC; 2050 Springlake, LLC; Springlake-Lot
      5, LLC*

# EXHIBIT 25

## Chantelle Tiblier

| | |
|---|---|
| **From:** | david@residentialsouthpartners.com |
| **Sent:** | Friday, March 10, 2017 11:04 AM |
| **To:** | Edward Sledge |
| **Cc:** | esledge@bradley.com |
| **Subject:** | RE: Smith Litigation/Residence Title update (Loan and Advances) |

They say today...I will send to you as soon as I receive. Thanks David

--------- Original Message ---------
Subject: RE: Smith Litigation/Residence Title update (Loan and Advances)
From: "Edward Sledge" <esledge@mcdowellknight.com>
Date: 3/10/17 11:36 am
To: "david@residentialsouthpartners.com" <david@residentialsouthpartners.com>
Cc: "esledge@bradley.com" <esledge@bradley.com>

David. Title?

I expect to send you up the draft note and mortgage to review over weekend. Monday I can send the final. I am the mortgage holder. I put Caroline on note with me for her prior advances and any future ones. You and Caroline need to work that up that amount and sign something acknowledging the amount. I have advanced $23,000 so far, which will be included. I asked Caroline about interest and she prefers 1% to avoid note growing any larger than has to.

Edward S. Sledge

McDowell Knight Roedder & Sledge LLC

RSA Battle House Tower

11 North Water Street Suite 13290

Mobile, AL 36602

Phone: 251/431-8803

Fax: 251/432-5303

Cell: 251/379-0486



-------- Original Message ----------

Subject: RE: Smith Litigation/Residence Title update
From: "Edward Sledge" <esledge@mcdowellknight.com>
Date: 3/7/17 3:05 pm
To: "david@residentialsouthpartners.com" <david@residentialsouthpartners.com>
Cc: "'esledge@bradley.com'" <esledge@bradley.com>

Title update?

Edward S. Sledge

McDowell Knight Roedder & Sledge LLC

RSA Battle House Tower

11 North Water Street Suite 13290

Mobile, AL 36602

Phone:  251/431-8803

Fax:  251/432-5303

Cell:  251/379-0486

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.

Case 17-67324-lrc    Doc 244-1    Filed 04/13/21    Entered 04/13/21 15:39:10    Desc
Case 17-67324-lrc    Exhibit Trustee's Exhibits 1 to 29    Page 22 of 13/21 15:43:49    Desc
Exhibit Exhibits 1 to 29    Page 103 of 132

Edward Sledge

# EXHIBIT  26

| | |
|---|---|
| **From:** | Edward Sledge |
| **Sent:** | Friday, March 10, 2017 12:02 PM |
| **To:** | david@residentialsouthpartners.com |
| **Cc:** | esledge@bradley.com; Robert B. McGinley, Jr. |
| **Subject:** | RE: Smith Litigation/Residence Title update (Loan and Advances)(Draft Mortgage and Note) |
| **Attachments:** | 512523.docx; 512521.docx |

David. Attached are drafts of the second mortgage and note we have been discussing to cover prior advances and future advances by Caroline and me. Rob McGinley who did this with exception of a few edits by me in the note said it is OK for Caroline to be in note and not at same time in mortgage. I believe by putting her in note with understanding among us that the mortgage to me is for the benefit of and to secure her debt as well as mine, we accomplish that. I will double check with Rob. He is underwater in a matter today.
David. Review and give me a call over weekend to discuss.
Ed


Edward S. Sledge
McDowell Knight Roedder & Sledge LLC
RSA Battle House Tower
11 North Water Street Suite 13290
Mobile, AL 36602
Phone:  251/431-8803
Fax:  251/432-5303
Cell:  251/379-0486

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.

# McDOWELL KNIGHT

### McDOWELL KNIGHT ROEDDER & SLEDGE L.L.C.
LAWYERS

Home | Firm News | Firm Overview | Areas of Practice | Our Attorneys
Contact Us | Recruitment | Resources | Representative Clients

www.mcdowellknight.com

1


EXHIBIT
J-26



**From:** david@residentialsouthpartners.com [mailto:david@residentialsouthpartners.com]
**Sent:** Friday, March 10, 2017 11:04 AM
**To:** Edward Sledge <esledge@mcdowellknight.com>
**Cc:** esledge@bradley.com
**Subject:** RE: Smith Litigation/Residence Title update (Loan and Advances)

They say today...I will send to you as soon as I receive. Thanks David

--------- Original Message ---------
Subject: RE: Smith Litigation/Residence Title update (Loan and Advances)
From: "Edward Sledge" <esledge@mcdowellknight.com>
Date: 3/10/17 11:36 am
To: "david@residentialsouthpartners.com" <david@residentialsouthpartners.com>
Cc: "esledge@bradley.com" <esledge@bradley.com>

David. Title?

I expect to send you up the draft note and mortgage to review over weekend. Monday I can send the final. I am the mortgage holder. I put Caroline on note with me for her prior advances and any future ones. You and Caroline need to work that up that amount and sign something acknowledging the amount. I have advanced $23,000 so far, which will be included. I asked Caroline about interest and she prefers 1% to avoid note growing any larger than has to.

Edward S. Sledge

McDowell Knight Roedder & Sledge LLC

RSA Battle House Tower

11 North Water Street Suite 13290

Mobile, AL 36602

Phone: 251/431-8803

Fax: 251/432-5303

2

Cell: 251/379-0486

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.

# McDowell Knight

## McDowell Knight Roedder & Sledge L.L.C.
### Lawyers

Home | Firm News | Firm Overview | Areas of Practice | Our Attorneys
Contact Us | Recruitment | Resources | Representative Clients

www.mcdowellknight.com

 

**From:** Edward Sledge
**Sent:** Tuesday, March 07, 2017 4:08 PM
**To:** david@residentialsouthpartners.com
**Cc:** esledge@bradley.com
**Subject:** Re: Smith Litigation/Residence Title update

K

On Mar 7, 2017, at 4:06 PM, "david@residentialsouthpartners.com" <david@residentialsouthpartners.com> wrote:

3

sorry, I should tomorrow or Thursday latest.


---------- Original Message ----------

Subject: RE: Smith Litigation/Residence Title update
From: "Edward Sledge" <esledge@mcdowellknight.com>
Date: 3/7/17 3:05 pm
To: "david@residentialsouthpartners.com"
<david@residentialsouthpartners.com>
Cc: "'esledge@bradley.com'" <esledge@bradley.com>

Title update?




Edward S. Sledge

McDowell Knight Roedder & Sledge LLC

RSA Battle House Tower

11 North Water Street Suite 13290

Mobile, AL 36602

Phone: 251/431-8803

Fax: 251/432-5303

Cell: 251/379-0486


The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.

4

Case 17-67324-lrc    Doc 244-1    Filed 04/13/21    Entered 04/13/21 15:39:10    Desc
Case 17-67324-lrc    Doc 235-1 custees Exh 04/20/21    Page 26 of 154 03/29/21 15:43:49    Desc
Exhibit Exhibits 1 to 29    Page 107 of 132

<image001.jpg>

Home | Firm News | Firm Overview | Areas of Practice | Our Attorneys
Contact Us | Recruitment | Resources | Representative Clients

www.mcdowellknight.com

<image002.png>  <image003.png>

**From:** Edward Sledge
**Sent:** Wednesday, March 01, 2017 11:29 AM
**To:** david@residentialsouthpartners.com
**Cc:** 'esledge@bradley.com' <esledge@bradley.com>
**Subject:** Smith Litigation/Residence Title update

David. Please make arrangements to get the title updated on the home from the date of the first mortgage to the present ASAP. We need to go and get that closed out. Please also give me a call on my cell sometime today; this afternoon later is fine if that works better for you. I would like to go over the matters of the loans and the mortgage with you. Rob McGinley prepared a draft of the second mortgage and note. I've not looked at them, but when I feel like they are final from this end, I will send to you for review.

I'm going to put together the papers to be filed to withdraw my application to appear pro hac vice in the receiver case. I don't believe the judge ever acted on the application and thus I should just be able to unilaterally **withdraw it**. We never filed similar papers in the Lenox Pines case. I will forward them around today to you and Edward for any comments you may have. If there's time, and it gets completed and ready to go, I intend to forward it to Atlanta lawyers and tell them I intend overnight tomorrow the papers tomorrow with the request they file them.

Ed

5

Edward S. Sledge

McDowell Knight Roedder & Sledge LLC

RSA Battle House Tower

11 North Water Street Suite 13290

Mobile, AL 36602

Phone:  251/431-8803

Fax:  251/432-5303

Cell:  251/379-0486

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.

<image001.jpg>

Home | Firm News | Firm Overview | Areas of Practice | Our Attorneys
Contact Us | Recruitment | Resources | Representative Clients

www.mcdowellknight.com

<image002.png>  <image003.png>

## EXHIBIT 26 (cont.)

<u>LINE OF CREDIT PROMISSORY NOTE</u>

**$200,000.00**                                                            MARCH __, 2017

      **FOR VALUE RECEIVED**, the undersigned **DAVID LEE SMITH** (the "Borrower"), hereby promises to pay to the order of **EDWARD S. SLEDGE, III, AND CAROLINE SLEDGE SMITH** (the "Sledge"; Sledge and any subsequent holder hereof, as applicable, are referred to herein as the "Holder"), without grace at such place as Holder may direct, in lawful money of the United States of America, the principal amount of **TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($200,000.00)** or so much thereof as heretofore advanced and is advanced hereunder, with interest at the rate and calculated in the manner described herein. Future advances shall be at the option of Holder. Payment of principal and interest shall be in accordance with the following provisions:

    1.    <u>Payment</u>. The balance of the principal and all accrued and unpaid interest on this Note and all charges hereunder and under the Mortgage (defined herein) shall be due and payable ON DEMAND (the "Maturity Date"). From the date hereof until the Maturity Date,

    2.    <u>Interest; Late Charges; Commitment Fee</u>. Interest from the date hereof until the Maturity Date shall accrue at the rate of one 5percent per annum. Interest on all principal amounts outstanding from time to time hereunder shall be calculated on the basis of a 360-day year applied to the actual number of days upon which principal is outstanding, by multiplying the product of the principal amount and the applicable rate set forth herein by the actual number of days elapsed, and dividing by 360.

    3.    <u>Security</u>. The indebtedness evidenced hereby is secured by, among other things, real property located in Fulton County, Georgia, and described in that certain Deed to Secure Debt and Security Agreement ("Mortgage") from Borrower to Sledge.

    4.    <u>Event of Default</u>. The happening of any one or more of the following events shall constitute an "Event of Default" hereunder:

        (a)    Failure to make a payment of the principal of or interest on this Note within ten (10) days of the date on which the same becomes due and payable;

        (b)    The occurrence of any Event of Default specified in the Mortgage or in any other instrument executed in connection with or securing this Note, and the Borrower's failure to cure the same within any applicable cure period specifically provided therein;

        (c)    The failure by the Borrower, the Mortgage, or in any other instrument executed in connection with or securing this Note and the failure to cure the same within any applicable cure period specifically provided therein.

Upon the occurrence of an Event of Default, or at any time thereafter during the continuance of any such Event of Default, the Holder may, with or without notice to the Borrower, declare this

Note to be forthwith due and payable, whereupon this Note and the indebtedness evidenced hereby shall forthwith be due and payable, both as to principal and interest, without presentment, demand, protest, or other notice of any kind, all of which are hereby expressly waived, anything contained herein or in the Mortgage or in any other instrument executed in connection with or securing this Note to the contrary notwithstanding.

5.    **Waivers**.  Borrower and any endorser or guarantor of this Note hereby waive demand, presentment for payment, notice of dishonor, protest, and notice of protest and diligence in collection or bringing suit and agree that the Holder hereof may accept partial payment, or release or exchange security or collateral, without discharging or releasing any unreleased collateral or the obligations evidenced hereby. Borrower and each such endorser and guarantor further waive any and all rights of exemption, both as to personal and real property, under the Constitution or laws of the United States, the State of Alabama or any other state.  No failure of any Holder of this Note to accelerate the indebtedness evidenced hereby or to exercise any other right hereunder shall be construed as a novation or modification of this Note or a waiver of the Holder's right to thereafter insist upon strict compliance with the terms of this Note without prior notice of such intention being given to the Borrower.

6.    **Attorney Fees**.  Borrower and each endorser or guarantor of this Note agree to pay reasonable actual attorneys' fees and costs incurred by the Holder hereof in collecting or attempting to collect this Note, whether by suit or otherwise.

7.    **Applicable Law; Parties; Under Seal**.  This Note is being delivered to, and accepted by, Bank in the State of Alabama, and this Note shall be governed by the laws of the State of Alabama.  It is intended, and the Borrower and Bank specifically agree, that the laws of the State of Alabama governing interest shall apply to this Note and to this transaction.  As used herein, the terms "Borrower", "Bank" and "Holder" shall be deemed to include their respective successors and assigns, whether by voluntary action of the parties or by operation of law.  This Note is given under the seal of Borrower, and it is intended that this Note is and shall constitute and have the effect of a sealed instrument according to law.

SIGNATURE PAGE TO FOLLOW

Case 17-67324-lrc    Doc 244-1    Filed 04/13/21    Entered 04/13/21 15:39:10    Desc
Case 17-67324-lrc    Doc 235-1 Filed 03/20/21 Page 30 of 154 15:43:49    Desc
Exhibit Exhibits 1 to 29    Page 111 of 132

IN WITNESS WHEREOF, Borrower has delivered this Note the ___ day of March, 2017 (regardless of the date executed).

BORROWER:

WITNESS:

_____          _____
                                  David Lee Smith, individually

STATE OF GEORGIA:
COUNTY OF FULTON:

I, the undersigned Notary Public, in and for said County in said State, hereby certify that **David Lee Smith** is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same voluntarily.

Given under my official hand and seal this _____ day of March 2017

(AFFIX NOTARIAL SEAL)          _____
                               NOTARY PUBLIC
                               My Commission Expires:_____

SIGNATURE PAGE TO LINE OF CREDIT PROMISSORY NOTE

Case 17-67324-lrc    Doc 244-1    Filed 04/13/21    Entered 04/13/21 15:39:10    Desc
Case 17-67324-lrc    Doc 235-1 Trustee Exhibit 04/13/21    Page 31 of 154/21 15:43:49    Desc
Exhibit Exhibits 1 to 29    Page 112 of 132

## EXHIBIT 26 (cont.)

Prepared by and Return To:
Robert B. McGinley, Jr.
McDowell Knight Roedder & Sledge, LLC
11 N. Water St., Ste. 13290
Mobile, AL 36602
(251) 432-5300


**STATE OF ALABAMA**
**COUNTY OF MOBILE**

### DEED TO SECURE DEBT AND SECURITY AGREEMENT

    **THIS DEED TO SECURE DEBT AND SECURITY AGREEMENT** (hereinafter referred to as this "Deed") made and entered into this _____ day of March, 2017, by and between **DAVID LEE SMITH** 3795 N Stratford Rd NE, Atlanta, Georgia 30342 (hereinafter referred to as "Grantor"), and **EDWARD S. SLEDGE, III** 11 North Water Street Suite 13290 Mobile, Alabama 36602 (hereinafter referred to as "Lender").

### W I T N E S S E T H

    In order to secure **TWO HUNDRED THOUSAND and NO/100 UNITED STATES DOLLARS ($200,000.00)** of a promissory note from Grantor to Lender maturing on March 1, 2037 and in the amount of $200,000.00 (the "Note") and other valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell, convey, assign, transfer and set over unto Lender, and its successors and assigns, and grant a security interest in all of the following described land and interests in land, estates, easements, rights, improvements, property, fixtures, equipment, furniture, furnishings, appliances, and appurtenances (hereinafter collectively referred to as the "Property"):

    (a)    All those tracts or parcels of land and easements more particularly described in **Exhibit "A"** attached hereto and by this reference made a part hereof (hereinafter referred to as the "Land").

    (b) All buildings, structures, towers and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, fire extinguishers and any other safety equipment required by governmental regulation or law, washers, dryers, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus and appurtenances, window screens, awnings and storm sashes, which are or shall be owned by Grantor and attached to said buildings, structures or improvements and all other furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles, building supplies and materials, books and records, chattels, inventory, accounts, farm products, consumer goods, general intangibles and personal property of every kind and nature whatsoever now or hereafter owned by Grantor and located in, on or about, or used or intended to

Case 17-67324-lrc    Doc 244-1    Filed 04/13/21    Entered 04/13/21 15:39:10    Desc
Case 17-67324-lrc    Doc 235-1  Filed 03/29/21  Page 32 of 03/29/21 15:43:49    Desc
Exhibit Exhibits 1 to 29    Page 113 of 132

be used with or in connection with the use, operation or enjoyment of the Property, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of any of the foregoing, and all the right, title and interest of Grantor in any such furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles and personal property subject to or covered by any prior security agreement, conditional sales contract, chattel mortgage or similar lien or claim, together with the benefit of any deposits or payments now or hereafter made by Grantor on or behalf of Grantor, all trade-names, trademarks, servicemarks, logos and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Property or any part thereof or are now or hereafter acquired by Grantor; and all inventory, accounts, chattel paper, documents, equipment, fixtures, farm products, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described hereinabove, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land and a part of the Property as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Deed.  The location of the above-described collateral is also the location of the Land;

(c)    All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, and appurtenances, reversion and reversions, remainder and remainders, whatsoever, in any way belonging, relating or appertaining to the Property or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor.

(d)    All income, rents, issues, profits and revenues of the Property from time to time accruing (including, without limitation, all vendor/license payments, payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits whether held by Grantor or in a trust account, and escrow funds); and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, or Grantor of, in and to the same; reserving only the right to Grantor to collect the same (other than insurance proceeds and condemnation payments) so long as Grantor is not in Default hereunder.

TO HAVE AND TO HOLD the Property and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of Lender and the successors and assigns of Lender, **IN FEE SIMPLE** forever; and Grantor covenants that Grantor is lawfully seized and possessed of the Property as aforesaid, and has good right to convey the same, that the same is unencumbered and that Grantor does warrant and will forever defend the title thereto against the claims of all persons whomsoever.

This conveyance is intended to operate and is to be construed as a deed passing the title to the Property to Lender and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt, and not as a mortgage, and is given to secure the following described indebtedness (the "Obligations"):

Case 17-67324-lrc   Doc 244-1   Filed 04/13/21   Entered 04/13/21 15:39:10   Desc
Case 17-67324-lrc   Doc 285   Filed 03/20/21   Page 83 of 03/24/21 15:43:49   Desc
Exhibit Exhibits 1 to 29   Page 114 of 132

(a)      The debt evidenced by the Note together with any and all renewals, modifications and/or extensions of the indebtedness evidenced by the Note.

(b)      Any and all additional advances made by Lender to protect or preserve the Property or the lien and security title hereof in and to the Property, or for taxes, assessments or insurance premiums as hereinafter provided (whether or not the original Grantor remains the owner of the Property at the time of such advances).

(c)      Any and all other and future indebtedness hereinafter incurred by Grantor to Lender.

Should the Obligations secured by this deed be paid according to the tenor and effect hereof when the same shall become due and payable, and should Grantor perform all covenants herein contained in a timely manner, then this Deed shall be cancelled and surrendered.

Grantor hereby further covenants and agrees with Lender as follows:

## ARTICLE 1

**1.01**    **Payment of Indebtedness.**  Grantor will pay the Obligations according to the tenor thereof and all other sums now or hereafter secured hereby promptly as the same shall become due.

**1.02**    **Taxes, Liens and Other Charges.**

(a)      In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of debts secured by deeds to secure debt or the manner of collecting taxes so as to adversely affect Lender, Grantor will promptly any such tax.  If Grantor fails to make such prompt payment or if, in the opinion of the Lender, any such state, federal, municipal or other governmental law, order, rule or regulation prohibits Grantor from making such payment or would penalize Lender if Grantor makes such payment or if, in the opinion of Lender, the making of such payment might result in the imposition of interest beyond the maximum amount permitted by applicable law, then the entire balance of the principal sum secured by this Deed and all interest accrued thereon shall, at the option of Lender become immediately due and payable.

(b)      Grantor will pay, before the same becomes delinquent, all taxes, liens, assessments and charges of every character including all utility charges, whether public or private, already levied or assessed or that may hereafter be levied or assessed upon or against the Property; and will furnish Lender within thirty (30) days after the final date whereon same can be paid without penalty evidence of the due and punctual payment of all such taxes, assessments and other fees and charges.  Nothing contained herein shall require the payment or discharge of any such tax, lien, assessment or charge by Grantor for so long as Grantor shall in good faith and its own expense contest the amount or validity thereof by appropriate legal proceedings and such contest shall prevent (i) the collection thereof or other realization thereon and the sale or forfeiture of the Property or any part thereof to satisfy the same and (ii) the enforcement thereof against Grantor or

the Property or any part thereof, and provided Grantor first deposits with Lender, in escrow such sums or other security as Lender may reasonably require to assure Lender of the availability of sufficient funds to pay such tax, lien, assessment or charge if and when same is finally determined to be due.

    (c)  Grantor will not suffer any mechanic's, materialman's, laborer's, statutory or other lien to be created and to remain outstanding upon all or any part of the Property.

  **1.03**  <u>Insurance.</u>

    (a)  Grantor shall procure for, deliver to and maintain for the benefit of Lender during the term of this Deed, insurance policies of insurance companies, in amounts, in form and substance, and with expiration dates acceptable to Lender and containing noncontributory standard mortgagee clauses, their equivalent or a satisfactory mortgagee loss payable endorsement in favor of Lender, providing the following types of insurance on the Property:

      (i)  insurance against loss or damage by fire, lightning, vandalism, malicious mischief and flood (if the Land is in an area which is considered a flood risk area by the U. S. Department of Housing and Urban Development) and against such other hazards as are presently included in so-called "all risk replacement cost insurance" and against such other insurable hazards as, under good insurance practices, from time to time are insured against for properties of similar character and location, the amount of which insurance shall be not less than one hundred percent (100%) of the full replacement cost of the Property without deduction for depreciation; and which policies of insurance shall contain satisfactory "agreed amount" endorsements; and

      (ii)  rent or business interruption insurance against loss of income arising out of damage or destruction by fire, lightning, vandalism, malicious mischief and flood and such other hazards as are presently included in so-called "all risk replacement cost insurance;" and

      (iii)  if applicable, builder's risk insurance on projects under construction.

    (b)  Lender is hereby authorized and empowered, at its option, to adjust or compromise any loss under any insurance policies maintained pursuant to this Paragraph 1.03, and to collect and receive the proceeds from any such policy or policies. Each insurance company is hereby authorized and directed to make payment for all such losses directly to Lender, instead of to Grantor and Lender jointly. In the event any insurance company fails to disburse directly and solely to Lender but disburses instead either solely to Grantor or to Grantor and Lender jointly, Grantor agrees immediately to endorse and transfer such proceeds to Lender. Upon the failure of Grantor to endorse and transfer such proceeds as aforesaid, Lender may execute such endorsements or transfers for and in the name of the Grantor and Grantor hereby irrevocably appoints Lender as Grantor's agent and attorney-in-fact so to do. After deducting from said insurance proceeds all of its expenses incurred in the collection and administration of such sums, including attorneys' fees, Lender may apply the net proceeds or any part thereof, at its option, (i) to the payment of the indebtedness hereby secured, whether or not due and in whatever order Lender elects, (ii) to the repair and/or restoration of the Property or (iii) for any other purposes or objects for which Lender is entitled to

advance funds under this Deed; all without affecting the lien of this Deed. Lender shall not be held responsible for any failure to collect any insurance proceeds due under the terms of any policy regardless of the cause of such failure.

1.04 Condemnation. In the event there hereafter occurs a condemnation (which term when used in this Deed shall include any damage or taking by any governmental authority or other entity having the power of eminent domain, and any transfer by private sale in lieu thereof), resulting in any damage or taking, either temporarily or permanently, of (i) the entire Property, (ii) any portion of any building now or hereafter erected on the Land, (iii) so much of the Property as causes the remainder of the Property to be in violation of any zoning laws, restrictive covenants or similar laws, regulations or restrictions affecting the Property, or (iv) so much of the Property as, in the opinion of the Lender, renders the remainder of the Property materially less useful or valuable then, and in any one of said events, the entire indebtedness secured hereby shall, at the option of the Lender, become immediately due and payable. Lender shall be entitled to receive all compensation, awards and other payments or relief thereof to the full extent of the indebtedness then secured hereby. Lender is hereby authorized, at its option to commence, appear in and prosecute, in its own or in Grantor's name, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith. All such compensation, awards, damages, claims, rights of action and proceeds, and the right thereto, are hereby assigned by Grantor to Lender. After deducting from said condemnation proceeds all of its expenses incurred in the collection and administration of such sums, including attorney's fees, Lender may apply the net proceeds or any part thereof, at its option, (a) to the payment of the indebtedness hereby secured, whether or not due or in whatever order Lender elects, (b) to the repair and/or restoration of the Property of (c) for any other purposes or objects for which Lender is entitled to advance funds under this Deed, all without affecting the lien of this Deed, and any balance of such monies then remaining shall be paid to Grantor.

**1.05    Care, Use and Management of Property.**

(a)    Grantor will keep the buildings, parking areas, roads and walkways, recreational facilities, landscaping and all other improvements of any kind now or hereafter erected on the Land or any part thereof in good condition and repair, will not commit or suffer any waste and will not do or suffer to be done anything which will increase the risk of fire or other hazard to the Property of any part thereof.

(b)    Grantor will not remove or demolish nor alter the structural character of any building located on the Land without the written consent of Lender.

(c)    If the Property or any part thereof is damaged by fire or any other cause, Grantor will give immediate written notice thereof to Lender.

(d)    Lender or its representative is hereby authorized to enter upon and inspect the Property at any time during normal business hours.

(e)Grantor will promptly comply with all present and future laws, ordinances, rules and regulations of any governmental authority (including, but not limited to, all environmental and

Case 17-67324-lrc    Doc 285-1    Filed 03/30/21    Entered 03/30/21 15:43:49    Desc

ecological laws and regulations) affecting the Property or any part thereof. Provided, however, nothing contained herein shall require compliance with such laws, ordinances, rules or regulations by Grantor for so long as Grantor shall in good faith and at its own expense contest the validity thereof by appropriate legal proceedings.

(f)    If all or any part of the Property shall be damaged by fire or other casualty, Grantor will promptly restore the Property to the equivalent of its original condition; and if a part of the Property shall be damaged through condemnation, Grantor will promptly restore, repair or alter the remaining portions of the Property in a manner satisfactory to Lender. Notwithstanding the foregoing, Grantor shall not be obligated to so restore unless in each instance, Lender agrees to make available to Grantor (pursuant to a procedure satisfactory to Lender) any net insurance or condemnation proceeds actually received by Lender hereunder in connection with such casualty loss or condemnation, to the extent such proceeds are required to defray the expense of such restoration; provided, however, that the insufficiency of any such insurance or condemnation proceeds to defray the entire expense of restoration shall in no way relieve Grantor of its obligation to restore. In the event all or any portion of the Property shall be damaged or destroyed by fire or other casualty or by condemnation, Grantor shall promptly deposit with Lender a sum equal to the amount by which the estimated cost of the restoration of the Property (as determined by Lender in its good faith judgment) exceeds the actual net insurance or condemnation proceeds received by Lender in connection with such damage or destruction, which deposit will be disbursed by Lender to Grantor to defray the expense of restoration.

(g)    Grantor shall at all times perform all agreements, undertakings and functions necessary to operate the Property in a first-class manner. Grantor shall not be permitted to alter or change the use of the Property or to abandon the Property without the prior written consent of Lender.

**1.06    Leases and Other Agreements Affecting Property.**    Grantor will duly and punctually perform all terms, covenants, conditions and agreements binding upon it under any lease or any other agreement of any nature whatsoever which involves or affects the Property or any part thereof. Grantor will, at the request of Lender, furnish Lender with executed copies of all leases now or hereafter created upon the Property or any part thereof. Any leases hereafter entered into by Grantor for any portion of the Property must be first submitted to and approved by Lender. Upon the request of Lender, Grantor will provide Lender with a specific assignment of any such leases, in form and content satisfactory to Lender. All such leases must be subordinate to the lien of this Deed unless Lender otherwise specifies in which case such specific leases shall be made superior to the lien of this Deed. Lender shall also be entitled to require that certain leases be made superior to this Deed but that certain provisions of such superior leases be made subject to this Deed. Lender shall also be entitled to require, and Grantor shall use its best efforts to obtain, the execution of non-disturbance and attornment agreements from any tenants specified by Lender. Any form lease hereafter used by Grantor shall be first submitted to and approved by Lender. Grantor hereby authorizes and directs each present and future tenant of the Property to pay to Lender all rents and any other sums due Grantor as landlord and to perform for the direct benefit of Lender any other obligations of such tenant to Grantor as landlord, as if Lender were the landlord under such tenant's lease, immediately upon receipt of a written demand by Lender to make such payment or perform such obligation. No such demand by Lender shall constitute or be deemed to constitute any

assumption by Lender of any obligations of the landlord under such tenant's lease. Subject only to compliance by Lender with the provisions of Paragraph 2.01, no such demand by Lender shall constitute or be deemed to constitute any wrongful interference by Lender in the affairs or business relationships of Grantor or otherwise give rise to any right, claim or action by Grantor against Lender. No tenant shall be responsible for ascertaining whether any such demand by Lender is authorized or whether a default by Grantor has occurred under this Deed. Grantor hereby waives any right, claim or action Grantor may now or hereafter have against any such tenant by reason of such tenant's payment to or performance for Lender as described above, and any such payment to or performance for Lender shall discharge the obligation of such tenant to make such payment to, or perform such obligation for, Grantor.

  1.07    <u>Further Assurances; After-Acquired Property.</u>  At any time, and from time to time, upon request by Lender, Grantor will make, execute and deliver or cause to be made, executed and delivered, to Lender and, where appropriate, cause to be recorded and/or filed and from time to time thereafter to be rerecorded and/or re-filed at such time and in such offices and places as shall be deemed desirable by Lender, any and all such other and further deeds to secure debt, security agreements, financing statements, continuation statements, instruments of further assurance, certificates and other documents as may, in the opinion of Lender, be necessary or desirable in order to effectuate, complete, or perfect, or to continue and preserve (a) the obligation of Grantor under the Note and under this Deed and (b) the lien of this Deed as a first and prior lien upon and security title in and to all of the Property, whether now owned or hereafter acquired by Grantor. Upon any failure by Grantor so to do, Lender may make, execute, record, file, rerecord and/or re-file any and all such deeds to secure debt, security agreements, financing statements, continuation statements, instruments, certificates, and documents for and in the name of Grantor and Grantor hereby irrevocably appoints Lender the agent and attorney-in-fact of Grantor so to do. The lien hereof will automatically attach, without further act, to all after acquired property attached to and/or used in the operation of the Property or any part thereof.

  1.08    <u>Expenses.</u>  Grantor will pay or reimburse Lender, upon demand therefor, for all attorneys' fees, costs and expenses incurred by Lender in any suit, action, legal proceeding or dispute of any kind in which Lender is made a party or appears as party plaintiff or defendant, affecting or arising in connection with the indebtedness secured hereby, this Deed or the interest created herein, or the Property, including, but not limited to, the exercise of the power of sale contained in this Deed, any condemnation action involving the Property or any action to protect the security hereof; and any such amounts paid by Lender shall be added to the indebtedness secured by the lien of this Deed.

  1.9    <u>Estoppel Affidavits.</u>  Grantor, upon ten (10) days prior written notice, shall furnish Lender a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and whether or not any offsets or defenses exist against such principal and interest. Lender, upon ten (10) days prior written notice, shall furnish Grantor a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and the date on which the last payment under the Note was received.

  1.10    <u>Subrogation.</u>  Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the indebtedness secured hereby.

**1.11**    <u>**Books, Records, Accounts and Annual Reports.**</u>  Grantor will keep and maintain or will cause to be kept and maintained proper and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Property or in connection with any services, equipment or furnishings provided in connection with the operation of the Property.  Lender shall have the right from time to time at all times during normal business hours to examine such books, records and accounts at the office of Grantor or such other person or entity maintaining such books, records and accounts and to make copies or extracts thereof as Lender shall desire.

**1.12**    <u>**Limit of Validity.**</u>  If from any circumstances whatsoever fulfillment of any provision of this Deed or of the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then <u>ipso facto</u> the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Deed or under the Note that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity.  The provisions of this Paragraph 1.13 shall control every other provision of this Deed and of the Note.

**1.13**    <u>**Changes in Ownership.**</u>  Grantor hereby acknowledges to Lender that (a) the identity and expertise of Grantor were, and continue to, be material circumstances upon which Lender has relied in connection with, and which constitutes, valuable consideration to Lender for, the extending to Grantor of the loan evidenced by the Note and (b) any change in such identity or expertise could materially impair or jeopardize the security for the payment of the Note granted to Lender by this Deed.  Grantor therefore covenants and agrees with Lender, as part of the consideration for the extending to Grantor of the loan evidenced by the Note, that Grantor shall not, without the prior written consent of Lender, (i) convey, transfer, assign, further encumber or pledge the Property, or all or any part of Grantor's legal, beneficial or other interest in the Property nor (ii) permit any transfers of interests in Grantor, except as otherwise expressly permitted herein.

**ARTICLE 2**

**2.01**    <u>**Events of Default.**</u>  The terms "Default", "Event of Default" or "Events of Default", wherever used in this Deed, shall mean any one or more of the following events:

(a)    Failure by Grantor to pay as and when due and payable any installment of principal or interest as required by the Obligations or by this Deed; or

(b)    Failure by Grantor to duly observe or perform any other term, covenant, condition or agreement of this Deed; or

(c)    Failure by Grantor to duly observe or perform any term, covenant, condition or agreement, or an occurrence of an event of default, in the Note, or in any related loan documents, including, without limitation, that certain Loan Agreement entered into between the parties on the date hereof; or

(d)    Failure by Grantor to duly observe or perform any term, covenant, condition or agreement in any assignment of lease (s) or any other agreement given or made as additional security for the performance of the Obligations or this Deed; or

(e)    Any warranty of Grantor contained in this Deed or in any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, proves to be untrue or misleading in any material respect; or

(f)    The filing by Grantor of a voluntary petition in bankruptcy or the filing by Grantor of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or borrower's seeking or consenting to or acquiescing in the appointment of any trustee, receiver or liquidator of Grantor or of all or any substantial part of the Property or of any or all of the rents, issues, profits or revenues thereof, or the making by Grantor of any general assignment for the benefit of creditors, or the admission in writing by Grantor of its inability to pay its debts generally as they become due; or

(g)    The entry by a court of competent jurisdiction of an order, judgment or decree approving a petition filed against Grantor seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, which order, judgment or decree remains un-vacated and un-stayed for an aggregate of ninety (90) days (whether or not consecutive) from the date of entry thereof, or the appointment of any trustee, receiver or liquidator of Grantor or of all or any substantial part of the Property or of any or all of the rents, issues, profits or revenues thereof without the consent or acquiescence of Grantor, which appointment shall remain un-vacated and un-stayed for an aggregate of ninety (90) days (whether or not consecutive).

Notwithstanding the foregoing, Grantor shall not be deemed to be in Default (except for purposes of late charges and default interest as provided in the Note and for certain other proposes as provided below) under the foregoing subparagraph (a) unless and until Grantor shall have failed to cure such Default within the five (5) days after the due date for such payment as required by the Note or this Deed; and Grantor shall not be deemed to be in Default under the foregoing subparagraphs (b), (c) and (d) unless and until Grantor shall have failed to cure such Default within thirty (30) days (or such longer period, if any, as is reasonably required, but not to exceed 90 days in any event, provided Grantor promptly commences and diligently pursues such cure) after receipt by Grantor of written notice from Lender of such Default; provided, however, immediately upon the occurrence of any event described in the foregoing subparagraphs (a) through (f), and without regard to any time periods or opportunities to cure described in this paragraph, Lender may make written demand upon any and all tenants of the Property to pay to Lender all rents and other sums and to perform for the direct benefit of Lender all obligations of such tenants, as provided in Paragraph 1.07.

**2.02    Acceleration of Maturity.** If an Event of Default shall have occurred and be continuing, then the entire indebtedness secured hereby shall, at the option of Lender, immediately become due and payable without notice or demand, time being of the essence of this Deed; and no

omission on the part of Lender to exercise such option when entitled to do so shall be construed as a waiver of such right.

**2.03     Lender's Right to Enter and Take Possession, Operate and Apply Revenues.**

(a)     If an Event of Default shall have occurred and be continuing, Grantor upon demand of Lender, shall forthwith surrender to Lender the actual possession of the Property and if, and to the extent, permitted by law, Lender itself, or by such officers or agents as it may appoint, may enter and take possession of all the Property without the appointment of a receiver, or an application therefor, and may exclude Grantor and its agents and employees wholly therefrom, and may have joint access with Grantor to the books, papers and accounts of Grantor.

(b)     If Grantor shall for any reason fail to surrender or deliver the Property or any part thereof after such demand by Lender, Lender may obtain a judgment or decree conferring upon Lender the right to immediate possession or requiring Grantor to deliver immediate possession of the Property to Lender.  Grantor will pay to Lender, upon demand, all expenses of obtaining such judgment or decree, including reasonable compensation to Lender, its attorneys and agents; and all such expenses and compensation shall, until paid, be secured by the lien of this Deed.

(c)     Upon every such entering upon or taking of possession, Lender may hold, store, use, operate, manage and control the Property and conduct the business thereof, and, from time to time (i) make all necessary and proper maintenance, repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and purchase or otherwise acquire additional fixtures, personalty and other property; (ii) insure or keep the Property insured; (iii) manage and operate the Property and exercise all the rights and powers of Grantor to the same extent as Grantor could in its own name or otherwise with respect to the same; and (iv) enter into any and all agreements with respect to the exercise by others of any of the powers herein granted Lender, all as Lender from time to time may determine to be in its best interest.  Lender may collect and receive all the rents, issues, profits and revenues from the Property, including those past due as well as those accruing thereafter, and, after deducting (aa) all expenses of taking, holding , managing and operating the Property (including compensation for the services of all persons employed for such purposes); (bb) the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases and acquisitions; (cc) the cost of such insurance; (dd) such taxes, assessments and other similar charges as Lender may at its option pay; (ee) other proper charges upon the Property or any part thereof; and (ff) the reasonable compensation, expenses and disbursements of the attorneys and agents of Lender, Lender shall apply the remainder of the monies and proceeds so received by Lender, first to the payment of accrued interest; and second to the payment of overdue installments of principal.  Lender shall have no obligation to discharge any duties of a landlord to any tenant or to incur any liability as a result of any exercise by Lender of any rights under this Deed or otherwise.  Lender shall not be liable for any failure to collect rents, issues, profits and revenues from the Property, nor shall Lender be liable to account for any such rents, issues, profits or revenues unless actually received by Lender.

(d)     Whenever all that is due upon such interest, deposits and principal installments and under any of the terms, covenants, conditions and agreements of this Deed, shall have been paid and all Events of Default made good, Lender shall surrender possession of the Property to Grantor, its

successors or assigns. The same right of taking possession, however, shall exist if any subsequent Event of Default shall occur and be continuing.

    2.04    **Performance by Lender of Defaults by Grantor.**  If Grantor shall Default in the payment, performance or observance of any term, covenant or condition of this Deed, Lender may, so long as such Default continues, as its option, pay, perform or observe the same, and all payments made or costs or expenses incurred by Lender in connection therewith, shall be secured hereby and shall be, without demand, immediately repaid by Grantor to Lender with interest thereon at the default rate provided in the Note.  Lender shall be the sole judge of the necessity for any such actions and of the amounts to be paid.  Lender is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without thereby becoming liable to Grantor or any person in possession holding under Grantor.

    2.05    **Receiver.**  If an Event of Default shall have occurred and be continuing, Lender, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right without notice and without regard to the occupancy or value of any security for the indebtedness secured hereby or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Property and to collect and apply the rents, issues, profits and revenues thereof.  The receiver shall have all of the rights and powers permitted under the laws of the State of Georgia.  Grantor will pay to Lender upon demand all expenses, including receiver's fees, attorney's fees, costs and agent's compensation, incurred pursuant to the provisions of this Paragraph 2.05; and all such expenses shall be secured by this Deed.

    2.06    **Enforcement.**

    (a)    If an Event of Default shall have occurred and be continuing, Lender, at its option, may sell the Property or any part of the Property at public sale or sales before the door of the courthouse of the county in which the Property or any part of the Property is situated, to the highest bidder for cash, in order to pay the indebtedness secured hereby and accrued interest thereon and insurance premiums, liens, assessments, taxes and charges, including utility charges, if any, with accrued interest thereon, and all expenses of the sale and of all proceedings in connection therewith, including reasonable attorney's fees, if incurred, after advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which Sheriff's sales are advertised in said county.  At any such public sale, Lender may execute and deliver to the purchaser a conveyance of the Property or any part of the Property in fee simple, with full warranties of title and to this end, Grantor hereby constitutes and appoints Lender the agent and attorney-in-fact of Grantor to make such sale and conveyance, and thereby to divest Grantor of all right, title or equity that Grantor may have in and to the Property and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Grantor. The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, are granted as cumulative of the other remedies provided hereby or by law for collection of the indebtednesses secured hereby and shall not be exhausted by one exercise thereof but may be exercised until full payment of all indebtednesses secured hereby.

(b)   If an Event of Default shall have occurred and be continuing, Lender may, in addition to and not in abrogation of the rights covered under subparagraph (a) of this Paragraph 2.06, either with or without entry or taking possession as herein provided or otherwise, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note or the performance of any term, covenant, condition or agreement of this Deed or any other right, and (ii) to pursue any other remedy available to it, all as Lender shall determine most effectual for such purposes.

2.07    **Purchase by Lender.**  Upon any foreclosure sale, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the indebtedness secured hereby as a credit to the purchase price.

2.08    **Application of Proceeds of Sale.**  In the event of a foreclosure sale of the Property, the proceeds of said sale shall be applied, first, to the expenses of such sale and of all proceedings in connection therewith, including attorney's and trustee's fees, then to insurance premiums, liens, assessments, taxes and charges including utility charges advanced by Lender, then to payment of the outstanding principal balance of the indebtedness secured hereby, then to the accrued interest on all of the foregoing, and finally the remainder, if any, shall be paid to Grantor.

2.09    **Grantor as Tenant Holding Over.**  In the event of any such foreclosure sale by Lender, Grantor shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over.

2.10    **Waiver of Appraisement, Valuation, Stay, Extension and Redemption Laws.** Grantor agrees to the full extent permitted by law, that in case of a Default on the part of Grantor hereunder, neither Grantor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, extension, homestead, exemption or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Deed, or the absolute sale of the Property, or the final and absolute putting into possession thereof, immediately after such sale, of the purchasers thereat, and Grantor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets comprised in the security intended to be created hereby marshaled upon any foreclosure of the lien hereof.  Without limiting the generality of the foregoing, Grantor agrees that, in the event of the filing of any voluntary or involuntary petition in bankruptcy by or against Grantor, (i) Grantor shall not assert, and shall not request or cause any other party to assert, that the automatic stay provided by Section 362 of the Bankruptcy Code shall operate or be interpreted to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights Lender has by reason of this Deed, the Note or any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, or any other rights Lender may have, whether now existing or hereafter acquired, against Grantor, or against any collateral (including, without limitation, the Property) owned by Grantor; (ii) Grantor consents to, and Grantor shall not directly or indirectly contest, oppose, object to or otherwise defend against, Lender's efforts to gain relief from the automatic stay imposed under Section 362 of the Bankruptcy Code, and Grantor hereby

Case 17-67324-lrc    Doc 244-1    Filed 04/13/21    Entered 04/13/21 15:39:10    Desc
Case 17-67324-lrc    Doc 285-1    Filed 03/26/21    Page 43 of 132 15:43:49    Desc
Exhibit Exhibits 1 to 29    Page 124 of 132

waives all right to so contest, oppose, object or otherwise defend; (iii) Grantor agrees that Lender shall be entitled to the lifting of such automatic stay without the necessity or requirement of establishing or proving the value of the Property, the lack of adequate protection of Lender's interest in the Property or the lack of Grantor's equity in the Property; and (iv) Grantor shall not seek a supplemental stay or any other relief, whether injunctive or otherwise, pursuant to Section 105 of the Bankruptcy Code, or any other provision of the Bankruptcy Code, or otherwise, to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights Lender has by reason of this Deed, the Note or any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, or any other rights Lender may have, whether now existing or hereafter acquired, against Grantor, or against any collateral (including, without limitation, the Property) owned by Grantor.

2.11    **Leases.**  Lender, at is option, is authorized to foreclose this Deed subject to the rights of any tenants of the Property, and the failure to make any such tenants parties to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be by Grantor, a defense to any proceedings instituted by Lender to collect the sums secured hereby.

2.12    **Discontinuance of Proceedings and Restoration of the Parties.**  In case Lender shall have proceeded to enforce any right, power or remedy under this Deed by foreclosure, entry or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then and in every such case Grantor and Lender shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of Lender shall continue as if no such proceeding had been taken.

2.13    **Remedies Cumulative.**  Subject to Paragraph 2.18 hereof, no right, power or remedy conferred upon or reserved to Lender by this Deed is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

2.14    **Waiver.**

(a)    No delay or omission of Lender or of any holder of the Note to exercise any right, power or remedy accruing upon any Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such Default to acquiescence therein; and every right, power and remedy given by this Deed to Lender may be exercised from time to time as often as may be deemed expedient by Lender. No consent or waiver, expressed or implied, by Lender to or of any breach or Default by Grantor in the performance of the obligations thereof hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or Default in the performance of the same or any other obligations of Grantor hereunder. Failure on the part of Lender to complain of any act or failure to act or to declare any Event of Default, irrespective of how long such failure continues, shall not constitute a waiver by Lender of its rights hereunder or impair any rights, powers or remedies consequent on any breach or Default by Grantor.

(b)    If Lender (i) grants forbearance or an extension of time for the payment of any sums secured hereby; (ii) takes other or additional security for the payment of any sums secured

hereby; (iii) waives or does not exercise any right granted herein or in the Note; (iv) releases any part of the Property from the lien of this Deed or otherwise changes any of the terms, covenants, conditions or agreements of the Note or this Deed; (v) consents to the filing of any map, plat or replat affecting the Property; (vi) consents to the granting of any easement or other right affecting the Property; or (vii) makes or consents to any agreement subordinating the lien hereof, any such act or omission shall not release, discharge, modify, change or affect the original liability under the Note, this Deed or any other obligation of Grantor or any subsequent purchaser of the Property or any part thereof, or any maker, co-signer, endorser, surety or guarantor; nor shall any such act or omission preclude Lender from exercising any right, power or privilege herein granted or intended to be granted in the event of any Default then made or of any subsequent Default; nor except as otherwise expressly provided in an instrument or instruments executed by Lender, shall the lien of this Deed be altered thereby.  In the event of the sale or transfer by operation of law or otherwise of all or any part of the Property, Lender, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Property or the indebtedness secured hereby, or with reference to any of the terms, covenants, conditions or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto, and without in any way releasing or discharging any liabilities, obligations or undertakings.

**2.15   Suits to Protect the Property.**   Lender shall have power (a) to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Property by any acts which may be unlawful or in violation of this Deed, (b) to preserve or protect its interest in the Property and in the rents, issues, profits and revenues arising therefrom, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Lender.

**2.16   Lender May File Proofs of Claim.**   In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Grantor, its creditors or its property, Lender, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Lender allowed in such proceedings for the entire amount due and payable by Grantor under this Deed at the date of the institution of such proceedings and for any additional amount which may become due and payable by Grantor hereunder after such date.

**2.17   WAIVER OF BORROWER'S RIGHTS.**   BY EXECUTION OF THIS DEED AND BY INITIALING THIS PARAGRAPH 2.17, BORROWER EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY BORROWER WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED; (B) WAIVES ANY AND ALL RIGHTS WHICH BORROWER MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES (INCLUDING, WITHOUT LIMITATION, THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS FOR THE SEVERAL STATES, OR

BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THIS DEED; (C) ACKNOWLEDGES THAT BORROWER HAS READ THIS DEED AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF THIS DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO BORROWER AND BORROWER HAS CONSULTED WITH COUNSEL OF BORROWER'S CHOICE PRIOR TO EXECUTING THIS DEED; AND (D) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OR BORROWER HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY BORROWER AS PART OF A BARGAINED FOR LOAN TRANSACTION.

2.18    **Claims Against Lender.** No action at law or in equity shall be commenced, or allegation made, or defense raised, by Grantor against Lender for any claim under or related to this Deed, the Note or any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, or related to the conduct of the parties thereunder, unless written notice of such claim, expressly setting forth the particulars of the claim alleged by Grantor, shall have been given to Lender within sixty (60) days from and after the initial awareness of Grantor of the event, omission or circumstance forming the basis of Grantor for such claim. Any failure by Grantor to timely provide such written notice to Lender shall constitute a waiver by Grantor of such claim.

## ARTICLE 3

3.01    **Successors and Assigns.** This Deed shall inure to the benefit of and be binding upon Grantor and Lender and their respective successors and assigns. Whenever a reference is made in this Deed to Grantor or Lender such reference shall be deemed to include a reference to the successors and assigns of Grantor or Lender.

3.02    **Terminology.** All personal pronouns used in this Deed whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural, and vice versa. Titles and Articles are for convenience only and neither limit nor amplify the provisions of this Deed itself, and all references herein to Articles, Paragraphs or subparagraphs thereof, shall refer to the corresponding Articles, Paragraphs or subparagraphs thereof, of this Deed unless specific reference is made to such Articles, Paragraphs or subparagraphs thereof of another document or instrument.

3.03    **Severability.** If any provision of this Deed or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Deed and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

3.04    **Applicable Law.** This Deed shall be interpreted, construed and enforced according to the laws of the State of Georgia.

**3.05**   **Notices, Demands and Requests.**   All notices, demands or requests provided for or permitted to be given pursuant to this Deed must be in writing and shall be deemed to have been properly given or served by depositing in the United States Mail, postpaid and registered or certified return receipt requested, and addressed to the addressees hereinafter set forth.   All notices, demands and requests shall be effective upon being deposited in the United States Mail.   However, the time period in which a response to any notice, demand or request must be given, if any, shall commence to run from the date of receipt of the notice, demand or request by the addressee thereof.   Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to be receipt of the notice, demand or request sent.   By giving at least thirty (30) days written notice thereof, Grantor or Lender shall have the right from time to time and at any time during the term of this Deed to change their respective addresses and each shall have the right to specify as its address any other address within the United States of America.

For the purposes of this Deed, the address of the Grantor is as set forth on the first page hereof.

For the purposes of this Deed, the address of the Lender is as set forth on the first page hereof.

SIGNATURE PAGE TO FOLLOW



**IN WITNESS WHEREOF**, Grantor has executed this Deed under seal, as of the day and year first above written.

GRANTOR:



_____
DAVID LEE SMITH

_____
Unofficial Witness

Notary Public:_____

My Commission expires:_____

SIGNATURE PAGE TO GEORGIA DEED TO SECURE DEBT

**EXHIBIT A**
**Property Description**

3795 N Stratford Rd NE, Atlanta, Georgia 30342



Chantelle Tiblier                    **EXHIBIT  28**

| | |
|---|---|
| **From:** | · david@residentialsouthpartners.com |
| **Sent:** | Friday, March 10, 2017 4:24 PM |
| **To:** | Edward Sledge |
| **Subject:** | RE: Re: 17-0044-0002-085-1, 3795 North Stratford Road, David Smith |

I already sent to them and said the same.

---------- Original Message ----------
Subject: Re: 17-0044-0002-085-1, 3795 North Stratford Road, David Smith
From: "Edward Sledge" <esledge@mcdowellknight.com>
Date: 3/10/17 5:19 pm
To: "david@residentialsouthpartners.com" <david@residentialsouthpartners.com>

Your lawyers need to see lis pendins to include in demand letter that lis pendins be withdrawn. This is outrageous

On Mar 10, 2017, at 3:09 PM, "david@residentialsouthpartners.com" <david@residentialsouthpartners.com> wrote:

I have not reviewed yet.

---------- Original Message ----------
Subject: 17-0044-0002-085-1, 3795 North Stratford Road, David Smith
From: "Traditional Title Services Scanner 4" <ttsscan4@traditionaltitle.com>
Date: 3/10/17 4:05 pm
To: "david@residentialsouthpartners.com" <david@residentialsouthpartners.com>

David,

Listed below is the link to the record in ClosingLink.
https://www.closinglink.com/CLOrderDetail.asp?ID=0,

Listed below is the legal description for the attached search.
All that tract or parcel of land lying and being in Land Lot 44 of the 17th District, Fulton County, Georgia and being more particularly described as follows:

BEGINNING on the East side of North Stratford Road at a point seven hundred eighty-nine and three-tenths (789.3) feet North of the Northeast intersection of Old Ivy Road and North Stratford Road; run thence North along the East of North Stratford fifty four (54) feet to a point; run thence East three hundred (300) feet to a point; run thence South fifty four (54) feet to a point; run thence West three hundred (300) feet to the East side of North Stratford Road and the POINT OF BEGINNING, which currently has the address of 3795 North Stratford Road, Atlanta, Georgia.

NO GUARANTEE CAN BE MADE TO THE ACCURACY OF THIS DESCRIPTION AS IT IS COMPUTER GENERATED.  PLEASE VERIFY DESCRIPTIONS FOR ACCURACY BEFORE USING.



EXHIBIT
T-28

## EXHIBIT 30

**Edward Sledge**

| | |
|---|---|
| **From:** | Edward Sledge |
| **Sent:** | Monday, March 13, 2017 2:20 PM |
| **To:** | david@residentialsouthpartners.com |
| **Cc:** | esledge@bradley.com |
| **Subject:** | Smith Line of credit note and second mortgage |
| **Attachments:** | 512685.PDF; 512719.pdf |

David. Attached is the line of credit note and second mortgage. Let's try to handle Wed.
ED

Edward S. Sledge
McDowell Knight Roedder & Sledge LLC
RSA Battle House Tower
11 North Water Street Suite 13290
Mobile, AL 36602
Phone: 251/431-8803
Fax: 251/432-5303
Cell: 251/379-0486

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.



McDOWELL KNIGHT ROEDDER & SLEDGE L.L.C.
LAWYERS

Home | Firm News | Firm Overview | Areas of Practice | Our Attorneys
Contact Us | Recruitment | Resources | Representative Clients

www.mcdowellknight.com




EXHIBIT
J-30

1

## EXHIBIT 30 (cont.)

### LINE OF CREDIT PROMISSORY NOTE

$200,000.00                                                   MARCH __, 2017

FOR VALUE RECEIVED, the undersigned **DAVID LEE SMITH** (the "Borrower"), hereby promises to pay to the order of **EDWARD S. SLEDGE, III, AND CAROLINE SLEDGE SMITH** (the "Sledge"; Sledge and any subsequent holder hereof, as applicable, are referred to herein as the "Holder"), without grace at such place as Holder may direct, in lawful money of the United States of America, the principal amount of **TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($200,000.00)** or so much thereof as heretofore advanced and is advanced hereunder, with interest at the rate and calculated in the manner described herein. Future advances shall be at the option of Holder. Payment of principal and interest shall be in accordance with the following provisions:

1.  **Payment**. The balance of the principal and all accrued and unpaid interest on this Note and all charges hereunder and under the Mortgage (defined herein) shall be due and payable ON DEMAND (the "Maturity Date").

2.  **Interest; Late Charges; Commitment Fee**. Interest from the date hereof until the Maturity Date shall accrue at the rate of one 5percent per annum. Interest on all principal amounts outstanding from time to time hereunder shall be calculated on the basis of a 360-day year applied to the actual number of days upon which principal is outstanding, by multiplying the product of the principal amount and the applicable rate set forth herein by the actual number of days elapsed, and dividing by 360.

3.  **Security**. The indebtedness evidenced hereby is secured by, among other things, real property located in Fulton County, Georgia, and described in that certain Deed to Secure Debt and Security Agreement ("Mortgage") from Borrower to Sledge.

4.  **Event of Default**. The happening of any one or more of the following events shall constitute an "Event of Default" hereunder:

    (a)    Failure to make a payment of the principal of or interest on this Note within ten (10) days of the date on which the same becomes due and payable;

    (b)    The occurrence of any Event of Default specified in the Mortgage or in any other instrument executed in connection with or securing this Note, and the Borrower's failure to cure the same within any applicable cure period specifically provided therein;

    (c)    The failure by the Borrower, the Mortgage, or in any other instrument executed in connection with or securing this Note and the failure to cure the same within any applicable cure period specifically provided therein.

Upon the occurrence of an Event of Default, or at any time thereafter during the continuance of any such Event of Default, the Holder may, with or without notice to the Borrower, declare this Note to be forthwith due and payable, whereupon this Note and the indebtedness evidenced

hereby shall forthwith be due and payable, both as to principal and interest, without presentment, demand, protest, or other notice of any kind, all of which are hereby expressly waived, anything contained herein or in the Mortgage or in any other instrument executed in connection with or securing this Note to the contrary notwithstanding.

5.    **Waivers**.  Borrower and any endorser or guarantor of this Note hereby waive demand, presentment for payment, notice of dishonor, protest, and notice of protest and diligence in collection or bringing suit and agree that the Holder hereof may accept partial payment, or release or exchange security or collateral, without discharging or releasing any unreleased collateral or the obligations evidenced hereby. Borrower and each such endorser and guarantor further waive any and all rights of exemption, both as to personal and real property, under the Constitution or laws of the United States, the State of Alabama or any other state. No failure of any Holder of this Note to accelerate the indebtedness evidenced hereby or to exercise any other right hereunder shall be construed as a novation or modification of this Note or a waiver of the Holder's right to thereafter insist upon strict compliance with the terms of this Note without prior notice of such intention being given to the Borrower.

6.    **Attorney Fees**.  Borrower and each endorser or guarantor of this Note agree to pay reasonable actual attorneys' fees and costs incurred by the Holder hereof in collecting or attempting to collect this Note, whether by suit or otherwise.

7.    **Applicable Law; Parties; Under Seal**.  This Note is being delivered to, and accepted by, Bank in the State of Alabama, and this Note shall be governed by the laws of the State of Alabama.  It is intended, and the Borrower and Bank specifically agree, that the laws of the State of Alabama governing interest shall apply to this Note and to this transaction.  As used herein, the terms "Borrower", "Bank" and "Holder" shall be deemed to include their respective successors and assigns, whether by voluntary action of the parties or by operation of law.  This Note is given under the seal of Borrower, and it is intended that this Note is and shall constitute and have the effect of a sealed instrument according to law.

SIGNATURE PAGE TO FOLLOW

IN WITNESS WHEREOF, Borrower has delivered this Note the___ day of March, 2017 (regardless of the date executed).

**BORROWER:**

WITNESS:

_____          _____
                                    David Lee Smith, individually

STATE OF GEORGIA:
COUNTY OF FULTON:

I, the undersigned Notary Public, in and for said County in said State, hereby certify that **David Lee Smith** is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same voluntarily.

Given under my official hand and seal this ____ day of March 2017

(AFFIX NOTARIAL SEAL)          _____
                                NOTARY PUBLIC
                                My Commission Expires:_____

SIGNATURE PAGE TO LINE OF CREDIT PROMISSORY NOTE

## EXHIBIT 30 (cont.)

Prepared by and Return To:
Robert B. McGinley, Jr.
McDowell Knight Roedder & Sledge, LLC
11 N. Water St., Ste. 13290
Mobile, AL 36602
(251) 432-5300

STATE OF ALABAMA
COUNTY OF MOBILE

### DEED TO SECURE DEBT AND SECURITY AGREEMENT

THIS DEED TO SECURE DEBT AND SECURITY AGREEMENT (hereinafter referred to as this "Deed") made and entered into this ___ day of March, 2017, by and between DAVID LEE SMITH 3795 N Stratford Rd NE, Atlanta, Georgia 30342 (hereinafter referred to as "Grantor"), and EDWARD S. SLEDGE, III 11 North Water Street Suite 13290 Mobile, Alabama 36602 (hereinafter referred to as "Lender").

### WITNESSETH

In order to secure TWO HUNDRED THOUSAND and NO/100 UNITED STATES DOLLARS ($200,000.00) of a promissory note from Grantor to Lender maturing on March 1, 2037 and in the amount of $200,000.00 (the "Note") and other valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell, convey, assign, transfer and set over unto Lender, and its successors and assigns, and grant a security interest in all of the following described land and interests in land, estates, easements, rights, improvements, property, fixtures, equipment, furniture, furnishings, appliances, and appurtenances (hereinafter collectively referred to as the "Property"):

(a)    All those tracts of parcels of land and easements more particularly described in **Exhibit "A"** attached hereto and by this reference made a part hereof (hereinafter referred to as the "Land").

(b) All buildings, structures, towers and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, fire extinguishers and any other safety equipment required by governmental regulation or law, washers, dryers, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus and appurtenances, window screens, awnings and storm sashes, which are or shall be owned by Grantor and attached to said buildings, structures or improvements and all other furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles, building supplies and materials, books and records, chattels, inventory, accounts, farm products, consumer goods, general intangibles and personal property of every kind and nature whatsoever now or hereafter owned by Grantor and located in, on or about, or used or intended to

be used with or in connection with the use, operation or enjoyment of the Property, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of any of the foregoing, and all the right, title and interest of Grantor in any such furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles and personal property subject to or covered by any prior security agreement, conditional sales contract, chattel mortgage or similar lien or claim, together with the benefit of any deposits or payments now or hereafter made by Grantor on or behalf of Grantor, all trade-names, trademarks, servicemarks, logos and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Property or any part thereof or are now or hereafter acquired by Grantor; and all inventory, accounts, chattel paper, documents, equipment, fixtures, farm products, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described hereinabove, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land and a part of the Property as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Deed. The location of the above-described collateral is also the location of the Land.

(c)      All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, and appurtenances, reversion and reversions, remainder and remainders, whatsoever, in any way belonging, relating or appertaining to the Property or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor.

(d)      All income, rents, issues, profits and revenues of the Property from time to time accruing (including, without limitation, all vendor license payments, payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits whether held by Grantor or in a trust account, and escrow funds), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, or Grantor of, in and to the same; reserving only the right to Grantor to collect the same (other than insurance proceeds and condemnation payments) so long as Grantor is not in Default hereunder.

TO HAVE AND TO HOLD the Property and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of Lender and the successors and assigns of Lender, IN FEE SIMPLE forever; and Grantor covenants that Grantor is lawfully seized and possessed of the Property as aforesaid, and has good right to convey the same, that the same is unencumbered and that Grantor does warrant and will forever defend the title thereto against the claims of all persons whomsoever.

This conveyance is intended to operate and is to be construed as a deed passing the title to the Property to Lender and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt, and not as a mortgage, and is given to secure the following described indebtedness (the "Obligations"):

(a)    The debt evidenced by the Note together with any and all renewals, modifications and/or extensions of the Indebtedness evidenced by the Note.

(b)    Any and all additional advances made by Lender to protect or preserve the Property or the lien and security title hereof in and to the Property, or for taxes, assessments or insurance premiums as hereinafter provided (whether or not the original Grantor remains the owner of the Property at the time of such advances).

(c)    Any and all other and future indebtedness hereinafter incurred by Grantor to Lender.

Should the Obligations secured by this deed be paid according to the tenor and effect hereof when the same shall become due and payable, and should Grantor perform all covenants herein contained in a timely manner, then this Deed shall be cancelled and surrendered.

Grantor hereby further covenants and agrees with Lender as follows:

## ARTICLE 1

1.01    <u>Payment of Indebtedness.</u>  Grantor will pay the Obligations according to the tenor thereof and all other sums now or hereafter secured hereby promptly as the same shall become due.

1.02    <u>Taxes, Liens and Other Charges.</u>

(a)    In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of debts secured by deeds to secure debt or the manner of collecting taxes so as to adversely affect Lender, Grantor will promptly pay any such tax.  If Grantor fails to make such prompt payment or if, in the opinion of the Lender, any such state, federal, municipal, or other governmental law, order, rule or regulation prohibits Grantor from making such payment or would penalize Lender if Grantor makes such payment or if, in the opinion of Lender, the making of such payment might result in the imposition of interest beyond the maximum amount permitted by applicable law, then the entire balance of the principal sum secured by this Deed and all interest accrued thereon shall, at the option of Lender become immediately due and payable.

(b)    Grantor will pay, before the same becomes delinquent, all taxes, liens, assessments and charges of every character including all utility charges, whether public or private, already levied or assessed or that may hereafter be levied or assessed upon or against the Property; and will furnish Lender within thirty (30) days after the final date whereon same can be paid without penalty evidence of the due and punctual payment of all such taxes, assessments and other fees and charges.  Nothing contained herein shall require the payment or discharge of any such tax, lien, assessment or charge by Grantor for so long as Grantor shall in good faith and its own expense contest the amount or validity thereof by appropriate legal proceedings and provided such contest shall prevent (i) the collection thereof or other realization thereon and the sale or forfeiture of the Property or any part thereof to satisfy the same and (ii) the enforcement thereof against Grantor or

the Property or any part thereof, and provided Grantor first deposits with Lender, in escrow such sums or other security as Lender may reasonably require to assure Lender of the availability of sufficient funds to pay such tax, lien, assessment or charge if and when same is finally determined to be due.

(c)    Grantor will not suffer any mechanic's, materialman's, laborer's, statutory or other lien to be created and to remain outstanding upon all or any part of the Property.

1.03    **Insurance.**

(a)    Grantor shall procure for, deliver to and maintain for the benefit of Lender during the term of this Deed, insurance policies of insurance companies, in amounts, in form and substance, and with expiration dates acceptable to Lender and containing noncontributory standard mortgagee clauses, their equivalent or a satisfactory mortgagee loss payable endorsement in favor of Lender, providing the following types of insurance on the Property:

(i)    insurance against loss or damage by fire, lightning, vandalism, malicious mischief and flood (if the Land is in an area which is considered a flood risk area by the U. S. Department of Housing and Urban Development), and against such other hazards as are presently included in so-called "all risk replacement cost insurance" and against such other insurable hazards as, under good insurance practices, from time to time are insured against for properties of similar character and location; the amount of which insurance shall be not less than one hundred percent (100%) of the full replacement cost of the Property without deduction for depreciation; and which policies of insurance shall contain satisfactory "agreed amount" endorsements; and

(ii)    rent or business interruption insurance against loss of income arising out of damage or destruction by fire, lightning, vandalism, malicious mischief and flood and such other hazards as are presently included in so-called "all risk replacement cost insurance;" and

(iii)    if applicable, builder's risk insurance on projects under construction.

(b)    Lender is hereby authorized and empowered, at its option, to adjust or compromise any loss under any insurance policies maintained pursuant to this Paragraph 1.03, and to collect and receive the proceeds from any such policy or policies. Each insurance company is hereby authorized and directed to make payment for all such losses directly to Lender, instead of to Grantor and Lender jointly. In the event any insurance company fails to disburse directly and solely to Lender but disburses instead either solely to Grantor or to Grantor and Lender jointly, Grantor agrees immediately to endorse and transfer such proceeds to Lender. Upon the failure of Grantor to endorse and transfer such proceeds as aforesaid, Lender may execute such endorsements or transfers for and in the name of the Grantor and Grantor hereby irrevocably appoints Lender as Grantor's agent and attorney-in-fact so to do. After deducting from said insurance proceeds all of its expenses incurred in the collection and administration of such sums, including attorneys' fees, Lender may apply the net proceeds or any part thereof, at its option, (i) to the payment of the indebtedness hereby secured, whether or not due and in whatever order Lender elects, (ii) to the repair and/or restoration of the Property or (iii) for any other purposes or objects for which Lender is entitled to

advance funds under this Deed; all without affecting the lien of this Deed. Lender shall not be held responsible for any failure to collect any insurance proceeds due under the terms of any policy regardless of the cause of such failure.

1.04 Condemnation. In the event there hereafter occurs a condemnation (which term when used in this Deed shall include any damage or taking by any governmental authority or other entity having the power of eminent domain, and any transfer by private sale in lieu thereof), resulting in any damage or taking, either temporarily or permanently, of (i) the entire Property, (ii) any portion of any building now or hereafter erected on the Land, (iii) so much of the Property as causes the remainder of the Property to be in violation of any zoning laws, restrictive covenants or similar laws, regulations or restrictions affecting the Property, or (iv) so much of the Property as, in the opinion of the Lender, renders the remainder of the Property materially less useful or valuable then, and in any one of said events, the entire indebtedness secured hereby shall, at the option of the Lender, become immediately due and payable. Lender shall be entitled to receive all compensation, awards and other payments or relief thereof to the full extent of the indebtedness then secured hereby. Lender is hereby authorized, at is option, to commence, appear in and prosecute, in its own or in Grantor's name, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith. All such compensation, awards, damages, claims, rights of action and proceeds, and the right thereto, are hereby assigned by Grantor to Lender. After deducting from said condemnation proceeds all of its expenses incurred in the collection and administration of such sums, including attorney's fees, Lender may apply the net proceeds or any part thereof, at its option, (a) to the payment of the indebtedness hereby secured, whether or not due or in whatever order Lender elects, (b) to the repair and/or restoration of the Property of (c) for any other purposes or objects for which Lender is entitled to advance funds under this Deed, all without affecting the lien of this Deed; and any balance of such monies then remaining shall be paid to Grantor.

1.05   Care, Use and Management of Property.

(a)     Grantor will keep the buildings, parking areas, roads and walkways, recreational facilities, landscaping and all other improvements of any kind now or hereafter erected on the Land or any part thereof in good condition and repair, will not commit or suffer any waste and will not do or suffer to be done anything which will increase the risk of fire or other hazard to the Property of any part thereof.

(b)     Grantor will not remove or demolish nor alter the structural character of any building located on the Land without the written consent of Lender.

(c)     If the Property or any part thereof is damaged by fire or any other cause, Grantor will give immediate written notice thereof to Lender.

(d)     Lender or its representative is hereby authorized to enter upon and inspect the Property at any time during normal business hours.

(e) Grantor will promptly comply with all present and future laws, ordinances, rules and regulations of any governmental authority (including, but not limited to, all environmental and

ecological laws and regulations) affecting the Property or any part thereof. Provided, however, nothing contained herein shall require compliance with such laws, ordinances, rules or regulations by Grantor for so long as Grantor shall in good faith and at its own expense contest the validity thereof by appropriate legal proceedings.

(f)     If all or any part of the Property shall be damaged by fire or other casualty, Grantor will promptly restore the Property to the equivalent of its original condition; and if a part of the Property shall be damaged through condemnation, Grantor will promptly restore, repair or alter the remaining portions of the Property in a manner satisfactory to Lender. Notwithstanding the foregoing, Grantor shall not be obligated to so restore unless in each instance, Lender agrees to make available to Grantor (pursuant to a procedure satisfactory to Lender) any net insurance or condemnation proceeds actually received by Lender hereunder in connection with such casualty loss or condemnation, to the extent such proceeds are required to defray the expense of such restoration; provided, however, that the insufficiency of any such insurance or condemnation proceeds to defray the entire expense of restoration shall in no way relieve Grantor of its obligation to restore. In the event all or any portion of the Property shall be damaged or destroyed by fire or other casualty or by condemnation, Grantor shall promptly deposit with Lender a sum equal to the amount by which the estimated cost of the restoration of the Property (as determined by Lender in its good faith judgment) exceeds the actual net insurance or condemnation proceeds received by Lender in connection with such damage or destruction, which deposit will be disbursed by Lender to Grantor to defray the expense of restoration.

(g)     Grantor shall at all times perform all agreements, undertakings and functions necessary to operate the Property in a first-class manner. Grantor shall not be permitted to alter or change the use of the Property or to abandon the Property without the prior written consent of Lender.

**1.06    Leases and Other Agreements Affecting Property.**  Grantor will duly and punctually perform all terms, covenants, conditions and agreements binding upon it under any lease or any other agreement of any nature whatsoever which involves or affects the Property or any part thereof. Grantor will, at the request of Lender, furnish Lender with executed copies of all leases now or hereafter created upon the Property or any part thereof. Any leases hereafter entered into by Grantor for any portion of the Property must be first submitted to and approved by Lender. Upon the request of Lender, Grantor will provide Lender with a specific assignment of any such leases, in form and content satisfactory to Lender. All such leases must be subordinate to the lien of this Deed unless Lender otherwise specifies in which case such specific leases shall be made superior to the lien of this Deed. Lender shall also be entitled to require that certain leases be made superior to this Deed but that certain provisions of such superior leases be made subject to this Deed. Lender shall also be entitled to require, and Grantor shall use its best efforts to obtain, the execution of non-disturbance and attornment agreements from any tenants specified by Lender. Any form lease hereafter used by Grantor shall be first submitted to and approved by Lender. Grantor hereby authorizes and directs each present and future tenant of the Property to pay to Lender all rents and any other sums due Grantor as landlord and to perform for the direct benefit of Lender any other obligations of such tenant to Grantor as landlord, as if Lender were the landlord under such tenant's lease, immediately upon receipt of a written demand by Lender to make such payment or perform such obligation. No such demand by Lender shall constitute or be deemed to constitute any

assumption by Lender of any obligations of the landlord under such tenant's lease. Subject only to compliance by Lender with the provisions of Paragraph 2.01, no such demand by Lender shall constitute or be deemed to constitute any wrongful interference by Lender in the affairs or business relationships of Grantor or otherwise give rise to any right, claim or action by Grantor against Lender. No tenant shall be responsible for ascertaining whether any such demand by Lender is authorized or whether a default by Grantor has occurred under this Deed. Grantor hereby waives any right, claim or action Grantor may now or hereafter have against any such tenant by reason of such tenant's payment to or performance for Lender as described above, and any such payment to or performance for Lender shall discharge the obligation of such tenant to make such payment to, or perform such obligation for, Grantor.

1.07  **Further Assurances; After-Acquired Property.**  At any time, and from time to time, upon request by Lender, Grantor will make, execute and deliver or cause to be made, executed and delivered, to Lender and, where appropriate, cause to be recorded and/or filed and from time to time thereafter to be rerecorded and/or re-filed at such time and in such offices and places as shall be deemed desirable by Lender, any and all such other and further deeds to secure debt, security agreements, financing statements, continuation statements, instruments of further assurance, certificates and other documents as may, in the opinion of Lender, be necessary or desirable in order to effectuate, complete, or perfect, or to continue and preserve (a) the obligation of Grantor under the Note and under this Deed and (b) the lien of this Deed as a first and prior lien upon and security title in and to all of the Property, whether now owned or hereafter acquired by Grantor. Upon any failure by Grantor so to do, Lender may make, execute, record, file, rerecord and/or re-file any and all such deeds to secure debt, security agreements, financing statements, continuation statements, instruments, certificates, and documents for and in the name of Grantor and Grantor hereby irrevocably appoints Lender the agent and attorney-in-fact of Grantor so to do. The lien hereof will automatically attach, without further act, to all after acquired property attached to and/or used in the operation of the Property or any part thereof.

1.08  **Expenses.**  Grantor will pay or reimburse Lender, upon demand therefor, for all attorney's fees, costs and expenses incurred by Lender in any suit, action, legal proceeding or dispute of any kind in which Lender is made a party or appears as party plaintiff or defendant, affecting or arising in connection with the indebtedness secured hereby, this Deed or the interest created herein, or the Property, including, but not limited to, the exercise of the power of sale contained in this Deed, any condemnation action involving the Property or any action to protect the security hereof; and any such amounts paid by Lender shall be added to the indebtedness secured by the lien of this Deed.

1.9  **Estoppel Affidavits.**  Grantor, upon ten (10) days prior written notice, shall furnish Lender a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and whether or not any offsets or defenses exist against such principal and interest. Lender, upon ten (10) days prior written notice, shall furnish Grantor a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and the date on which the last payment under the Note was received.

1.10  **Subrogation.** Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the indebtedness secured hereby.

**1.11    Books, Records, Accounts and Annual Reports.**    Grantor will keep and maintain or will cause to be kept and maintained proper and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Property or in connection with any services, equipment or furnishings provided in connection with the operation of the Property. Lender shall have the right from time to time at all times during normal business hours to examine such books, records and accounts at the office of Grantor or such other person or entity maintaining such books, records and accounts and to make copies or extracts thereof as Lender shall desire.

**1.12    Limit of Validity.**    If from any circumstances whatsoever fulfillment of any provision of this Deed or of the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then *ipso facto* the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Deed or under the Note that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this Paragraph 1.13 shall control every other provision of this Deed and of the Note.

**1.13    Changes in Ownership.**    Grantor hereby acknowledges to Lender that (a) the identity and expertise of Grantor were and continue to be material circumstances upon which Lender has relied in connection with, and which constitutes valuable consideration to Lender for, the extending to Grantor of the loan evidenced by the Note and (b) any change in such identity or expertise could materially impair or jeopardize the security for the payment of the Note granted to Lender by this Deed. Grantor therefore covenants and agrees with Lender, as part of the consideration for the extending to Grantor of the loan evidenced by the Note, that Grantor shall not, without the prior written consent of Lender, (i) convey, transfer, assign, further encumber or pledge the Property, or all or any part of Grantor's legal, beneficial or other interest in the Property nor (ii) permit any transfers of interests in Grantor, except as otherwise expressly permitted herein.

## ARTICLE 2

**2.01    Events of Default.**    The terms "Default", "Event of Default" or "Events of Default", wherever used in this Deed, shall mean any one or more of the following events:

> (a)    Failure by Grantor to pay as and when due and payable any installment of principal or interest as required by the Obligations or by this Deed; or

> (b)    Failure by Grantor to duly observe or perform any other term, covenant, condition or agreement of this Deed; or

> (c)    Failure by Grantor to duly observe or perform any term, covenant, condition or agreement, or an occurrence of an event of default, in the Note, or in any related loan documents, including, without limitation, that certain Loan Agreement entered into between the parties on the date hereof; or

(d)     Failure by Grantor to duly observe or perform any term, covenant, condition or agreement in any assignment of lease (s) or any other agreement given or made as additional security for the performance of the Obligations or this Deed; or

(e)     Any warranty of Grantor contained in this Deed or in any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, proves to be untrue or misleading in any material respect; or

(f)     The filing by Grantor of a voluntary petition in bankruptcy or the filing by Grantor of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or borrower's seeking or consenting to or acquiescing in the appointment of any trustee, receiver or liquidator of Grantor or of all or any substantial part of the Property or of any or all of the rents, issues, profits or revenues thereof, or the making by Grantor of any general assignment for the benefit of creditors, or the admission in writing by Grantor of its inability to pay its debts generally as they become due; or

(g)     The entry by a court of competent jurisdiction of an order, judgment or decree approving a petition filed against Grantor seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, which order, judgment or decree remains un-vacated and un-stayed for an aggregate of ninety (90) days (whether or not consecutive) from the date of entry thereof, or the appointment of any trustee, receiver or liquidator of Grantor or of all or any substantial part of the Property or of any or all of the rents, issues, profits or revenues thereof without the consent or acquiescence of Grantor, which appointment shall remain un-vacated and un-stayed for an aggregate of ninety (90) days (whether or not consecutive).

Notwithstanding the foregoing, Grantor shall not be deemed to be in Default (except for purposes of late charges and default interest as provided in the Note and for certain other proposes as provided below) under the foregoing subparagraph (a) unless and until Grantor shall have failed to cure such Default within the five (5) days after the due date for such payment as required by the Note or this Deed; and Grantor shall not be deemed to be in Default under the foregoing subparagraphs (b), (c) and (d) unless and until Grantor shall have failed to cure such Default within thirty (30) days (or such longer period, if any, as is reasonably required, but not to exceed 90 days in any event, provided Grantor promptly commences and diligently pursues such cure) after receipt by Grantor of written notice from Lender of such Default; provided, however, immediately upon the occurrence of any event described in the foregoing subparagraphs (a) through (f), and without regard to any time periods or opportunities to cure described in this paragraph, Lender may make written demand upon any and all tenants of the Property to pay to Lender all rents and other sums and to perform for the direct benefit of Lender all obligations of such tenants, as provided in Paragraph 1.07.

**2.02    Acceleration of Maturity.** If an Event of Default shall have occurred and be continuing, then the entire indebtedness secured hereby shall, at the option of Lender, immediately become due and payable without notice or demand, time being of the essence of this Deed; and no

omission on the part of Lender to exercise such option when entitled to do so shall be construed as a waiver of such right.

**2.03    Lender's Right to Enter and Take Possession, Operate and Apply Revenues.**

(a)    If an Event of Default shall have occurred and be continuing, Grantor upon demand of Lender, shall forthwith surrender to Lender the actual possession of the Property and if, and to the extent, permitted by law, Lender itself, or by such officers or agents as it may appoint, may enter and take possession of all the Property without the appointment of a receiver, or an application therefor, and may exclude Grantor and its agents and employees wholly therefrom, and may have joint access with Grantor to the books, papers and accounts of Grantor.

(b)    If Grantor shall for any reason fail to surrender or deliver the Property or any part thereof after such demand by Lender, Lender may obtain a judgment or decree conferring upon Lender the right to immediate possession or requiring Grantor to deliver immediate possession of the Property to Lender.  Grantor will pay to Lender, upon demand, all expenses of obtaining such judgment or decree, including reasonable compensation to Lender, its attorneys and agents; and all such expenses and compensation shall, until paid, be secured by the lien of this Deed.

(c)    Upon every such entering upon or taking of possession, Lender may hold, store, use, operate, manage and control the Property and conduct the business thereof, and, from time to time (i) make all necessary and proper maintenance, repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and purchase or otherwise acquire additional fixtures, personalty and other property; (ii) insure or keep the Property insured; (iii) manage and operate the Property and exercise all the rights and powers of Grantor to the same extent as Grantor could in its own name or otherwise with respect to the same; and (iv) enter into any and all agreements with respect to the exercise by others of any of the powers herein granted Lender, all as Lender from time to time may determine to be in its best interest.  Lender may collect and receive all the rents, issues, profits and revenues from the Property, including those past due as well as those accruing thereafter, and, after deducting (aa) all expenses of taking, holding , managing and operating the Property (including compensation for the services of all persons employed for such purposes); (bb) the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases and acquisitions; (cc) the cost of such insurance; (dd) such taxes, assessments and other similar charges as Lender may at its option pay; (ee) other proper charges upon the Property or any part thereof; and (ff) the reasonable compensation, expenses and disbursements of the attorneys and agents of Lender, Lender shall apply the remainder of the monies and proceeds so received by Lender, first to the payment of accrued interest; and second to the payment of overdue installments of principal.  Lender shall have no obligation to discharge any duties of a landlord to any tenant or to incur any liability as a result of any exercise by Lender of any rights under this Deed or otherwise.  Lender shall not be liable for any failure to collect rents, issues, profits and revenues from the Property, nor shall Lender be liable to account for any such rents, issues, profits or revenues unless actually received by Lender.

(d)    Whenever all that is due upon such interest, deposits and principal installments and under any of the terms, covenants, conditions and agreements of this Deed, shall have been paid and all Events of Default made good, Lender shall surrender possession of the Property to Grantor, its

successors or assigns. The same right of taking possession, however, shall exist if any subsequent Event of Default shall occur and be continuing.

2.04 **Performance by Lender of Defaults by Grantor.** If Grantor shall Default in the payment, performance or observance of any term, covenant or condition of this Deed, Lender may, so long as such Default continues, as its option, pay, perform or observe the same, and all payments made or costs or expenses incurred by Lender in connection therewith, shall be secured hereby and shall be, without demand, immediately repaid by Grantor to Lender with interest thereon at the default rate provided in the Note. Lender shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Lender is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without thereby becoming liable to Grantor or any person in possession holding under Grantor.

2.05 **Receiver.** If an Event of Default shall have occurred and be continuing, Lender, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right without notice and without regard to the occupancy or value of any security for the indebtedness secured hereby or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Property and to collect and apply the rents, issues, profits and revenues thereof. The receiver shall have all of the rights and powers permitted under the laws of the State of Georgia. Grantor will pay to Lender upon demand all expenses, including receiver's fees, attorney's fees, costs and agent's compensation, incurred pursuant to the provisions of this Paragraph 2.05; and all such expenses shall be secured by this Deed.

2.06 **Enforcement.**

(a) If an Event of Default shall have occurred and be continuing, Lender, at its option, may sell the Property or any part of the Property at public sale or sales before the door of the courthouse of the county in which the Property or any part of the Property is situated, to the highest bidder for cash, in order to pay the indebtedness secured hereby and accrued interest thereon and insurance premiums, liens, assessments, taxes and charges, including utility charges, if any, with accrued interest thereon, and all expenses of the sale and of all proceedings in connection therewith, including reasonable attorney's fees, if incurred, after advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which Sheriff's sales are advertised in said county. At any such public sale, Lender may execute and deliver to the purchaser a conveyance of the Property or any part of the Property in fee simple, with full warranties of title and to this end, Grantor hereby constitutes and appoints Lender the agent and attorney-in-fact of Grantor to make such sale and conveyance, and thereby to divest Grantor of all right, title or equity that Grantor may have in and to the Property and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Grantor. The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, are granted as cumulative of the other remedies provided hereby or by law for collection of the indebtednesses secured hereby and shall not be exhausted by one exercise thereof but may be exercised until full payment of all indebtednesses secured hereby.

(b)    If an Event of Default shall have occurred and be continuing, Lender may, in addition to and not in abrogation of the rights covered under subparagraph (a) of this Paragraph 2.06, either with or without entry or taking possession as herein provided or otherwise, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note or the performance of any term, covenant, condition or agreement of this Deed or any other right, and (ii) to pursue any other remedy available to it, all as Lender shall determine most effectual for such purposes.

2.07    **Purchase by Lender.**  Upon any foreclosure sale, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the indebtedness secured hereby as a credit to the purchase price.

2.08    **Application of Proceeds of Sale.**  In the event of a foreclosure sale of the Property, the proceeds of said sale shall be applied, first, to the expenses of such sale and of all proceedings in connection therewith, including attorney's and trustee's fees, then to insurance premiums, liens, assessments, taxes and charges including utility charges advanced by Lender, then to payment of the outstanding principal balance of the indebtedness secured hereby, then to the accrued interest on all of the foregoing, and finally the remainder, if any, shall be paid to Grantor.

2.09    **Grantor as Tenant Holding Over.**  In the event of any such foreclosure sale by Lender, Grantor shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over.

2.10    **Waiver of Appraisement, Valuation, Stay, Extension and Redemption Laws.** Grantor agrees to the full extent permitted by law, that in case of a Default on the part of Grantor hereunder, neither Grantor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, extension, homestead, exemption or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Deed, or the absolute sale of the Property, or the final and absolute putting into possession thereof, immediately after such sale, of the purchasers thereat, and Grantor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets comprised in the security intended to be created hereby marshaled upon any foreclosure of the lien hereof. Without limiting the generality of the foregoing, Grantor agrees that, in the event of the filing of any voluntary or involuntary petition in bankruptcy by or against Grantor, (i) Grantor shall not assert, and shall not request or cause any other party to assert, that the automatic stay provided by Section 362 of the Bankruptcy Code shall operate or be interpreted to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights Lender has by reason of this Deed, the Note or any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, or any other rights Lender may have, whether now existing or hereafter acquired, against Grantor, or against any collateral (including, without limitation, the Property) owned by Grantor; (ii) Grantor consents to, and Grantor shall not directly or indirectly contest, oppose, object to or otherwise defend against, Lender's efforts to gain relief from the automatic stay imposed under Section 362 of the Bankruptcy Code, and Grantor hereby

waives all right to so contest, oppose, object or otherwise defend; (iii) Grantor agrees that Lender shall be entitled to the lifting of such automatic stay without the necessity or requirement of establishing or proving the value of the Property, the lack of adequate protection of Lender's interest in the Property or the lack of Grantor's equity in the Property; and (iv) Grantor shall not seek a supplemental stay or any other relief, whether injunctive or otherwise, pursuant to Section 105 of the Bankruptcy Code, or any other provision of the Bankruptcy Code, or otherwise, to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights Lender has by reason of this Deed, the Note or any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, or any other rights Lender may have, whether now existing or hereafter acquired, against Grantor, or against any collateral (including, without limitation, the Property) owned by Grantor.

    **2.11**   **Leases.** Lender, at is option, is authorized to foreclose this Deed subject to the rights of any tenants of the Property, and the failure to make any such tenants parties to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be by Grantor, a defense to any proceedings instituted by Lender to collect the sums secured hereby.

    **2.12**   **Discontinuance of Proceedings and Restoration of the Parties.** In case Lender shall have proceeded to enforce any right, power or remedy under this Deed by foreclosure, entry or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then and in every such case Grantor and Lender shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of Lender shall continue as if no such proceeding had been taken.

    **2.13**   **Remedies Cumulative.** Subject to Paragraph 2.18 hereof, no right, power or remedy conferred upon or reserved to Lender by this Deed is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

    **2.14**   **Waiver.**

        (a)    No delay or omission of Lender or of any holder of the Note to exercise any right, power or remedy accruing upon any Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such Default to acquiescence therein; and every right, power and remedy given by this Deed to Lender may be exercised from time to time as often as may be deemed expedient by Lender. No consent or waiver, expressed or implied, by Lender to or of any breach or Default by Grantor in the performance of the obligations thereof hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or Default in the performance of the same or any other obligations of Grantor hereunder. Failure on the part of Lender to complain of any act or failure to act or to declare any Event of Default, irrespective of how long such failure continues, shall not constitute a waiver by Lender of its rights hereunder or impair any rights, powers or remedies consequent on any breach or Default by Grantor.

        (b)    If Lender (i) grants forbearance or an extension of time for the payment of any sums secured hereby; (ii) takes other or additional security for the payment of any sums secured

hereby; (iii) waives or does not exercise any right granted herein or in the Note; (iv) releases any part of the Property from the lien of this Deed or otherwise changes any of the terms, covenants, conditions or agreements of the Note or this Deed; (v) consents to the filing of any map, plat or replat affecting the Property; (vi) consents to the granting of any easement or other right affecting the Property; or (vii) makes or consents to any agreement subordinating the lien hereof, any such act or omission shall not release, discharge, modify, change or affect the original liability under the Note, this Deed or any other obligation of Grantor or any subsequent purchaser of the Property or any part thereof, or any maker, co-signer, endorser, surety or guarantor; nor shall any such act or omission preclude Lender from exercising any right, power or privilege herein granted or intended to be granted in the event of any Default then made or of any subsequent Default; nor except as otherwise expressly provided in an instrument or instruments executed by Lender, shall the lien of this Deed be altered thereby. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Property, Lender, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Property or the indebtedness secured hereby, or with reference to any of the terms, covenants, conditions or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any liabilities, obligations or undertakings.

    **2.15**   **Suits to Protect the Property.**  Lender shall have power (a) to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Property by any acts which may be unlawful or in violation of this Deed, (b) to preserve or protect its interest in the Property and in the rents, issues, profits and revenues arising therefrom, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Lender.

    **2.16**   **Lender May File Proofs of Claim.**  In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Grantor, its creditors or its property, Lender, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of lender allowed in such proceedings for the entire amount due and payable by Grantor under this Deed at the date of the institution of such proceedings and for any additional amount which may become due and payable by Grantor hereunder after such date.

    **2.17**  **WAIVER OF BORROWER'S RIGHTS.** BY EXECUTION OF THIS DEED AND BY INITIALING THIS PARAGRAPH 2.17, BORROWER EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY BORROWER WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED; (B) WAIVES ANY AND ALL RIGHTS WHICH BORROWER MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES (INCLUDING, WITHOUT LIMITATION, THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS FOR THE SEVERAL STATES, OR

BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THIS DEED; (C) ACKNOWLEDGES THAT BORROWER HAS READ THIS DEED AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF THIS DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO BORROWER AND BORROWER HAS CONSULTED WITH COUNSEL OF BORROWER'S CHOICE PRIOR TO EXECUTING THIS DEED; AND (D) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OR BORROWER HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY BORROWER AS PART OF A BARGAINED FOR LOAN TRANSACTION.

    **2.18**   __Claims Against Lender.__  No action at law or in equity shall be commenced, or allegation made, or defense raised, by Grantor against Lender for any claim under or related to this Deed, the Note or any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, or related to the conduct of the parties thereunder, unless written notice of such claim, expressly setting forth the particulars of the claim alleged by Grantor, shall have been given to Lender within sixty (60) days from and after the initial awareness of Grantor of the event, omission or circumstance forming the basis of Grantor for such claim. Any failure by Grantor to timely provide such written notice to Lender shall constitute a waiver by Grantor of such claim.

## ARTICLE 3

    **3.01**   __Successors and Assigns.__  This Deed shall inure to the benefit of and be binding upon Grantor and Lender and their respective successors and assigns. Whenever a reference is made in this Deed to Grantor or Lender such reference shall be deemed to include a reference to the successors and assigns of Grantor or Lender.

    **3.02**   __Terminology.__  All personal pronouns used in this Deed whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural, and vice versa. Titles and Articles are for convenience only and neither limit nor amplify the provisions of this Deed itself, and all references herein to Articles, Paragraphs, or subparagraphs thereof, shall refer to the corresponding Articles, Paragraphs or subparagraphs thereof, of this Deed unless specific reference is made to such Articles, Paragraphs or subparagraphs thereof of another document or instrument.

    **3.03**   __Severability.__  If any provision of this Deed or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Deed and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

    **3.04**   __Applicable Law.__  This Deed shall be interpreted, construed and enforced according to the laws of the State of Georgia.

    **3.05**   <u>Notices, Demands and Requests.</u>  All notices, demands or requests provided for or permitted to be given pursuant to this Deed must be in writing and shall be deemed to have been properly given or served by depositing in the United States Mail, postpaid and registered or certified return receipt requested, and addressed to the addressees hereinafter set forth. All notices, demands and requests shall be effective upon being deposited in the United States Mail. However, the time period in which a response to any notice, demand or request must be given, if any, shall commence to run from the date of receipt of the notice, demand or request by the addressee thereof. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to be receipt of the notice, demand or request sent. By giving at least thirty (30) days written notice thereof, Grantor or Lender shall have the right from time to time and at any time during the term of this Deed to change their respective addresses and each shall have the right to specify as its address any other address within the United States of America.

    For the purposes of this Deed, the address of the Grantor is as set forth on the first page hereof.

    For the purposes of this Deed, the address of the Lender is as set forth on the first page hereof.

SIGNATURE PAGE TO FOLLOW

IN WITNESS WHEREOF, Grantor has executed this Deed under seal, as of the day and year first above written.

GRANTOR:

_____

DAVID LEE SMITH

_____
Unofficial Witness

Notary Public:_____

My Commission expires:_____

SIGNATURE PAGE TO GEORGIA DEED TO SECURE DEBT

# EXHIBIT A
## LEGAL DESCRIPTION

Property Address:    3795 North Stratford Road
Atlanta, Georgia 30342

All that tract or parcel of land lying and being in Land Lot 44 of the 17th District, Fulton County,
Georgia and being more particularly described as follows:

BEGINNING on the East side of North Stratford Road at a point seven hundred eighty-nine and three-
tenths (789.3) feet North of the Northeast intersection of Old Ivy Road and North Stratford Road; run
thence North along the East of North Stratford fifty four (54) feet to a point; run thence East three
hundred (300) feet to a point; run thence South fifty four (54) feet to a point; run thence West three
hundred (300) feet to the East side of North Stratford Road and the POINT OF BEGINNING, which
currently has the address of 3795 North Stratford Road, Atlanta, Georgia.

**EXHIBIT 31**

Chantelle Tiblier

| | |
|---|---|
| From: | Edward Sledge |
| Sent: | Tuesday, March 14, 2017 10:29 AM |
| To: | 'Paul, Jimmy L.'; Greene, Drew V. (Drew.Greene@CHAMBERLAINLAW.COM); McKenna, Lauri |
| Cc: | david@residentialsouthpartners.com; 'esledge@bradley.com' |
| Subject: | Smith/Lennox Pines Litigation/2nd Mtg on Home/Hearing |
| Attachments: | Loans and 2nd Mortgage on Residence/Related |

Jimmy and Drew. Intent b/t David and me is for David to give notice tomorrow to Hayden and Britton with copy to you that he intends to enter into a second mortgage on the residence. He will then file the mortgage for record and deliver me the note. Unless we hear from you that this is a problem or you would prefer to send the notice through the lawyer channels we shall so proceed. Note attached email laying out same with reference to the restrictions and requirements of the Consent Order. I have seen the two lis pendens Bren filed on the residence. There seems to be no limit to his malicious and unethical activity in furtherance of destroying David and anything he holds of value.

As for the Conference Monday. I plan to attend with Caroline Smith in support of the David Smith family. Obviously, we will not be at counsel table. Let me not if you perceive any problem with either of us attending.

Ed

Edward S. Sledge
McDowell Knight Roedder & Sledge LLC
RSA Battle House Tower
11 North Water Street Suite 13290
Mobile, AL 36602
Phone: 251/431-8803
Fax: 251/432-5303
Cell: 251/379-0486

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.



MCDOWELL KNIGHT

MCDOWELL KNIGHT ROEDDER & SLEDGE L.L.C.
LAWYERS

EXHIBIT
T-3)
Blumberg No. 5118

# EXHIBIT 32

**Chantelle Tiblier**

| | |
|---|---|
| **From:** | Greene, Drew V. <Drew.Greene@CHAMBERLAINLAW.COM> |
| **Sent:** | Tuesday, March 14, 2017 2:00 PM |
| **To:** | Edward Sledge; Paul, Jimmy L.; McKenna, Lauri |
| **Cc:** | david@residentialsouthpartners.com; 'esledge@bradley.com' |
| **Subject:** | RE: Smith/Lennox Pines Litigation/2nd Mtg on Home/Hearing |

It would be best to wait until after we see what shakes out at the status conference.  Also, the sale motion and affidavit we are filing this week, as written, reference only the SunTrust mortgage.

The notice next week should go through David's attorneys.

**From:** Edward Sledge [mailto:esledge@mcdowellknight.com]
**Sent:** Tuesday, March 14, 2017 2:39 PM
**To:** Paul, Jimmy L.; Greene, Drew V.; McKenna, Lauri
**Cc:** david@residentialsouthpartners.com; 'esledge@bradley.com'
**Subject:** RE: Smith/Lennox Pines Litigation/2nd Mtg on Home/Hearing

PS. If you would prefer, we can do 2nd mortgage next Tuesday after hearing.

Edward S. Sledge
McDowell Knight Roedder & Sledge LLC
RSA Battle House Tower
11 North Water Street Suite 13290
Mobile, AL 36602
Phone:  251/431-8803
Fax:  251/432-5303
Cell:  251/379-0486

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.

# McDOWELL KNIGHT

## McDOWELL KNIGHT ROEDDER & SLEDGE L.L.C.
### LAWYERS



EXHIBIT
F 32

1

## EXHIBIT 36

**Edward Sledge**

| | |
|---|---|
| **From:** | Edward Sledge |
| **Sent:** | Tuesday, April 18, 2017 11:11 AM |
| **To:** | david@residentialsouthpartners.com |
| **Cc:** | Debbie Praytor |
| **Subject:** | FW: Smith (Note and Home 2nd m ortgage) |
| **Attachments:** | REVISED NOTE.pdf; DEED.PDF |

David. These are ready to go back to Jimmy with notice to Bren. Errors Jimmy indicated in note have been corrected and Caroline has been removed and each have date changed to April. He can discard the previous transmission.
David. Once he sends, please get documents properly executed and file mortgage. Send me the note, keeping copies of both for yourself.
Let me know if any questions.
Ed

Edward S. Sledge
McDowell Knight Roedder & Sledge LLC
RSA Battle House Tower
11 North Water Street Suite 13290
Mobile, AL 36602
Phone:  251/431-8803
Fax:  251/432-5303
Cell:  251/379-0486

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.

## MCDOWELL KNIGHT

### MCDOWELL KNIGHT ROEDDER & SLEDGE L.L.C.
### LAWYERS

Home | Firm News | Firm Overview | Areas of Practice | Our Attorneys
Contact Us | Recruitment | Resources | Representative Clients

www.mcdowellknight.com





EXHIBIT
T-36

1

**From:** Debbie Praytor
**Sent:** Tuesday, April 18, 2017 11:00 AM
**To:** Edward Sledge <esledge@mcdowellknight.com>
**Subject:** Smith

Debbie Praytor
*Legal Assistant to Michael D. Knight,*
*William C. Roedder, Jr., Edward S. Sledge, III,*
*and William G. Chason*
McDowell Knight Roedder & Sledge, LLC
RSA Battle House Tower
11 North Water Street, 13th FL (36602)
Post Office Box 350
Mobile, Alabama 36601
Direct Dial:  251-431-8812
Facsimile:    251-432-5303
Email:  dpraytor@mcdowellknight.com

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.

# McDOWELL KNIGHT

## McDOWELL KNIGHT ROEDDER & SLEDGE L.L.C.
### LAWYERS

Home | Firm News | Firm Overview | Areas of Practice | Our Attorneys
Contact Us | Recruitment | Resources | Representative Clients

www.mcdowellknight.com



## EXHIBIT 36 (cont.)

**LINE OF CREDIT PROMISSORY NOTE**

$200,000.00                                                              APRIL __, 2017

FOR VALUE RECEIVED, the undersigned **DAVID LEE SMITH** (the "Borrower"), hereby promises to pay to the order of **EDWARD S. SLEDGE, III** ("Sledge"; Sledge and any subsequent holder hereof, as applicable, are referred to herein as the "Holder"), without grace at such place as Holder may direct, in lawful money of the United States of America, the principal amount of **TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($200,000.00)** or so much thereof as heretofore advanced and is advanced hereunder, with interest at the rate and calculated in the manner described herein. Future advances shall be at the option of Holder. Payment of principal and interest shall be in accordance with the following provisions:

    **1.**    **Payment.** The balance of the principal and all accrued and unpaid interest on this Note and all charges hereunder and under the Mortgage (defined herein) shall be due and payable ON DEMAND (the "Maturity Date").

    **2.**    **Interest; Late Charges; Commitment Fee.** Interest from the date hereof until the Maturity Date shall accrue at the rate of one 5percent per annum. Interest on all principal amounts outstanding from time to time hereunder shall be calculated on the basis of a 360-day year applied to the actual number of days upon which principal is outstanding, by multiplying the product of the principal amount and the applicable rate set forth herein by the actual number of days elapsed, and dividing by 360.

    **3.**    **Security.** The indebtedness evidenced hereby is secured by, among other things, real property located in Fulton County, Georgia, and described in that certain Deed to Secure Debt and Security Agreement ("Mortgage") from Borrower to Sledge.

    **4.**    **Event of Default.** The happening of any one or more of the following events shall constitute an "Event of Default" hereunder:

        (a)    Failure to make a payment of the principal of or interest on this Note within ten (10) days of the date on which the same becomes due and payable;

        (b)    The occurrence of any Event of Default specified in the Mortgage or in any other instrument executed in connection with or securing this Note, and the Borrower's failure to cure the same within any applicable cure period specifically provided therein;

        (c)    The failure by the Borrower, the Mortgage, or in any other instrument executed in connection with or securing this Note and the failure to cure the same within any applicable cure period specifically provided therein.

Upon the occurrence of an Event of Default, or at any time thereafter during the continuance of any such Event of Default, the Holder may, with or without notice to the Borrower, declare this Note to be forthwith due and payable, whereupon this Note and the indebtedness evidenced

hereby shall forthwith be due and payable, both as to principal and interest, without presentment, demand, protest, or other notice of any kind, all of which are hereby expressly waived, anything contained herein or in the Mortgage or in any other instrument executed in connection with or securing this Note to the contrary notwithstanding.

      5.    <u>Waivers</u>.  Borrower and any endorser or guarantor of this Note hereby waive demand, presentment for payment, notice of dishonor, protest, and notice of protest and diligence in collection or bringing suit and agree that the Holder hereof may accept partial payment, or release or exchange security or collateral, without discharging or releasing any unreleased collateral or the obligations evidenced hereby. Borrower and each such endorser and guarantor further waive any and all rights of exemption, both as to personal and real property, under the Constitution or laws of the United States, the State of Alabama or any other state. No failure of any Holder of this Note to accelerate the indebtedness evidenced hereby or to exercise any other right hereunder shall be construed as a novation or modification of this Note or a waiver of the Holder's right to thereafter insist upon strict compliance with the terms of this Note without prior notice of such intention being given to the Borrower.

      6.    <u>Attorney Fees</u>.  Borrower and each endorser or guarantor of this Note agree to pay reasonable actual attorneys' fees and costs incurred by the Holder hereof in collecting or attempting to collect this Note, whether by suit or otherwise.

      7.    <u>Applicable Law; Parties; Under Seal</u>.  This Note is being delivered to, and accepted by, Holder in the State of Alabama, and this Note shall be governed by the laws of the State of Alabama. It is intended, and the Borrower and Holder specifically agree, that the laws of the State of Alabama governing interest shall apply to this Note and to this transaction. As used herein, the terms "Borrower" and "Holder" shall be deemed to include their respective successors and assigns, whether by voluntary action of the parties or by operation of law. This Note is given under the seal of Borrower, and it is intended that this Note is and shall constitute and have the effect of a sealed instrument according to law.

SIGNATURE PAGE TO FOLLOW

**IN WITNESS WHEREOF,** Borrower has delivered this Note the___ day of April, 2017 (regardless of the date executed).

<b><u>BORROWER</u>:</b>

WITNESS:

_____          _____
                                          David Lee Smith, individually

STATE OF GEORGIA:
COUNTY OF FULTON:

I, the undersigned Notary Public, in and for said County in said State, hereby certify that **David Lee Smith** is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same voluntarily.

Given under my official hand and seal this _____ day of April 2017

(AFFIX NOTARIAL SEAL)          _____
                               NOTARY PUBLIC
                               My Commission Expires:_____

SIGNATURE PAGE TO LINE OF CREDIT PROMISSORY NOTE

# EXHIBIT  36 (cont.)

Prepared by and Return To:
Robert B. McGinley, Jr.
McDowell Knight Roedder & Sledge, LLC
11 N. Water St., Ste. 13290
Mobile, AL 36602
(251) 432-5300

STATE OF ALABAMA
COUNTY OF MOBILE

## DEED TO SECURE DEBT AND SECURITY AGREEMENT

THIS DEED TO SECURE DEBT AND SECURITY AGREEMENT (hereinafter referred to as this "Deed") made and entered into this ___ day of April, 2017, by and between DAVID LEE SMITH 3795 N Stratford Rd NE, Atlanta, Georgia 30342 (hereinafter referred to as "Grantor"), and EDWARD S. SLEDGE, III 11 North Water Street Suite 13290 Mobile, Alabama 36602 (hereinafter referred to as "Lender").

## W I T N E S S E T H

In order to secure TWO HUNDRED THOUSAND and NO/100 UNITED STATES DOLLARS ($200,000.00) of a promissory note from Grantor to Lender maturing on March 1, 2037 and in the amount of $200,000.00 (the "Note") and other valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell, convey, assign, transfer and set over unto Lender, and its successors and assigns, and grant a security interest in all of the following described land and interests in land, estates, easements, rights, improvements, property, fixtures, equipment, furniture, furnishings, appliances, and appurtenances (hereinafter collectively referred to as the "Property"):

(a)    All those tracts of parcels of land and easements more particularly described in Exhibit "A" attached hereto and by this reference made a part hereof (hereinafter referred to as the "Land").

(b) All buildings, structures, towers and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, fire extinguishers and any other safety equipment required by governmental regulation or law, washers, dryers, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus and appurtenances, window screens, awnings and storm sashes, which are or shall be owned by Grantor and attached to said buildings, structures or improvements and all other furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles, building supplies and materials, books and records, chattels, inventory, accounts, farm products, consumer goods, general intangibles and personal property of every kind and nature whatsoever now or hereafter owned by Grantor and located in, on or about, or used or intended to

be used with or in connection with the use, operation or enjoyment of the Property, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of any of the foregoing, and all the right, title and interest of Grantor in any such furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles and personal property subject to or covered by any prior security agreement, conditional sales contract, chattel mortgage or similar lien or claim, together with the benefit of any deposits or payments now or hereafter made by Grantor on or behalf of Grantor, all trade-names, trademarks, servicemarks, logos and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Property or any part thereof or are now or hereafter acquired by Grantor; and all inventory, accounts, chattel paper, documents, equipment, fixtures, farm products, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described hereinabove, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land and a part of the Property as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Deed.  The location of the above-described collateral is also the location of the Land.

(c)     All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, and appurtenances, reversion and reversions, remainder and remainders, whatsoever, in any way belonging, relating or appertaining to the Property or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor.

(d)     All income, rents, issues, profits and revenues of the Property from time to time accruing (including, without limitation, all vendor license payments, payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits whether held by Grantor or in a trust account, and escrow funds), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, or Grantor of, in and to the same; reserving only the right to Grantor to collect the same (other than insurance proceeds and condemnation payments) so long as Grantor is not in Default hereunder.

TO HAVE AND TO HOLD the Property and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of Lender and the successors and assigns of Lender, IN FEE SIMPLE forever; and Grantor covenants that Grantor is lawfully seized and possessed of the Property as aforesaid, and has good right to convey the same, that the same is unencumbered and that Grantor does warrant and will forever defend the title thereto against the claims of all persons whomsoever.

This conveyance is intended to operate and is to be construed as a deed passing the title to the Property to Lender and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt, and not as a mortgage, and is given to secure the following described indebtedness (the "Obligations"):

(a)    The debt evidenced by the Note together with any and all renewals, modifications and/or extensions of the indebtedness evidenced by the Note.

(b)    Any and all additional advances made by Lender to protect or preserve the Property or the lien and security title hereof in and to the Property, or for taxes, assessments or insurance premiums as hereinafter provided (whether or not the original Grantor remains the owner of the Property at the time of such advances).

(c)    Any and all other and future indebtedness hereinafter incurred by Grantor to Lender.

Should the Obligations secured by this deed be paid according to the tenor and effect hereof when the same shall become due and payable, and should Grantor perform all covenants herein contained in a timely manner, then this Deed shall be cancelled and surrendered.

Grantor hereby further covenants and agrees with Lender as follows:

## ARTICLE 1

**1.01**    **Payment of Indebtedness.**  Grantor will pay the Obligations according to the tenor thereof and all other sums now or hereafter secured hereby promptly as the same shall become due.

**1.02**    **Taxes, Liens and Other Charges.**

(a)    In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of debts secured by deeds to secure debt or the manner of collecting taxes so as to adversely affect Lender, Grantor will promptly any such tax. If Grantor fails to make such prompt payment or if, in the opinion of the Lender, any such state, federal, municipal, or other governmental law, order, rule or regulation prohibits Grantor from making such payment or would penalize Lender if Grantor makes such payment or if, in the opinion of Lender, the making of such payment might result in the imposition of interest beyond the maximum amount permitted by applicable law, then the entire balance of the principal sum secured by this Deed and all interest accrued thereon shall, at the option of Lender become immediately due and payable.

(b)    Grantor will pay, before the same becomes delinquent, all taxes, liens, assessments and charges of every character including all utility charges, whether public or private, already levied or assessed or that may hereafter be levied or assessed upon or against the Property; and will furnish Lender within thirty (30) days after the final date whereon same can be paid without penalty evidence of the due and punctual payment of all such taxes, assessments and other fees and charges. Nothing contained herein shall require the payment or discharge of any such tax, lien, assessment or charge by Grantor for so long as Grantor shall in good faith and its own expense contest the amount or validity thereof by appropriate legal proceedings and provided such contest shall prevent (i) the collection thereof or other realization thereon and the sale or forfeiture of the Property or any part thereof to satisfy the same and (ii) the enforcement thereof against Grantor or

the Property or any part thereof, and provided Grantor first deposits with Lender, in escrow such sums or other security as Lender may reasonably require to assure Lender of the availability of sufficient funds to pay such tax, lien, assessment or charge if and when same is finally determined to be due.

(c)    Grantor will not suffer any mechanic's, materialman's, laborer's, statutory or other lien to be created and to remain outstanding upon all or any part of the Property.

### 1.03    Insurance.

(a)    Grantor shall procure for, deliver to and maintain for the benefit of Lender during the term of this Deed, insurance policies of insurance companies, in amounts, in form and substance, and with expiration dates acceptable to Lender and containing noncontributory standard mortgagee clauses, their equivalent or a satisfactory mortgagee loss payable endorsement in favor of Lender, providing the following types of insurance on the Property:

(i)    insurance against loss or damage by fire, lightning, vandalism, malicious mischief and flood (if the Land is in an area which is considered a flood risk area by the U. S. Department of Housing and Urban Development), and against such other hazards as are presently included in so-called "all risk replacement cost insurance" and against such other insurable hazards as, under good insurance practices, from time to time are insured against for properties of similar character and location; the amount of which insurance shall be not less than one hundred percent (100%) of the full replacement cost of the Property without deduction for depreciation; and which policies of insurance shall contain satisfactory "agreed amount" endorsements; and

(ii)    rent or business interruption insurance against loss of income arising out of damage or destruction by fire, lightning, vandalism, malicious mischief and flood and such other hazards as are presently included in so-called "all risk replacement cost insurance;" and

(iii)    if applicable, builder's risk insurance on projects under construction.

(b)    Lender is hereby authorized and empowered, at its option, to adjust or compromise any loss under any insurance policies maintained pursuant to this Paragraph 1.03, and to collect and receive the proceeds from any such policy or policies. Each insurance company is hereby authorized and directed to make payment for all such losses directly to Lender, instead of to Grantor and Lender jointly. In the event any insurance company fails to disburse directly and solely to Lender but disburses instead either solely to Grantor or to Grantor and Lender jointly, Grantor agrees immediately to endorse and transfer such proceeds to Lender. Upon the failure of Grantor to endorse and transfer such proceeds as aforesaid, Lender may execute such endorsements or transfers for and in the name of the Grantor and Grantor hereby irrevocably appoints Lender as Grantor's agent and attorney-in-fact so to do. After deducting from said insurance proceeds all of its expenses incurred in the collection and administration of such sums, including attorneys' fees, Lender may apply the net proceeds or any part thereof, at its option, (i) to the payment of the indebtedness hereby secured, whether or not due and in whatever order Lender elects, (ii) to the repair and/or restoration of the Property or (iii) for any other purposes or objects for which Lender is entitled to

advance funds under this Deed; all without affecting the lien of this Deed. Lender shall not be held responsible for any failure to collect any insurance proceeds due under the terms of any policy regardless of the cause of such failure.

1.04 Condemnation. In the event there hereafter occurs a condemnation (which term when used in this Deed shall include any damage or taking by any governmental authority or other entity having the power of eminent domain, and any transfer by private sale in lieu thereof), resulting in any damage or taking, either temporarily or permanently, of (i) the entire Property, (ii) any portion of any building now or hereafter erected on the Land, (iii) so much of the Property as causes the remainder of the Property to be in violation of any zoning laws, restrictive covenants or similar laws, regulations or restrictions affecting the Property, or (iv) so much of the Property as, in the opinion of the Lender, renders the remainder of the Property materially less useful or valuable then, and in any one of said events, the entire indebtedness secured hereby shall, at the option of the Lender, become immediately due and payable. Lender shall be entitled to receive all compensation, awards and other payments or relief thereof to the full extent of the indebtedness then secured hereby. Lender is hereby authorized, at is option, to commence, appear in and prosecute, in its own or in Grantor's name, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith. All such compensation, awards, damages, claims, rights of action and proceeds, and the right thereto, are hereby assigned by Grantor to Lender. After deducting from said condemnation proceeds all of its expenses incurred in the collection and administration of such sums, including attorney's fees, Lender may apply the net proceeds or any part thereof, at its option, (a) to the payment of the indebtedness hereby secured, whether or not due or in whatever order Lender elects, (b) to the repair and/or restoration of the Property of (c) for any other purposes or objects for which Lender is entitled to advance funds under this Deed, all without affecting the lien of this Deed; and any balance of such monies then remaining shall be paid to Grantor.

## 1.05    Care, Use and Management of Property.

(a)    Grantor will keep the buildings, parking areas, roads and walkways, recreational facilities, landscaping and all other improvements of any kind now or hereafter erected on the Land or any part thereof in good condition and repair, will not commit or suffer any waste and will not do or suffer to be done anything which will increase the risk of fire or other hazard to the Property of any part thereof.

(b)    Grantor will not remove or demolish nor alter the structural character of any building located on the Land without the written consent of Lender.

(c)    If the Property or any part thereof is damaged by fire or any other cause, Grantor will give immediate written notice thereof to Lender.

(d)    Lender or its representative is hereby authorized to enter upon and inspect the Property at any time during normal business hours.

(e) Grantor will promptly comply with all present and future laws, ordinances, rules and regulations of any governmental authority (including, but not limited to, all environmental and

ecological laws and regulations) affecting the Property or any part thereof. Provided, however, nothing contained herein shall require compliance with such laws, ordinances, rules or regulations by Grantor for so long as Grantor shall in good faith and at its own expense contest the validity thereof by appropriate legal proceedings.

(f)     If all or any part of the Property shall be damaged by fire or other casualty, Grantor will promptly restore the Property to the equivalent of its original condition; and if a part of the Property shall be damaged through condemnation, Grantor will promptly restore, repair or alter the remaining portions of the Property in a manner satisfactory to Lender. Notwithstanding the foregoing, Grantor shall not be obligated to so restore unless in each instance, Lender agrees to make available to Grantor (pursuant to a procedure satisfactory to Lender) any net insurance or condemnation proceeds actually received by Lender hereunder in connection with such casualty loss or condemnation, to the extent such proceeds are required to defray the expense of such restoration; provided, however, that the insufficiency of any such insurance or condemnation proceeds to defray the entire expense of restoration shall in no way relieve Grantor of its obligation to restore. In the event all or any portion of the Property shall be damaged or destroyed by fire or other casualty or by condemnation, Grantor shall promptly deposit with Lender a sum equal to the amount by which the estimated cost of the restoration of the Property (as determined by Lender in its good faith judgment) exceeds the actual net insurance or condemnation proceeds received by Lender in connection with such damage or destruction, which deposit will be disbursed by Lender to Grantor to defray the expense of restoration.

(g)     Grantor shall at all times perform all agreements, undertakings and functions necessary to operate the Property in a first-class manner. Grantor shall not be permitted to alter or change the use of the Property or to abandon the Property without the prior written consent of Lender.

**1.06    Leases and Other Agreements Affecting Property.**  Grantor will duly and punctually perform all terms, covenants, conditions and agreements binding upon it under any lease or any other agreement of any nature whatsoever which involves or affects the Property or any part thereof. Grantor will, at the request of Lender, furnish Lender with executed copies of all leases now or hereafter created upon the Property or any part thereof. Any leases hereafter entered into by Grantor for any portion of the Property must be first submitted to and approved by Lender. Upon the request of Lender, Grantor will provide Lender with a specific assignment of any such leases, in form and content satisfactory to Lender. All such leases must be subordinate to the lien of this Deed unless Lender otherwise specifies in which case such specific leases shall be made superior to the lien of this Deed. Lender shall also be entitled to require that certain leases be made superior to this Deed but that certain provisions of such superior leases be made subject to this Deed. Lender shall also be entitled to require, and Grantor shall use its best efforts to obtain, the execution of non-disturbance and attornment agreements from any tenants specified by Lender. Any form lease hereafter used by Grantor shall be first submitted to and approved by Lender. Grantor hereby authorizes and directs each present and future tenant of the Property to pay to Lender all rents and any other sums due Grantor as landlord and to perform for the direct benefit of Lender any other obligations of such tenant to Grantor as landlord, as if Lender were the landlord under such tenant's lease, immediately upon receipt of a written demand by Lender to make such payment or perform such obligation. No such demand by Lender shall constitute or be deemed to constitute any

assumption by Lender of any obligations of the landlord under such tenant's lease. Subject only to compliance by Lender with the provisions of Paragraph 2.01, no such demand by Lender shall constitute or be deemed to constitute any wrongful interference by Lender in the affairs or business relationships of Grantor or otherwise give rise to any right, claim or action by Grantor against Lender. No tenant shall be responsible for ascertaining whether any such demand by Lender is authorized or whether a default by Grantor has occurred under this Deed. Grantor hereby waives any right, claim or action Grantor may now or hereafter have against any such tenant by reason of such tenant's payment to or performance for Lender as described above, and any such payment to or performance for Lender shall discharge the obligation of such tenant to make such payment to, or perform such obligation for, Grantor.

     1.07   **Further Assurances; After-Acquired Property.**  At any time, and from time to time, upon request by Lender, Grantor will make, execute and deliver or cause to be made, executed and delivered, to Lender and, where appropriate, cause to be recorded and/or filed and from time to time thereafter to be rerecorded and/or re-filed at such time and in such offices and places as shall be deemed desirable by Lender, any and all such other and further deeds to secure debt, security agreements, financing statements, continuation statements, instruments of further assurance, certificates and other documents as may, in the opinion of Lender, be necessary or desirable in order to effectuate, complete, or perfect, or to continue and preserve (a) the obligation of Grantor under the Note and under this Deed and (b) the lien of this Deed as a first and prior lien upon and security title in and to all of the Property, whether now owned or hereafter acquired by Grantor. Upon any failure by Grantor so to do, Lender may make, execute, record, file, rerecord and/or re-file any and all such deeds to secure debt, security agreements, financing statements, continuation statements, instruments, certificates, and documents for and in the name of Grantor and Grantor hereby irrevocably appoints Lender the agent and attorney-in-fact of Grantor so to do. The lien hereof will automatically attach, without further act, to all after acquired property attached to and/or used in the operation of the Property or any part thereof.

     1.08   **Expenses.**  Grantor will pay or reimburse Lender, upon demand therefor, for all attorney's fees, costs and expenses incurred by Lender in any suit, action, legal proceeding or dispute of any kind in which Lender is made a party or appears as party plaintiff or defendant, affecting or arising in connection with the indebtedness secured hereby, this Deed or the interest created herein, or the Property, including, but not limited to, the exercise of the power of sale contained in this Deed, any condemnation action involving the Property or any action to protect the security hereof; and any such amounts paid by Lender shall be added to the indebtedness secured by the lien of this Deed.

     1.9   **Estoppel Affidavits.**  Grantor, upon ten (10) days prior written notice, shall furnish Lender a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and whether or not any offsets or defenses exist against such principal and interest. Lender, upon ten (10) days prior written notice, shall furnish Grantor a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and the date on which the last payment under the Note was received.

     1.10   **Subrogation.**  Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the indebtedness secured hereby.

**1.11   Books, Records, Accounts and Annual Reports.**  Grantor will keep and maintain or will cause to be kept and maintained proper and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Property or in connection with any services, equipment or furnishings provided in connection with the operation of the Property. Lender shall have the right from time to time at all times during normal business hours to examine such books, records and accounts at the office of Grantor or such other person or entity maintaining such books, records and accounts and to make copies or extracts thereof as Lender shall desire.

**1.12   Limit of Validity.**  If from any circumstances whatsoever fulfillment of any provision of this Deed or of the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Deed or under the Note that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this Paragraph 1.13 shall control every other provision of this Deed and of the Note.

**1.13   Changes in Ownership.**  Grantor hereby acknowledges to Lender that (a) the identity and expertise of Grantor were and continue to be material circumstances upon which Lender has relied in connection with, and which constitutes valuable consideration to Lender for, the extending to Grantor of the loan evidenced by the Note and (b) any change in such identity or expertise could materially impair or jeopardize the security for the payment of the Note granted to Lender by this Deed. Grantor therefore covenants and agrees with Lender, as part of the consideration for the extending to Grantor of the loan evidenced by the Note, that Grantor shall not, without the prior written consent of Lender, (i) convey, transfer, assign, further encumber or pledge the Property, or all or any part of Grantor's legal, beneficial or other interest in the Property nor (ii) permit any transfers of interests in Grantor, except as otherwise expressly permitted herein.

## ARTICLE 2

**2.01   Events of Default.**  The terms "Default", "Event of Default" or "Events of Default", wherever used in this Deed, shall mean any one or more of the following events:

(a)   Failure by Grantor to pay as and when due and payable any installment of principal or interest as required by the Obligations or by this Deed; or

(b)   Failure by Grantor to duly observe or perform any other term, covenant, condition or agreement of this Deed; or

(c)   Failure by Grantor to duly observe or perform any term, covenant, condition or agreement, or an occurrence of an event of default, in the Note, or in any related loan documents, including, without limitation, that certain Loan Agreement entered into between the parties on the date hereof; or

(d)    Failure by Grantor to duly observe or perform any term, covenant, condition or agreement in any assignment of lease (s) or any other agreement given or made as additional security for the performance of the Obligations or this Deed; or

(e)    Any warranty of Grantor contained in this Deed or in any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, proves to be untrue or misleading in any material respect; or

(f)    The filing by Grantor of a voluntary petition in bankruptcy or the filing by Grantor of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or borrower's seeking or consenting to or acquiescing in the appointment of any trustee, receiver or liquidator of Grantor or of all or any substantial part of the Property or of any or all of the rents, issues, profits or revenues thereof, or the making by Grantor of any general assignment for the benefit of creditors, or the admission in writing by Grantor of its inability to pay its debts generally as they become due; or

(g)    The entry by a court of competent jurisdiction of an order, judgment or decree approving a petition filed against Grantor seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, which order, judgment or decree remains un-vacated and un-stayed for an aggregate of ninety (90) days (whether or not consecutive) from the date of entry thereof, or the appointment of any trustee, receiver or liquidator of Grantor or of all or any substantial part of the Property or of any or all of the rents, issues, profits or revenues thereof without the consent or acquiescence of Grantor, which appointment shall remain un-vacated and un-stayed for an aggregate of ninety (90) days (whether or not consecutive).

Notwithstanding the foregoing, Grantor shall not be deemed to be in Default (except for purposes of late charges and default interest as provided in the Note and for certain other proposes as provided below) under the foregoing subparagraph (a) unless and until Grantor shall have failed to cure such Default within the five (5) days after the due date for such payment as required by the Note or this Deed; and Grantor shall not be deemed to be in Default under the foregoing subparagraphs (b), (c) and (d) unless and until Grantor shall have failed to cure such Default within thirty (30) days (or such longer period, if any, as is reasonably required, but not to exceed 90 days in any event, provided Grantor promptly commences and diligently pursues such cure) after receipt by Grantor of written notice from Lender of such Default; provided, however, immediately upon the occurrence of any event described in the foregoing subparagraphs (a) through (f), and without regard to any time periods or opportunities to cure described in this paragraph, Lender may make written demand upon any and all tenants of the Property to pay to Lender all rents and other sums and to perform for the direct benefit of Lender all obligations of such tenants, as provided in Paragraph 1.07.

2.02    **Acceleration of Maturity.** If an Event of Default shall have occurred and be continuing, then the entire indebtedness secured hereby shall, at the option of Lender, immediately become due and payable without notice or demand, time being of the essence of this Deed; and no

omission on the part of Lender to exercise such option when entitled to do so shall be construed as a waiver of such right.

### 2.03    Lender's Right to Enter and Take Possession, Operate and Apply Revenues.

(a)    If an Event of Default shall have occurred and be continuing, Grantor upon demand of Lender, shall forthwith surrender to Lender the actual possession of the Property and if, and to the extent, permitted by law, Lender itself, or by such officers or agents as it may appoint, may enter and take possession of all the Property without the appointment of a receiver, or an application therefor, and may exclude Grantor and its agents and employees wholly therefrom, and may have joint access with Grantor to the books, papers and accounts of Grantor.

(b)    If Grantor shall for any reason fail to surrender or deliver the Property or any part thereof after such demand by Lender, Lender may obtain a judgment or decree conferring upon Lender the right to immediate possession or requiring Grantor to deliver immediate possession of the Property to Lender. Grantor will pay to Lender, upon demand, all expenses of obtaining such judgment or decree, including reasonable compensation to Lender, its attorneys and agents; and all such expenses and compensation shall, until paid, be secured by the lien of this Deed.

(c)    Upon every such entering upon or taking of possession, Lender may hold, store, use, operate, manage and control the Property and conduct the business thereof, and, from time to time (i) make all necessary and proper maintenance, repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and purchase or otherwise acquire additional fixtures, personalty and other property; (ii) insure or keep the Property insured; (iii) manage and operate the Property and exercise all the rights and powers of Grantor to the same extent as Grantor could in its own name or otherwise with respect to the same; and (iv) enter into any and all agreements with respect to the exercise by others of any of the powers herein granted Lender, all as Lender from time to time may determine to be in its best interest. Lender may collect and receive all the rents, issues, profits and revenues from the Property, including those past due as well as those accruing thereafter, and, after deducting (aa) all expenses of taking, holding , managing and operating the Property (including compensation for the services of all persons employed for such purposes); (bb) the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases and acquisitions; (cc) the cost of such insurance; (dd) such taxes, assessments and other similar charges as Lender may at its option pay; (ee) other proper charges upon the Property or any part thereof; and (ff) the reasonable compensation, expenses and disbursements of the attorneys and agents of Lender, Lender shall apply the remainder of the monies and proceeds so received by Lender, first to the payment of accrued interest; and second to the payment of overdue installments of principal. Lender shall have no obligation to discharge any duties of a landlord to any tenant or to incur any liability as a result of any exercise by Lender of any rights under this Deed or otherwise. Lender shall not be liable for any failure to collect rents, issues, profits and revenues from the Property, nor shall Lender be liable to account for any such rents, issues, profits or revenues unless actually received by Lender.

(d)    Whenever all that is due upon such interest, deposits and principal installments and under any of the terms, covenants, conditions and agreements of this Deed, shall have been paid and all Events of Default made good, Lender shall surrender possession of the Property to Grantor, its

successors or assigns. The same right of taking possession, however, shall exist if any subsequent Event of Default shall occur and be continuing.

**2.04    Performance by Lender of Defaults by Grantor.**  If Grantor shall Default in the payment, performance or observance of any term, covenant or condition of this Deed, Lender may, so long as such Default continues, as its option, pay, perform or observe the same, and all payments made or costs or expenses incurred by Lender in connection therewith, shall be secured hereby and shall be, without demand, immediately repaid by Grantor to Lender with interest thereon at the default rate provided in the Note. Lender shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Lender is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without thereby becoming liable to Grantor or any person in possession holding under Grantor.

**2.05    Receiver.**  If an Event of Default shall have occurred and be continuing, Lender, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right without notice and without regard to the occupancy or value of any security for the indebtedness secured hereby or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Property and to collect and apply the rents, issues, profits and revenues thereof. The receiver shall have all of the rights and powers permitted under the laws of the State of Georgia. Grantor will pay to Lender upon demand all expenses, including receiver's fees, attorney's fees, costs and agent's compensation, incurred pursuant to the provisions of this Paragraph 2.05; and all such expenses shall be secured by this Deed.

**2.06    Enforcement.**

(a)    If an Event of Default shall have occurred and be continuing, Lender, at its option, may sell the Property or any part of the Property at public sale or sales before the door of the courthouse of the county in which the Property or any part of the Property is situated, to the highest bidder for cash, in order to pay the indebtedness secured hereby and accrued interest thereon and insurance premiums, liens, assessments, taxes and charges, including utility charges, if any, with accrued interest thereon, and all expenses of the sale and of all proceedings in connection therewith, including reasonable attorney's fees, if incurred, after advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which Sheriff's sales are advertised in said county. At any such public sale, Lender may execute and deliver to the purchaser a conveyance of the Property or any part of the Property in fee simple, with full warranties of title and to this end, Grantor hereby constitutes and appoints Lender the agent and attorney-in-fact of Grantor to make such sale and conveyance, and thereby to divest Grantor of all right, title or equity that Grantor may have in and to the Property and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Grantor. The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, are granted as cumulative of the other remedies provided hereby or by law for collection of the indebtednesses secured hereby and shall not be exhausted by one exercise thereof but may be exercised until full payment of all indebtednesses secured hereby.

(b)    If an Event of Default shall have occurred and be continuing, Lender may, in addition to and not in abrogation of the rights covered under subparagraph (a) of this Paragraph 2.06, either with or without entry or taking possession as herein provided or otherwise, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note or the performance of any term, covenant, condition or agreement of this Deed or any other right, and (ii) to pursue any other remedy available to it, all as Lender shall determine most effectual for such purposes.

2.07    <u>Purchase by Lender.</u>  Upon any foreclosure sale, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the indebtedness secured hereby as a credit to the purchase price.

2.08    <u>Application of Proceeds of Sale.</u>  In the event of a foreclosure sale of the Property, the proceeds of said sale shall be applied, first, to the expenses of such sale and of all proceedings in connection therewith, including attorney's and trustee's fees, then to insurance premiums, liens, assessments, taxes and charges including utility charges advanced by Lender, then to payment of the outstanding principal balance of the indebtedness secured hereby, then to the accrued interest on all of the foregoing, and finally the remainder, if any, shall be paid to Grantor.

2.09    <u>Grantor as Tenant Holding Over.</u>  In the event of any such foreclosure sale by Lender, Grantor shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over.

2.10    <u>Waiver of Appraisement, Valuation, Stay, Extension and Redemption Laws.</u>
Grantor agrees to the full extent permitted by law, that in case of a Default on the part of Grantor hereunder, neither Grantor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, extension, homestead, exemption or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Deed, or the absolute sale of the Property, or the final and absolute putting into possession thereof, immediately after such sale, of the purchasers thereat, and Grantor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets comprised in the security intended to be created hereby marshaled upon any foreclosure of the lien hereof.  Without limiting the generality of the foregoing, Grantor agrees that, in the event of the filing of any voluntary or involuntary petition in bankruptcy by or against Grantor, (i) Grantor shall not assert, and shall not request or cause any other party to assert, that the automatic stay provided by Section 362 of the Bankruptcy Code shall operate or be interpreted to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights Lender has by reason of this Deed, the Note or any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, or any other rights Lender may have, whether now existing or hereafter acquired, against Grantor, or against any collateral (including, without limitation, the Property) owned by Grantor; (ii) Grantor consents to, and Grantor shall not directly or indirectly contest, oppose, object to or otherwise defend against, Lender's efforts to gain relief from the automatic stay imposed under Section 362 of the Bankruptcy Code, and Grantor hereby

waives all right to so contest, oppose, object or otherwise defend; (iii) Grantor agrees that Lender shall be entitled to the lifting of such automatic stay without the necessity or requirement of establishing or proving the value of the Property, the lack of adequate protection of Lender's interest in the Property or the lack of Grantor's equity in the Property; and (iv) Grantor shall not seek a supplemental stay or any other relief, whether injunctive or otherwise, pursuant to Section 105 of the Bankruptcy Code, or any other provision of the Bankruptcy Code, or otherwise, to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights Lender has by reason of this Deed, the Note or any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, or any other rights Lender may have, whether now existing or hereafter acquired, against Grantor, or against any collateral (including, without limitation, the Property) owned by Grantor.

2.11    **Leases.**  Lender, at its option, is authorized to foreclose this Deed subject to the rights of any tenants of the Property, and the failure to make any such tenants parties to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be by Grantor, a defense to any proceedings instituted by Lender to collect the sums secured hereby.

2.12    **Discontinuance of Proceedings and Restoration of the Parties.**  In case Lender shall have proceeded to enforce any right, power or remedy under this Deed by foreclosure, entry or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then and in every such case Grantor and Lender shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of Lender shall continue as if no such proceeding had been taken.

2.13    **Remedies Cumulative.**  Subject to Paragraph 2.18 hereof, no right, power or remedy conferred upon or reserved to Lender by this Deed is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

2.14    **Waiver.**

(a)    No delay or omission of Lender or of any holder of the Note to exercise any right, power or remedy accruing upon any Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such Default to acquiescence therein; and every right, power and remedy given by this Deed to Lender may be exercised from time to time as often as may be deemed expedient by Lender.  No consent or waiver, expressed or implied, by Lender to or of any breach or Default by Grantor in the performance of the obligations thereof hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or Default in the performance of the same or any other obligations of Grantor hereunder.  Failure on the part of Lender to complain of any act or failure to act or to declare any Event of Default, irrespective of how long such failure continues, shall not constitute a waiver by Lender of its rights hereunder or impair any rights, powers or remedies consequent on any breach or Default by Grantor.

(b)    If Lender (i) grants forbearance or an extension of time for the payment of any sums secured hereby; (ii) takes other or additional security for the payment of any sums secured

hereby; (iii) waives or does not exercise any right granted herein or in the Note; (iv) releases any part of the Property from the lien of this Deed or otherwise changes any of the terms, covenants, conditions or agreements of the Note or this Deed; (v) consents to the filing of any map, plat or replat affecting the Property; (vi) consents to the granting of any easement or other right affecting the Property; or (vii) makes or consents to any agreement subordinating the lien hereof, any such act or omission shall not release, discharge, modify, change or affect the original liability under the Note, this Deed or any other obligation of Grantor or any subsequent purchaser of the Property or any part thereof, or any maker, co-signer, endorser, surety or guarantor; nor shall any such act or omission preclude Lender from exercising any right, power or privilege herein granted or intended to be granted in the event of any Default then made or of any subsequent Default; nor except as otherwise expressly provided in an instrument or instruments executed by Lender, shall the lien of this Deed be altered thereby. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Property, Lender, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Property or the indebtedness secured hereby, or with reference to any of the terms, covenants, conditions or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any liabilities, obligations or undertakings.

2.15 **Suits to Protect the Property.** Lender shall have power (a) to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Property by any acts which may be unlawful or in violation of this Deed, (b) to preserve or protect its interest in the Property and in the rents, issues, profits and revenues arising therefrom, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Lender.

2.16 **Lender May File Proofs of Claim.** In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Grantor, its creditors or its property, Lender, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of lender allowed in such proceedings for the entire amount due and payable by Grantor under this Deed at the date of the institution of such proceedings and for any additional amount which may become due and payable by Grantor hereunder after such date.

2.17 **WAIVER OF BORROWER'S RIGHTS.** BY EXECUTION OF THIS DEED AND BY INITIALING THIS PARAGRAPH 2.17, BORROWER EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY BORROWER WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED; (B) WAIVES ANY AND ALL RIGHTS WHICH BORROWER MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES (INCLUDING, WITHOUT LIMITATION, THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS FOR THE SEVERAL STATES, OR

BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THIS DEED; (C) ACKNOWLEDGES THAT BORROWER HAS READ THIS DEED AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF THIS DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO BORROWER AND BORROWER HAS CONSULTED WITH COUNSEL OF BORROWER'S CHOICE PRIOR TO EXECUTING THIS DEED; AND (D) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OR BORROWER HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY BORROWER AS PART OF A BARGAINED FOR LOAN TRANSACTION.

**2.18   Claims Against Lender.**  No action at law or in equity shall be commenced, or allegation made, or defense raised, by Grantor against Lender for any claim under or related to this Deed, the Note or any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, or related to the conduct of the parties thereunder, unless written notice of such claim, expressly setting forth the particulars of the claim alleged by Grantor, shall have been given to Lender within sixty (60) days from and after the initial awareness of Grantor of the event, omission or circumstance forming the basis of Grantor for such claim.  Any failure by Grantor to timely provide such written notice to Lender shall constitute a waiver by Grantor of such claim.

## ARTICLE 3

**3.01   Successors and Assigns.**  This Deed shall inure to the benefit of and be binding upon Grantor and Lender and their respective successors and assigns. Whenever a reference is made in this Deed to Grantor or Lender such reference shall be deemed to include a reference to the successors and assigns of Grantor or Lender.

**3.02   Terminology.**  All personal pronouns used in this Deed whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural, and vice versa. Titles and Articles are for convenience only and neither limit nor amplify the provisions of this Deed itself, and all references herein to Articles, Paragraphs, or subparagraphs thereof, shall refer to the corresponding Articles, Paragraphs or subparagraphs thereof, of this Deed unless specific reference is made to such Articles, Paragraphs or subparagraphs thereof of another document or instrument.

**3.03   Severability.**  If any provision of this Deed or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Deed and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

**3.04   Applicable Law.**  This Deed shall be interpreted, construed and enforced according to the laws of the State of Georgia.

**3.05**   <u>Notices, Demands and Requests.</u>   All notices, demands or requests provided for or permitted to be given pursuant to this Deed must be in writing and shall be deemed to have been properly given or served by depositing in the United States Mail, postpaid and registered or certified return receipt requested, and addressed to the addressees hereinafter set forth. All notices, demands and requests shall be effective upon being deposited in the United States Mail. However, the time period in which a response to any notice, demand or request must be given, if any, shall commence to run from the date of receipt of the notice, demand or request by the addressee thereof. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to be receipt of the notice, demand or request sent. By giving at least thirty (30) days written notice thereof, Grantor or Lender shall have the right from time to time and at any time during the term of this Deed to change their respective addresses and each shall have the right to specify as its address any other address within the United States of America.

For the purposes of this Deed, the address of the Grantor is as set forth on the first page hereof.

For the purposes of this Deed, the address of the Lender is as set forth on the first page hereof.

SIGNATURE PAGE TO FOLLOW

IN WITNESS WHEREOF, Grantor has executed this Deed under seal, as of the day and year first above written.

GRANTOR:

_____
DAVID LEE SMITH

_____
Unofficial Witness

Notary Public:_____

My Commission expires:_____

SIGNATURE PAGE TO GEORGIA DEED TO SECURE DEBT

# EXHIBIT A
## LEGAL DESCRIPTION

Property Address:    3795 North Stratford Road
                     Atlanta, Georgia 30342

All that tract or parcel of land lying and being in Land Lot 44 of the 17th District, Fulton County, Georgia and being more particularly described as follows:

BEGINNING on the East side of North Stratford Road at a point seven hundred eighty-nine and three-tenths (789.3) feet North of the Northeast intersection of Old Ivy Road and North Stratford Road; run thence North along the East of North Stratford fifty four (54) feet to a point; run thence East three hundred (300) feet to a point; run thence South fifty (54) feet to a point; run thence West three hundred (300) feet to the East side of North Stratford Road and the POINT OF BEGINNING, which currently has the address of 3795 North Stratford Road, Atlanta, Georgia.

# EXHIBIT 38

**Edward Sledge**

| | |
|---|---|
| From: | david@residentialsouthpartners.com |
| Sent: | Tuesday, June 13, 2017 2:56 PM |
| To: | Edward Sledge |
| Subject: | RE: Loans/Advances |

Yes, that's correct. We need to pay you outside of the closing. The entity buying and selling alpharetta is RSP Burnett, LLC and the Borrower on the 2nd mortgage is David Smith. Thanks David

--------- Original Message ---------
Subject: Loans/Advances
From: "Edward Sledge" <esledge@mcdowellknight.com>
Date: 6/13/17 11:01 am
To: "david@residentialsouthpartners.com" <david@residentialsouthpartners.com>

David and Caroline. I deposited $10,000 in Caroline's Wells Fargo account on Thursday, June 9 and $8000 in the same account today June 12. Of the $18,000, $13,000 represents living expenses and $5000 is for David's court imposed obligation to pay partial costs for a special master to review distribution of the remaining $128,000 from the Metropolitan sale/foreclosure. This brings the total loan balance today on the line of credit/2nd mortgage to $80,000.

My understanding is loan balance will be repaid on June 30 out of the closing. As we get closer to the closing, we can talk about whether I should be paid at the closing out of the closing funds, whether one of you can just deposit a check in my Regions account after the closing or mail it to me. Let me know if you have any questions.

Hope D is having a great time at camp and Parker and Annie are doing well. I sent D a letter yesterday and I will send another today.

Pops


Edward S. Sledge

McDowell Knight Roedder & Sledge LLC

RSA Battle House Tower

11 North Water Street Suite 13290

Mobile, AL 36602

Phone:  251/431-8803

Fax:  251/432-5303

Cell: 251/379-0486

EXHIBIT
T-38

Blumberg No. 5118

1

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.



# MCDOWELL KNIGHT

## MCDOWELL KNIGHT ROEDDER & SLEDGE L.L.C.
### LAWYERS

Home | Firm News | Firm Overview | Areas of Practice | Our Attorneys
Contact Us | Recruitment | Resources | Representative Clients

www.mcdowellknight.com

# EXHIBIT 39

**Edward Sledge**

| | |
|---|---|
| **From:** | david@residentialsouthpartners.com |
| **Sent:** | Wednesday, June 14, 2017 11:46 AM |
| **To:** | Edward Sledge |
| **Cc:** | smithsledge@yahoo.com |
| **Subject:** | RE: Loans/Advances |

Ed, the entity is not selling to itself. The entity is buying the property and then that same entity is selling the property. Yes, Monte Hewett asked for more time to close the property and there is no time to give him unfortunately so he is gone. He must have planned all along to ask for an extension even though he continuously told me he would be ready to close.

I'm working on putting another deal together right now. I'm not sure how it will turn out yet but I will keep you posted.

I understand about the loan and I thank you again for your help and generosity. Thanks David

--------- Original Message ---------
Subject: RE: Loans/Advances
From: "Edward Sledge" <esledge@mcdowellknight.com>
Date: 6/14/17 11:57 am
To: "david@residentialsouthpartners.com" <david@residentialsouthpartners.com>
Cc: "smithsledge@yahoo.com" <smithsledge@yahoo.com>

David. Is Monty Hewitt gone? I don't understand how an entity can sell to itself. Never heard of that.

I want you to know I do not intend to loan/advance any more money. The loans were to be a brief bridge and have gone longer than intended. I hope for all Alpharetta works.

Ed

Edward S. Sledge

McDowell Knight Roedder & Sledge LLC

RSA Battle House Tower

11 North Water Street Suite 13290

EXHIBIT
T-39
Blumberg No. 5118

1

Mobile, AL 36602

Phone: 251/431-8803

Fax: 251/432-5303

Cell: 251/379-0486

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.

# MCDOWELL KNIGHT

## MCDOWELL KNIGHT ROEDDER & SLEDGE L.L.C.
### LAWYERS

Home | Firm News | Firm Overview | Areas of Practice | Our Attorneys
Contact Us | Recruitment | Resources | Representative Clients

**www.mcdowellknight.com**



**From:** david@residentialsouthpartners.com [mailto:david@residentialsouthpartners.com]
**Sent:** Tuesday, June 13, 2017 2:56 PM
**To:** Edward Sledge <esledge@mcdowellknight.com>
**Subject:** RE: Loans/Advances

Yes, that's correct. We need to pay you outside of the closing. The entity buying and selling alpharetta is RSP Burnett, LLC and the Borrower on the 2nd mortgage is David Smith. Thanks David

--------- Original Message ---------

Subject: Loans/Advances
From: "Edward Sledge" <esledge@mcdowellknight.com>
Date: 6/13/17 11:01 am
To: "david@residentialsouthpartners.com" <david@residentialsouthpartners.com>

David and Caroline. I deposited $10,000 in Caroline's Wells Fargo account on Thursday, June 9 and $8000 in the same account today June 12. Of the $18,000, $13,000 represents living expenses and $5000 is for David's court imposed obligation to pay partial costs for a special master to review distribution of the remaining $128,000 from the Metropolitan sale/foreclosure. This brings the total loan balance today on the line of credit/2nd mortgage to $80,000.

My understanding is loan balance will be repaid on June 30 out of the closing. As we get closer to the closing, we can talk about whether I should be paid at the closing out of the closing funds, whether one of you can just deposit a check in my Regions account after the closing or mail it to me. Let me know if you have any questions.

Hope D is having a great time at camp and Parker and Annie are doing well. I sent D a letter yesterday and I will send another today.

Pops


Edward S. Sledge

McDowell Knight Roedder & Sledge LLC

RSA Battle House Tower

11 North Water Street Suite 13290

Mobile, AL 36602

Phone: 251/431-8803

Fax: 251/432-5303

Cell: 251/379-0486

The information contained in this e-mail message is intended to be an attorney-client communication, privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you

3

are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately by telephone at (251) 432-5300.

# McDOWELL KNIGHT

## McDowell Knight Roedder & Sledge L.L.C.
### LAWYERS

Home | Firm News | Firm Overview | Areas of Practice | Our Attorneys
Contact Us | Recruitment | Resources | Representative Clients

www.mcdowellknight.com



# EXHIBIT 40

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| BRITTON MCLEOD and<br>D. HAYDEN SMITH<br><br>        **Plaintiffs,**<br><br>v.<br><br>DAVID L. SMITH, JR., RESIDENTIAL<br>SOUTH PARTNERS, LLC; RSP I, LLC;<br>RSP ARDEN WAY, LLC; FS RE<br>PARTNERS, LLC; SPRINGLAKE<br>RESIDENTIAL, LLC; 2050<br>SPRINGLAKE, LLC; SPRINGLAKE-<br>LOT 5, LLC, AND JOHN DOES 1-9,<br><br>        **Defendants.** | CIVIL ACTION FILE<br>NO. 2015CV-260502 |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR CONTEMPT AGAINST DEFENDANT DAVID L. SMITH, JR. FOR SALE OF PROPERTY IN VIOLATION OF CONSENT ORDER

COME NOW Britton McLeod and D. Hayden Smith ("Plaintiffs") and show the following as Plaintiffs' Brief in Support of Motion for Contempt Against Defendant David L. Smith, Jr. for Sale of Property in Violation of Consent Order ("Plaintiffs' Motion"):

## I.     PROCEDURAL AND FACTUAL BACKGROUND

1.     On November 12, 2015 this Court entered an Order that memorialized a Consent Order agreed by the Parties on October 20, 2015 (the "Consent Order").

1



EXHIBIT
T-40

*See* Consent Order attached as **Exhibit "A"** hereto. The Consent Order, *inter alia*, placed certain financial restrictions on Defendant David Smith's ("Defendant David Smith") financial activities, specifically including the restriction that Defendant David Smith could not "sell" certain property located at 3795 North Stratford Road, Atlanta, Georgia  (the Property") without either written consent of Plaintiffs or Order of this Court. *See* Consent Order p. 2, ¶ 2 (a); pp.  4-5, ¶¶ 1 and 3

2.     On or about June 16, 2016, Edward S. Sledge, III ("Attorney Sledge"), Defendant David Smith's father-in-law, wrote to Plaintiffs' counsel, Brendon McLeod, regarding his intent to enter the case as counsel for Defendant David Smith in the above-styled action if settlement could not be reached.  A correct copy of this letter is attached hereto as **Exhibit "B"**.  *See* also correct copy of filed Affidavit of Brendon McLeod ("McLeod affidavit") at ¶ 3, attached hereto as **Exhibit "C**.  Attorney Sledge's letter stated that **"It's time for David to get some free help . . . . If we have to come in, we are in for the duration and that includes trial and vigorous prosecution of David's counterclaims and the enforcement of any judgment on those counterclaims.  There will be no shortage of legal talent on this end to see it all the way through."** *Id*. at p. 2; McLeod affidavit at ¶ 3

2

3.      On June 16, 2016, after receiving Attorney Sledge's letter, Plaintiffs'

counsel invited Attorney Sledge to meet with Plaintiffs in hopes of helping resolve

the litigation. *See* McLeod affidavit" at ¶ 3 (**Exhibit "C"**).  Plaintiffs and

Plaintiffs' counsel subsequently met in person with Attorney Sledge and engaged

in settlement discussions, but the parties were unsuccessful in their efforts to

negotiate a settlement framework over the ensuing weeks. *Id.*

4.      On July 12, 2016, Attorney Sledge filed a motion to be admitted *pro hac*

*vice* as counsel for Defendant David Smith and began participating in the case as

counsel for Defendant David Smith. *See* McLeod affidavit at ¶¶ 4-7 (**Exhibit "C"**)

5.      On August 1, 2016, Plaintiffs filed their Response to Defendant RSP I,

LLC'S Motion for Expedited Release of $128,048.00 in Metropolitan Funds Held

by Campbell & Brannon ("Plaintiffs' Response") concerning funds held in escrow

pursuant to the Consent Order.  Plaintiffs' counsel served a copy of Plaintiffs'

Response upon Attorney Sledge. *See* McLeod affidavit at ¶ 4  (**Exhibit "C"**).

Plaintiffs' Response gave notice that Defendant David Smith was acting in open

defiance of the Consent Order by making improper transfers to insiders

characterized as "loans", which transfers were really designed to dissipate assets

and obstruct Plaintiffs' rights under the Consent Order. *See* Plaintiffs' Response at

p. 5.

3

6.      On November 18, 2016, Defendants' counsel Jimmy Paul wrote Plaintiffs'

counsel seeking Plaintiffs' consent under the Consent Order to allow Defendant

David Smith to sell his personal residence and to keep all of the sales proceeds.  A

correct copy of this letter is attached hereto as **Exhibit "D"**.  Mr. Paul copied

Attorney Sledge on this letter.  *See* McLeod affidavit at ¶ 5 (**Exhibit "C"**).

7.      On November 22, 2016, Plaintiffs' counsel responded to Mr. Paul's

November 18 letter and advised that Plaintiffs did not consent to allow Defendant

David Smith to sell the property and keep **all** the proceeds because there was no

real dispute that Defendant David L. Smith, Jr. used Trust funds from Lenox Pines,

LLC to purchase the property and obtain loans for the property in breach of his

fiduciary duty.  A correct copy of this letter is attached hereto as **Exhibit "E"**.

Plaintiffs' counsel copied Attorney Sledge on this letter.  *See* McLeod affidavit at ¶

6 (**Exhibit "C"**).

8.      On March 2, 2017, Attorney Sledge filed a Notice of Withdrawal.

9.      On March 17, 2017, Defendant David Smith filed Defendant David L.

Smith, Jr.'s Motion for Expedited Entry of Order Allowing Defendant Smith to

Sell Personal Residence and Release Net Proceeds of Sale to Defendant Smith

("Defendant's Motion to Sell Property"), to which Plaintiffs timely filed a response

in opposition.

10.     On April 19, 2017, **while Defendant David Smith's Motion to Sell Property was still pending**, Defendant David Smith, acting together with his father-in-law and "former" counsel Attorney Sledge, willfully violated the Consent Order by carrying out a plan to sell the Property under the guise of Defendant David Smith executing a deed to secure debt and demand promissory note in favor of Attorney Sledge (the "Sledge transaction").  A correct copy of said recorded deed to secure debt is attached hereto as **Exhibit "F"**.  The deed from Defendant Smith to Attorney Sledge states that it was "**made and entered into this 19 day of April, 2017**" and further provided that:

> In order to secure **TWO HUNDRED THOUSAND and NO/100 UNITED STATES DOLLARS ($200,000.00)** of a promissory note from Grantor to Lender . . . Grantor does hereby grant, bargain, **sell**, convey, assign, transfer and set over unto Lender, and its successors and assigns, and grant a security interest in all of the following described land and interests in land, estates, easements, rights, improvements, property, fixtures, equipment, furniture, furnishings, appliances, and appurtenances (hereinafter collectively referred to as the "Property") . . . .

> **TO HAVE AND TO HOLD** the Property and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of Lender and the successors and assigns of Lender, **IN FEE SIMPLE** forever; and Grantor covenants that Grantor is lawfully seized and possessed of the Property as aforesaid, and has good right to convey the same, that the same is unencumbered and that Grantor does warrant and will forever defend the title thereto against the claims of all persons whomsoever.

> *See* **Exhibit "F"** at pp.1-2 (emphasis added)

5

Defendant David Smith thus willfully violated the Consent Order, p. 2, ¶ 2 (a) by
selling the Property without either written consent of Plaintiffs or Order of this
Court after motion and hearing.

11.     Two days later, on Friday, April 21, 2017, at 10:47 a.m., Defendant David
Smith's counsel, Jimmy L. Paul, purported to give Plaintiffs' counsel written
"advance notice" of the Sledge transaction as required by the Consent Order.  Mr.
Paul copied Attorney Sledge on this correspondence and specifically referenced
the existence of the Consent Order.  Mr. Paul's letter falsely represented that it was
a transaction that Defendant David Smith "*will* enter into", despite the fact that the
Sledge transaction had already occurred on April 19.  A correct copy of Mr. Paul's
letter is attached hereto as **Exhibit "G"** (emphasis added); *See* McLeod affidavit at
¶ 7 (**Exhibit "C"**).  Thus, Defendant David Smith also violated the Consent Order,
pp. 4-5, ¶ 3, by failing to disclose to Plaintiffs, **in advance**, all proposed contracts.

12.     The Consent Order, p. 4, ¶ 1, prohibits Defendant David Smith from making
any payment on the newly created Sledge transaction lien without either consent of
Plaintiffs or Order entered by this Court.

6

## II.    ARGUMENT AND CITATIONS

### A.    The Sledge Transaction Violates the Consent Order As a Sale of the Property.

Defendant David Smith was concerned that this Court would not grant his Motion to Sell the Property and allow him to keep the sales proceeds. So, he willfully violated the Consent Order by trying to do indirectly what he could not do directly without the Court's approval. Specifically, Defendant David Smith executed a promissory note for $200,000.00 payable on demand to Attorney Sledge secured by a deed to the Property. The deed given to Attorney Sledge expressly states, however, that the Sledge transaction was a sale of the Property in violation of the Consent Order. *See* Exhibit "E" at pp.1-2 ("Grantor does hereby grant, bargain, **sell**, convey, assign, transfer and set over unto Lender . . . . TO HAVE AND TO HOLD the Property and all parts, rights . . . IN FEE SIMPLE forever." (emphasis added)

Defendant David Smith does not have the right under the Consent Order to unilaterally sell the Property, and it follows that he cannot convey such a right to Attorney Sledge. Prior to the Sledge transaction, Attorney Sledge had no interest whatsoever in the Property. Now, as a result of the Sledge transaction, Defendant David Smith has granted Attorney Sledge the right by deed to sell the Property out from under the Consent Order. The Sledge transaction authorizes Attorney Sledge

7

to demand payment at any time and then upon default foreclose the Property and keep the remaining equity in excess of the existing secured debt. Upon information and belief, Plaintiffs show this remaining equity to be in excess of $200,000.00.

Defendant's Motion to Sell acknowledges that Defendant David Smith does not have the financial resources to pay the demand note. A demand note secured by the Property that cannot possibly be paid on demand is tantamount to a sale of the Property in violation of the Consent Order. "A party cannot do indirectly what the law does not allow to be done directly." *See Coffman Grading Company, Inc. v. Forsyth County*, 303 Ga. App. 836, 838 (2010). Additionally, Defendant David Smith's promise to repay the loan to Attorney Sledge "on demand" without the consent of the Court or Plaintiffs further violates the Consent Order. *See* Consent Order p. 2, ¶ 2 (a); pp. 4-5, ¶¶ 1 and 3.

In sum, the Consent Order does not allow Defendant David Smith to grant rights to others to sell the properties covered by the Consent Order, nor does it allow Defendant David Smith to suck out equity under the guise of a secured loan. Such transactions removing equity fly in the face of and eviscerate the express purpose for the Consent Order: to protect Plaintiffs' alleged entitlement to funds that Defendant Smith has admitted he owes Plaintiffs. *See* Consent Order p. 2, ¶ 2

8

(a).  For these reasons, the Sledge transaction violates the Consent Order as a sale of the Property.

**B.    This Court has Authority Over Both Defendant David Smith and Attorney Sledge.**

In addition to an inherent right to punish contempts of court orders, this Court has statutory authority under O.C.G.A. § 15-1-4 (a) (3) which grants, *inter alia,* the power to impose summary punishment for disobedience by any party to any lawful order of the Court.  This Court also has the authority under O.C.G.A. § 15-1-4 (a) (3) to punish a non-party with actual notice of an order for contempt. *See The Bootery, Inc. v. Cumberland Creek Properties, Inc.*, 271 Ga. 271, 272 (1999).

Because Attorney Sledge had actual notice of the Consent Order, his withdrawal as counsel for Defendant Smith just prior to the Sledge transaction does not remove him from the Court's authority.  While Attorney Sledge was Defendant David Smith's counsel in this case, he received correspondence and pleadings concerning the Consent Order.  On August 2, 2016, Attorney Sledge received Plaintiffs' pleading which argued that Defendant David Smith was acting in open defiance of the Consent Order by making improper transfers to insiders characterized as "loans" designed to dissipate assets and obstruct Plaintiffs' rights under the Consent Order.  On November 18 and 22, 2016, respectively, Attorney

Sledge received copies of letters from his co-counsel, Mr. Paul, and Plaintiffs'

counsel specifically regarding the Consent Order's restriction on the sale of the

Property.  Attorney Sledge was also copied on Mr. Paul's April 21 "advance"

notice of the Sledge transaction that specifically referenced the Consent Order.  *See*

statement of facts Nos. 3-7, *supra*.  Attorney Sledge is thus subject to this Court's

authority.

    **C.**    **Cancellation of the Sledge Security Deed and Imposition of
Attorneys Fees are Appropriate Sanctions.**

      Defendant David Smith has shown a lack of regard for the Court's Orders,

resulting in admonishment, contempt sanctions, and warnings from the Court to

comply with the Court's Orders.  The Sledge transaction ignored these warnings

and is an egregious violation of the Consent Order.  Attorney Sledge's actions are

particularly disappointing because he is a very experienced litigation attorney and

had actual knowledge of the Consent Order.  Moreover, Attorney Sledge knows that

Defendant Smith used Trust funds from Lenox Pines to purchase the Property and

that he perjuriously denied it under oath to try and conceal this fact.  Despite this

knowledge, Attorney Sledge has now attempted to take a secured position on the

Property with priority over the Plaintiffs and the Consent Order.  While it is noble

for Attorney Sledge to lend money and help support his family, he knew that the

Consent Order prohibited Defendant David Smith from selling the Property without

Plaintiffs' approval or the Court's permission.  Attorney Sledge also knew that the

secured debt due on demand was nothing more than a thinly disguised sale of the

Property designed to allow Defendant David Smith to suck out the equity in the

Property – thus further dissipating assets expressly protected by the Consent Order.

The Sledge transaction was a deliberate violation of the Consent Order's express

prohibition against any sale of the Property without the Court's permission.

*The Bootery, Inc. v. Cumberland Creek Properties, Inc., supra,* reversed the

cancellation of security deed in favor of a non-party because the non-party was not

shown to have had actual notice of the order for which the contempt issued.  Here,

Attorney Sledge did have the required actual notice of the Consent Order.  Despite

this knowledge, Attorney Sledge acted together with Defendant David Smith to

effect a sale of the Property and to allow Defendant Smith to suck out the equity,

while he obtained rights to sell the Property out from under the Consent Order.  The

contumacious nature of these actions are further evidenced by Defendant David

Smith's and Attorney Sledge's failure to provide Plaintiffs with advance notice of

the Sledge transaction as required by the Consent order.  Mr. Paul's April 21

"advance notice" letter sent after the transaction had been consummated on April 19

was a weak attempt to provide cover and authority for the Sledge transaction – and

it sticks out like a sore thumb.  The deed in favor of Attorney Sledge should be

ordered cancelled, and reasonable attorney's fees should be awarded to Plaintiff for

having to bring the instant motion.

11

# CONCLUSION

The Sledge transaction willfully violated the Consent Order and demands appropriate sanctions from this Court.

Wherefore, Plaintiffs respectfully request as follows:

a)      that a hearing be held on Plaintiffs' Motion;

b)      that following said hearing, the Sledge transaction be sanctioned as a willful contempt of Court's Consent Order;

c)      that the Court exercise its authority over Attorney Sledge and Defendant David Smith and order the cancellation of the recorded April 19, 2016 Deed to Secure Debt from Defendant David Smith to Attorney Sledge;

d)      that Defendant David Smith be sanctioned for failing to provide advance notice of the Sledge transaction as a willful contempt of the Court's Consent Order;

d)      that Plaintiffs be awarded reasonable attorneys' fees for bringing and prosecuting Plaintiffs' Motion; and

e)      that this Court grant such other and further relief to Plaintiffs as may be deemed appropriate.

Respectfully submitted, this 20th day of June, 2017.

ATTORNEYS FOR PLAINTIFFS:

MCMANAMY MCLEOD HELLER, LLC

LAW OFFICES OF TOM PYE, P.C.

_____s/s Brendon McLeod_____
BRENDON MCLEOD
GA Bar No. 497474
3520 Piedmont Road, Suite 110
Atlanta, GA 30305
404 442-6600
bren@mmhfirm.com

_____s/sTomPye_____
TOM PYE
GA Bar No. 590400
Waterford Centre, Suite 120
 Parkway
Norcross, GA 3092
770 300-0906
tpye@pyelawoffices.com

## EXHIBIT 41

Fulton County Superior Court
***EFILED***QW
Date: 9/28/2017 10:29:41 AM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| Britton McLeod , | * | |
| D. Hayden Smith | * | |
| Plaintiff(s) | * | **Civil Action No. : 2015CV260502** |
| v. | * | |
| | * | |
| David L. Smith, Jr., | * | |
| Residential South Partners, LLC , | * | |
| RSP I, LLC , | | |
| RSP Arden Way, LLC , | | |
| FS RE Partners, LLC , | | |
| Springlake Residential, LLC , | | |
| 2050 Springlake, LLC , | | |
| Springlake-Lot 5, LLC , | | |
| John Doe(s) 1-9 , | | |
| Ronald Zirpoli | | |
| Defendant(s) | | |

### RULE NISI

Plaintiffs and Defendants are hereby ORDERED to appear before Judge Constance C. Russell in Courtroom 8-F, 185 Central Avenue, Atlanta, Georgia 30303, on the **12th day of October, 2017 at 2:30 p.m.** for a hearing to address the Special Master's findings within the reports filed September 5, 2017 and September 26, 2017, and the Plaintiffs' Motions for Contempt filed February 22, 2017, June 20, 2017, July 18, 2017, and September 15 2017.

Attorneys must notify all opposing attorneys, non-local attorneys and pro se parties. Personal service of notices is the responsibility of party seeking relief from the Court. Any questions concerning the hearing should be directed to Ms. Kayla S. Winters, Staff Attorney, at 404-612-2805.

This ___28___ day of _____, 20_17_

Judge Constance C. Russell
Fulton County Superior Court
Atlanta Judicial Circuit

EXHIBIT
T-41

## EXHIBIT  43

**Edward Sledge**

| | |
|---|---|
| **From:** | Denise Dotson <ddotsonlaw@me.com> |
| **Sent:** | Tuesday, December 19, 2017 11:51 AM |
| **To:** | Edward Sledge |
| **Subject:** | Smith Documents |
| **Attachments:** | Smith_File_Stamped_UCC_Note.pdf |

Attached are the Smith documents.  UCC-1 is file stamped today and will be recorded today and mailed to you within 2 business days.

With respect to payment, please send to the following address:

M. Denise Dotson, LLC
c/o Carolyn Miller
265 Florida Ave
Valpariso, FL 32580

Thanks.

Denise Dotson

M. Denise Dotson, LLC
PO Box 435
Avondale Estates, GA 30002
phone: (404) 210-0166
email: ddotsonlaw@me.com
web: www.ddotsonlaw.com



EXHIBIT
T-43

1

## EXHIBIT 43 (cont.)

RECEIVED

2017 DEC 15  PM 12: 50

CLERK OF SUPERIOR COURT
DEKALB COUNTY GA   SW

### UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Edward Sledge

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

111 North Water Street
Suite 13290
Mobile, GA 36602

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Smith, Jr. | David | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 3795 N Stratfield Rd | Atlanta | GA | 30342 | |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Sledge | Edward | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 111 North Water Street Ste 13290 | Mobile | AL | 36602 | |

4. COLLATERAL: This financing statement covers the following collateral:
Assets acquired after October 3, 2017 including, without limitation, the right to receive proceeds from assets acquired after October 3, 2017 and the right to receive proceeds from exempt assets that are subject to liquidation in any proceeding including, without limitation, any pending bankruptcy cases.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

# EXHIBIT 43 (cont.)

## SECURED PROMISSORY NOTE

$7,500.00                                    Date: December 19, 2017

For value received, the undersigned David Lee Smith, Jr ("Borrower") promises to pay to the order of Edward Sledge ("Lender") at RSA Battle House Tower, 11 North Water Street, Suite 13290, Mobile, AL 36602 ( or at such other place as the Lender may designate in writing), the principal sum of Seven Thousand Five Hundred Dollars $7,500.

### I. Terms of Payment

#### A. Payments

This Note is payable upon demand upon liquidation of Borrower's residence. In the event the liquidation of the residence does not generate sufficient proceeds, the Note is due in full on demand.

#### B. Application of Payments

All payments on this Note shall be applied first in payment of accrued interest and any remainder in payment of principal.

#### C. Acceleration of Debt

If any payment obligation under this Note is not paid when due, the remaining unpaid principal balance and any accrued interest shall become immediately due at the option of the Lender.

#### D. Security

As security for the obligations set forth in the Note, Borrower grants Lender a first priority security interest and lien upon assets acquired after October 3, 2016 including, without limitation, any and all exemptions that Borrower will receive as a result of the liquidation of Borrower's residence or other exempt assets by the Chapter 7 Trustee or any other entity that liquidates the residence.

Borrower consents to the recording of any documentation necessary for Lender to perfect Lender's security interest.

#### II. Prepayment

The Borrower reserves the right to prepay this Note (in whole or in part) prior to the Due Date with no prepayment penalty.

### III. Collection Costs

If any payment obligation under this Note is not paid when due, the Borrower promises to pay costs of collections, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process; provided, however, the collection costs including, reasonable attorneys fees, are limited to fifteen percent (15%) of the outstanding obligation.

### IV. Default

If any of the following events of default occur, this Note shall become due immediately, after thirty (30) days written notice has been provided to Borrower:

    i.    the failure of the Borrower to pay the principal and any accrued interest when due;

    ii.    a misrepresentation by the Borrowers to the Lender for the purpose of obtaining credit.

### V. Severability of Provisions

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

### VI. Miscellaneous

    A.    All payments of principal and interest on this Note shall be paid in the legal currency of the United States. Borrowers waive presentment for payment, protest, and notice of protest and demand of this Note.

    B.    No delay in enforcing any right of the Lender under this Note, or assignment by Lender of this Note, or failure to accelerate the debt evidenced hereby by reason of default in the payment of a monthly installment or the acceptance of a past-due installment shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrowers, All rights of the Lender under this Note are cumulative and may be exercises concurrently or consecutively at the Lender's option.

    C.    This note may not be amended without the written approval of the parties.

    D.    Time is of the essence.

### VII. Governing Law

This Note shall be construed in accordance with the laws of the State of Georgia.

## VIII. Notices

Written notice, including any changes of address, shall be provided at the following addresses:

For Lender:        RSA Battle House Tower

11 North Water Street

Suite 13290

Mobile, AL 36602

For Borrowers:    David Lee Smith, Jr.

c/o M. Denise Dotson, LLC

PO Box 435

Avondale Estates, GA 30002

IN WITNESS WHEREOF, this Note has been executed and delivered in the manner prescribed by law as of the date first written above.

Signed this 19th day of December, 2017.

Borrower: _David L Smith Jr_

Lender: _____

Executed before me this the 19th day of November, 2017. _December_

_(signature)_

Notary Public

My commission Expires: 9/9/2019

JENNIFER COPLAND
MY COMMISSION EXPIRES
NOTARY PUBLIC
SEPTEMBER 09, 2019
DEKALB COUNTY, GEORGIA

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | David L. Smith, Jr. |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Northern District of Alabama |
| Case number | 17-67324 |

## Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:   Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | Edward S. Sledge, III <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes. From whom? _____ |

3. Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Edward S. Sledge, III c/o William A. Rountree <br> Name | Edward S. Sledge, III <br> Name |
| 2800 North Druid Hills Road <br> Number   Street | 11 North Water Street, Ste 13290 <br> Number   Street |
| Atlanta   GA   30329 <br> City   State   ZIP Code | Mobile   AL   36602 <br> City   State   ZIP Code |
| Contact phone 404 584-1244 | Contact phone 251-279-0486 |
| Contact email wrountree@randllaw.com | Contact email esledge@mcdowellknight.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) _____   Filed on ___/___/___ <br> MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No <br> ☐ Yes. Who made the earlier filing? _____ |

EXHIBIT
T-44

**Part 2:  Give Information About the Claim as of the Date the Case Was Filed**

6.  Do you have any number you use to identify the debtor?
☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

7.  How much is the claim?    $ __87,779.93__    Does this amount include interest or other charges?
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8.  What is the basis of the claim?
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

__Money loaned__

9.  Is all or part of the claim secured?
☐ No
☑ Yes. The claim is secured by a lien on property.
Nature of property:
☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection:    __deed to secure debt__
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $ __1,300,000.00__
Amount of the claim that is secured:    $ __87,779.93__
Amount of the claim that is unsecured:    $ __0.00__  (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $ _____

Annual Interest Rate (when case was filed) __1.00__ %
☑ Fixed
☐ Variable

10.  Is this claim based on a lease?
☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.    $ _____

11.  Is this claim subject to a right of setoff?
☑ No
☐ Yes. Identify the property: _____

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes, Check one:

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

Amount entitled to priority

$_____

$_____

$_____

$_____

$_____

$_____

---

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  05 / 06 / 2018
                  MM / DD / YYYY

_Edward S Sledge_
Signature

Print the name of the person who is completing and signing this claim:

Name        Edward S. Sledge III
            First name      Middle name        Last name

Title       _____

Company     McDowell Knight Roedder & Sledge, LLC
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     RSA Battle House Tower, 11 North Water St, 13290
            Number      Street

            Mobile                          Al        36602
            City                            State     ZIP Code

Contact phone   251-379-0486          Email  esledge@mcdowellknight.com

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 17-67324 |
| Debtor 1: | David I. Smith |
| Debtor 2: | |
| Last 4 digits to identify: | |
| Creditor: | Edward S. Sledge, III |
| Servicer: | |
| Fixed accrual/daily simple interest/other: | |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | 87,000.00 |
| Interest due: | 779.83 |
| Fees, costs due: | |
| Escrow deficiency for funds advanced: | |
| Less total funds on hand: | – |
| Total debt: | 87,779.83 |

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | 87,779.83 |
| Prepetition fees due: | |
| Escrow deficiency for funds advanced: | |
| Projected escrow shortage: | |
| Less funds on hand: | – |
| Total prepetition arrearage: | 87,779.83 |

Please see Exhibit A attached hereto.

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | |
| Monthly escrow: | |
| Private mortgage insurance: | |
| Total monthly payment: | |

## Part 5 : Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | |

No payments made.

Official Form 410A     Mortgage Proof of Claim Attachment     page 1 of 2

Exhibit A to Proof of Claim of
Edward S. Sledge, III
In re: David L. Smith, Jr., 17-67324

This was a demand note with 1% annual interest rate.  No demand was made;
default occurred with filing of bankruptcy petition.

| Advance Date | Amount Advanced | 1% Per Annum Interest Calculated on 3-12-18 | |
|---|---|---|---|
| 1-20-17 | 10,000.00 | 113.97 | 416 days x 0.0027% = 113.97 |
| 2-15-17 | 13,000.00 | 138.90 | 390 days x 0.0027% = 138.90 |
| 3-17-17 | 5,000.00 | 49.32 | 360 days x 0.0027% = 49.32 |
| 3-30-17 | 8,000.00 | 76.05 | 347 days x 0.0027% = 76.05 |
| 4-20-17 | 13,000.00 | 116.11 | 326 days x 0.0027% = 116.11 |
| 5-17-17 | 13,000.00 | 106.49 | 299 days x 0.0027% = 106.49 |
| 6-9-17 | 10,000.00 | 75.62 | 276 days x 0.0027% = 75.62 |
| 6-12-17 | 8,000.00 | 59.84 | 273 days x 0.0027% = 59.84 |
| 7-28-17 | 7,000.00 | 43.53 | 227 days x 0.0027% = 43.53 |
| | 87,000 | 779.83 | |

GSCCCA.org – Image Index   EXHIBIT "F"   Page 1 of 17

Deed Book 57396 Pg 422
Filed and Recorded Apr-21-2017 12:48pm
2017-0155919
Georgia Intangible Tax Paid 1600.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

Prepared by and Return To:
Robert B. McGinley, Jr.
McDowell Knight Roedder & Sledge, LLC
11 N. Water St., Ste. 13290
Mobile, AL 36602
(251) 432-5300

STATE OF ALABAMA
COUNTY OF MOBILE

### DEED TO SECURE DEBT AND SECURITY AGREEMENT

THIS DEED TO SECURE DEBT AND SECURITY AGREEMENT (hereinafter referred to as this "Deed") made and entered into this 19 day of April, 2017, by and between DAVID LEE SMITH 3795 N Stratford Rd NE, Atlanta, Georgia 30342 (hereinafter referred to as "Grantor"), and EDWARD S. SLEDGE, III 11 North Water Street Suite 13290 Mobile, Alabama 36602 (hereinafter referred to as "Lender"),

### WITNESSETH

In order to secure TWO HUNDRED THOUSAND and NO/100 UNITED STATES DOLLARS ($200,000.00) of a promissory note from Grantor to Lender maturing on March 1, 2037 and in the amount of $200,000.00 (the "Note") and other valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell, convey, assign, transfer and set over unto Lender, and its successors and assigns, and grant a security interest in all of the following described land and interests in land, estates, easements, rights, improvements, property, fixtures, equipment, furniture, furnishings, appliances, and appurtenances (hereinafter collectively referred to as the "Property"):

(a)   All those tracts or parcels of land and easements more particularly described in Exhibit "A" attached hereto and by this reference made a part hereof (hereinafter referred to as the "Land").

(b) All buildings, structures, towers and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, fire extinguishers and any other safety equipment required by governmental regulation or law, washers, dryers, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus and appurtenances, window screens, awnings and storm sashes, which are or shall be owned by Grantor and attached to said buildings, structures or improvements and all other furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles, building supplies and materials, books and records, chattels, inventory, accounts, farm products, consumer goods, general intangibles and personal property of every kind and nature whatsoever now or hereafter owned by Grantor and located in, on or about, or used or intended to

GSCCCA.org – Image Index

Deed Book 57396 Pg   423

be used with or in connection with the use, operation or enjoyment of the Property, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of any of the foregoing, and all the right, title and interest of Grantor in any such furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles and personal property subject to or covered by any prior security agreement, conditional sales contract, chattel mortgage or similar lien or claim, together with the benefit of any deposits or payments now or hereafter made by Grantor on or behalf of Grantor, all trade-names, trademarks, servicemarks, logos and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Property or any part thereof or are now or hereafter acquired by Grantor; and all inventory, accounts, chattel paper, documents, equipment, fixtures, farm products, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described hereinabove, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land and a part of the Property as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Deed. The location of the above-described collateral is also the location of the Land.

(c)    All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, and appurtenances, reversion and reversions, remainder and remainders, whatsoever, in any way belonging, relating or appertaining to the Property or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor.

(d)    All income, rents, issues, profits and revenues of the Property from time to time accruing (including, without limitation, all vendor license payments, payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits whether held by Grantor or in a trust account, and escrow funds), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, or Grantor of, in and to the same; reserving only the right to Grantor to collect the same (other than insurance proceeds and condemnation payments) so long as Grantor is not in Default hereunder.

TO HAVE AND TO HOLD the Property and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of Lender and the successors and assigns of Lender, IN FEE SIMPLE forever; and Grantor covenants that Grantor is lawfully seized and possessed of the Property as aforesaid, and has good right to convey the same, that the same is unencumbered and that Grantor does warrant and will forever defend the title thereto against the claims of all persons whomsoever.

This conveyance is intended to operate and is to be construed as a deed passing the title to the Property to Lender and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt, and not as a mortgage, and is given to secure the following described indebtedness (the "Obligations"):

GSCCCA.org - Image Index

Deed Book 57396 Pg 424

(a)   The debt evidenced by the Note together with any and all renewals, modifications and/or extensions of the indebtedness evidenced by the Note.

(b)   Any and all additional advances made by Lender to protect or preserve the Property or the lien and security title hereof in and to the Property, or for taxes, assessments or insurance premiums as hereinafter provided (whether or not the original Grantor remains the owner of the Property at the time of such advances).

(c)   Any and all other and future indebtedness hereinafter incurred by Grantor to Lender.

Should the Obligations secured by this deed be paid according to the tenor and effect hereof when the same shall become due and payable, and should Grantor perform all covenants herein contained in a timely manner, then this Deed shall be cancelled and surrendered.

Grantor hereby further covenants and agrees with Lender as follows:

## ARTICLE I

1.01   **Payment of Indebtedness.** Grantor will pay the Obligations according to the tenor thereof and all other sums now or hereafter secured hereby promptly as the same shall become due.

1.02   **Taxes, Liens and Other Charges.**

(a)   In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of debts secured by deeds to secure debt or the manner of collecting taxes so as to adversely affect Lender, Grantor will promptly any such tax. If Grantor fails to make such prompt payment or if, in the opinion of the Lender, any such state, federal, municipal, or other governmental law, order, rule or regulation prohibits Grantor from making such payment or would penalize Lender if Grantor makes such payment or if, in the opinion of Lender, the making of such payment might result in the imposition of interest beyond the maximum amount permitted by applicable law, then the entire balance of the principal sum secured by this Deed and all interest accrued thereon shall, at the option of Lender become immediately due and payable.

(b)   Grantor will pay, before the same becomes delinquent, all taxes, liens, assessments and charges of every character including all utility charges, whether public or private, already levied or assessed or that may hereafter be levied or assessed upon or against the Property; and will furnish Lender within thirty (30) days after the final date whereon same can be paid without penalty evidence of the due and punctual payment of all such taxes, assessments and other fees and charges. Nothing contained herein shall require the payment or discharge of any such tax, lien, assessment or charge by Grantor for so long as Grantor shall in good faith and its own expense contest the amount or validity thereof by appropriate legal proceedings and provided such contest shall prevent (i) the collection thereof or other realization thereon and the sale or forfeiture of the Property or any part thereof to satisfy the same and (ii) the enforcement thereof against Grantor or

GSCCCA.org - Image Index

Deed Book 57396 Pg   425

the Property or any part thereof, and provided Grantor first deposits with Lender, in escrow such sums or other security as Lender may reasonably require to assure Lender of the availability of sufficient funds to pay such tax, lien, assessment or charge if and when same is finally determined to be due.

(e)   Grantor will not suffer any mechanic's, materialman's, laborer's, statutory or other lien to be created and to remain outstanding upon all or any part of the Property.

1.03   Insurance:

(a)   Grantor shall procure for, deliver to and maintain for the benefit of Lender during the term of this Deed, insurance policies of insurance companies, in amounts, in form and substance, and with expiration dates acceptable to Lender and containing noncontributory standard mortgagee clauses, their equivalent or a satisfactory mortgagee loss payable endorsement in favor of Lender, providing the following types of insurance on the Property:

(i)   insurance against loss or damage by fire, lightning, vandalism, malicious mischief and flood (if the Land is in an area which is considered a flood risk area by the U. S. Department of Housing and Urban Development), and against such other hazards as are presently included in so-called "all risk replacement cost insurance" and against such other insurable hazards as, under good insurance practices, from time to time are insured against for properties of similar character and location, the amount of which insurance shall be not less than one hundred percent (100%) of the full replacement cost of the Property without deduction for depreciation; and which policies of insurance shall contain satisfactory "agreed amount" endorsements; and

(ii)   rent or business interruption insurance against loss of income arising out of damage or destruction by fire, lightning, vandalism, malicious mischief and flood and such other hazards as are presently included in so-called "all risk replacement cost insurance;" and

(iii)   if applicable, builder's risk insurance on projects under construction.

(b)   Lender is hereby authorized and empowered, at its option, to adjust or compromise any loss under any insurance policies maintained pursuant to this Paragraph 1.03, and to collect and receive the proceeds from any such policy or policies. Each insurance company is hereby authorized and directed to make payment for all such losses directly to Lender, instead of to Grantor and Lender jointly. In the event any insurance company fails to disburse directly and solely to Lender but disburses instead either solely to Grantor or to Grantor and Lender jointly, Grantor agrees immediately to endorse and transfer such proceeds to Lender. Upon the failure of Grantor to endorse and transfer such proceeds as aforesaid, Lender may execute such endorsements or transfers for and in the name of the Grantor and Grantor hereby irrevocably appoints Lender as Grantor's agent and attorney-in-fact so to do. After deducting from said insurance proceeds all of its expenses incurred in the collection and administration of such sums, including attorneys' fees, Lender may apply the net proceeds or any part thereof, at its option, (i) to the payment of the indebtedness hereby secured, whether or not due and in whatever order Lender elects, (ii) to the repair and/or restoration of the Property or (iii) for any other purposes or objects for which Lender is entitled to

GSCCCA.org - Image Index

Deed Book 57396 Pg 426

advance funds under this Deed; all without affecting the lien of this Deed. Lender shall not be held responsible for any failure to collect any insurance proceeds due under the terms of any policy regardless of the cause of such failure.

1.04 Condemnation. In the event there hereafter occurs a condemnation (which term when used in this Deed shall include any damage or taking by any governmental authority or other entity having the power of eminent domain, and any transfer by private sale in lieu thereof), resulting in any damage or taking, either temporarily or permanently, of (i) the entire Property, (ii) any portion of any building now or hereafter erected on the Land, (iii) so much of the Property as causes the remainder of the Property to be in violation of any zoning laws, restrictive covenants or similar laws, regulations or restrictions affecting the Property, or (iv) so much of the Property as, in the opinion of the Lender, renders the remainder of the Property materially less useful or valuable then, and in any one of said events, the entire indebtedness secured hereby shall, at the option of the Lender, become immediately due and payable. Lender shall be entitled to receive all compensation, awards and other payments or relief thereof to the full extent of the indebtedness then secured hereby. Lender is hereby authorized, at is option, to commence, appear in and prosecute, in its own or in Grantor's name, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith. All such compensation, awards, damages, claims, rights of action and proceeds, and the right thereto, are hereby assigned by Grantor to Lender. After deducting from said condemnation proceeds all of its expenses incurred in the collection and administration of such sums, including attorney's fees, Lender may apply the net proceeds or any part thereof, at its option, (a) to the payment of the indebtedness hereby secured, whether or not due or in whatever order Lender elects, (b) to the repair and/or restoration of the Property of (c) for any other purposes or objects for which Lender is entitled to advance funds under this Deed, all without affecting the lien of this Deed; and any balance of such monies then remaining shall be paid to Grantor.

1.05    Care, Use And Management of Property.

(a)    Grantor will keep the buildings, parking areas, roads and walkways, recreational facilities, landscaping and all other improvements of any kind now or hereafter erected on the Land or any part thereof in good condition and repair, will not commit or suffer any waste and will not do or suffer to be done anything which will increase the risk of fire or other hazard to the Property of any part thereof.

(b)    Grantor will not remove or demolish nor alter the structural character of any building located on the Land without the written consent of Lender.

(c)    If the Property or any part thereof is damaged by fire or any other cause, Grantor will give immediate written notice thereof to Lender.

(d)    Lender or its representative is hereby authorized to enter upon and inspect the Property at any time during normal business hours.

(e)Grantor will promptly comply with all present and future laws, ordinances, rules and regulations of any governmental authority (including, but not limited to, all environmental and

GSCCCA.org - Image Index

Deed Book 57396 Pg 427

ecological laws and regulations) affecting the Property or any part thereof. Provided, however, nothing contained herein shall require compliance with such laws, ordinances, rules or regulations by Grantor for so long as Grantor shall in good faith and at its own expense contest the validity thereof by appropriate legal proceedings.

(f)    If all or any part of the Property shall be damaged by fire or other casualty, Grantor will promptly restore the Property to the equivalent of its original condition; and if a part of the Property shall be damaged through condemnation, Grantor will promptly restore, repair or alter the remaining portions of the Property in a manner satisfactory to Lender. Notwithstanding the foregoing, Grantor shall not be obligated to so restore unless in each instance, Lender agrees to make available to Grantor (pursuant to a procedure satisfactory to Lender) any net insurance or condemnation proceeds actually received by Lender hereunder in connection with such casualty loss or condemnation, to the extent such proceeds are required to defray the expense of such restoration; provided, however, that the insufficiency of any such insurance or condemnation proceeds to defray the entire expense of restoration shall in no way relieve Grantor of its obligation to restore. In the event all or any portion of the Property shall be damaged or destroyed by fire or other casualty or by condemnation, Grantor shall promptly deposit with Lender a sum equal to the amount by which the estimated cost of the restoration of the Property (as determined by Lender in its good faith judgment) exceeds the actual net insurance or condemnation proceeds received by Lender in connection with such damage or destruction, which deposit will be disbursed by Lender to Grantor to defray the expense of restoration.

(g)    Grantor shall at all times perform all agreements, undertakings and functions necessary to operate the Property in a first-class manner. Grantor shall not be permitted to alter or change the use of the Property or to abandon the Property without the prior written consent of Lender.

1.06    Leases and Other Agreements Affecting Property.    Grantor will duly and punctually perform all terms, covenants, conditions and agreements binding upon it under any lease or any other agreement of any nature whatsoever which involves or affects the Property or any part thereof. Grantor will, at the request of Lender, furnish Lender with executed copies of all leases now or hereafter created upon the Property or any part thereof. Any leases hereafter entered into by Grantor for any portion of the Property must be first submitted to and approved by Lender. Upon the request of Lender, Grantor will provide Lender with a specific assignment of any such leases, in form and content satisfactory to Lender. All such leases must be subordinate to the lien of this Deed unless Lender otherwise specifies in which case such specific leases shall be made superior to the lien of this Deed. Lender shall also be entitled to require that certain leases be made superior to this Deed but that certain provisions of such superior leases be made subject to this Deed. Lender shall also be entitled to require, and Grantor shall use its best efforts to obtain, the execution of non-disturbance and attornment agreements from any tenants specified by Lender. Any form lease hereafter used by Grantor shall be first submitted to and approved by Lender. Grantor hereby authorizes and directs each present and future tenant of the Property to pay to Lender all rents and any other sums due Grantor as landlord and to perform for the direct benefit of Lender any other obligations of such tenant to Grantor as landlord, as if Lender were the landlord under such tenant's lease, immediately upon receipt of a written demand by Lender to make such payment or perform such obligation. No such demand by Lender shall constitute or be deemed to constitute any

Deed Book 57396 Pg   428

assumption by Lender of any obligations of the landlord under such tenant's lease. Subject only to compliance by Lender with the provisions of Paragraph 2.01, no such demand by Lender shall constitute or be deemed to constitute any wrongful interference by Lender in the affairs or business relationships of Grantor or otherwise give rise to any right, claim or action by Grantor against Lender. No tenant shall be responsible for ascertaining whether any such demand by Lender is authorized or whether a default by Grantor has occurred under this Deed. Grantor hereby waives any right, claim or action Grantor may now or hereafter have against any such tenant by reason of such tenant's payment to or performance for Lender as described above, and any such payment to or performance for Lender shall discharge the obligation of such tenant to make such payment to, or perform such obligation for, Grantor.

1.07    Further Assurances; After-Acquired Property.    At any time, and from time to time, upon request by Lender, Grantor will make, execute and deliver or cause to be made, executed and delivered, to Lender and, where appropriate, cause to be recorded and/or filed and from time to time thereafter to be rerecorded and/or re-filed at such time and in such offices and places as shall be deemed desirable by Lender, any and all such other and further deeds to secure debt, security agreements, financing statements, continuation statements, instruments of further assurance, certificates and other documents as may, in the opinion of Lender, be necessary or desirable in order to effectuate, complete, or perfect, or to continue and preserve (a) the obligation of Grantor under the Note and under this Deed and (b) the lien of this Deed as a first and prior lien upon and security title in and to all of the Property, whether now owned or hereafter acquired by Grantor. Upon any failure by Grantor so to do, Lender may make, execute, record, file, rerecord and/or re-file any and all such deeds to secure debt, security agreements, financing statements, continuation statements, instruments, certificates, and documents for and in the name of Grantor and Grantor hereby irrevocably appoints Lender the agent and attorney-in-fact of Grantor so to do. The lien hereof will automatically attach, without further act, to all after acquired property attached to and/or used in the operation of the Property or any part thereof.

1.08    Expenses.    Grantor will pay or reimburse Lender, upon demand therefor, for all attorney's fees, costs and expenses incurred by Lender in any suit, action, legal proceeding or dispute of any kind in which Lender is made a party or appears as party plaintiff or defendant, affecting or arising in connection with the indebtedness secured hereby, this Deed or the interest created herein, or the Property, including, but not limited to, the exercise of the power of sale contained in this Deed, any condemnation action involving the Property or any action to protect the security hereof and any such amounts paid by Lender shall be added to the indebtedness secured by the lien of this Deed.

1.9    Estoppel Affidavits.    Grantor, upon ten (10) days prior written notice, shall furnish Lender a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and whether or not any offsets or defenses exist against such principal and interest.  Lender, upon ten (10) days prior written notice, shall furnish Grantor a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and the date on which the last payment under the Note was received.

1.10    Subrogation.    Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the indebtedness secured hereby.

GSCCCA.org - Image Index

Deed Book 57396 Pg  429

**1.11  Books, Records, Accounts and Annual Reports.** Grantor will keep and maintain or will cause to be kept and maintained proper and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Property or in connection with any services, equipment or furnishings provided in connection with the operation of the Property. Lender shall have the right from time to time at all times during normal business hours to examine such books, records and accounts at the office of Grantor or such other person or entity maintaining such books, records and accounts and to make copies or extracts thereof as Lender shall desire.

**1.12  Limit of Validity.** If from any circumstances whatsoever fulfillment of any provision of this Deed or of the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then *ipso facto* the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Deed or under the Note that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity.  The provisions of this Paragraph 1.13 shall control every other provision of this Deed and of the Note.

**1.13  Changes in Ownership.** Grantor hereby acknowledges to Lender that (a) the identity and expertise of Grantor were and continue to be material circumstances upon which Lender has relied in connection with, and which constitute valuable consideration to Lender for, the extending to Grantor of the loan evidenced by the Note and (b) any change in such identity or expertise could materially impair or jeopardize the security for the loan granted to Lender by this Deed.  Grantor therefore covenants and agrees with Lender, as part of the consideration for the extending to Grantor of the loan evidenced by the Note, that Grantor shall not, without the prior written consent of Lender, (i) convey, transfer, assign, further encumber or pledge the Property, or all or any part of Grantor's legal, beneficial or other interest in the Property nor (ii) permit any transfers of interests in Grantor, except as otherwise expressly permitted herein.

## ARTICLE 2

**2.01  Events of Default.** The terms "Default", "Event of Default" or "Events of Default", wherever used in this Deed, shall mean any one or more of the following events:

(a)    Failure by Grantor to pay as and when due and payable any installment of principal or interest as required by the Obligations or by this Deed; or

(b)    Failure by Grantor to duly observe or perform any other term, covenant, condition or agreement of this Deed; or

(c)    Failure by Grantor to duly observe or perform any term, covenant, condition or agreement, or an occurrence of an event of default, in the Note, or in any related loan documents, including, without limitation, that certain Loan Agreement entered into between the parties on the date hereof; or

Deed Book 57396 Pg    430

(d)    Failure by Grantor to duly observe or perform any term, covenant, condition or agreement in any assignment of lease (e) or any other agreement given or made as additional security for the performance of the Obligations or this Deed; or

(e)    Any warranty of Grantor contained in this Deed or in any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, proves to be untrue or misleading in any material respect; or

(f)    The filing by Grantor of a voluntary petition in bankruptcy or the filing by Grantor of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or borrower's seeking or consenting to or acquiescing in the appointment of any trustee, receiver or liquidator of Grantor or of all or any substantial part of the Property or of any or all of the rents, issues, profits or revenues thereof, or the making by Grantor of any general assignment for the benefit of creditors, or the admission in writing by Grantor of his inability to pay its debts generally as they become due; or

(g)    The entry by a court of competent jurisdiction of an order, judgment or decree approving a petition filed against Grantor seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, which order, judgment or decree remains un-vacated and un-stayed for an aggregate of ninety (90) days (whether or not consecutive) from the date of entry thereof, or the appointment of any trustee, receiver or liquidator of Grantor or of all or any substantial part of the Property or of any or all of the rents, issues, profits or revenues thereof without the consent or acquiescence of Grantor, which appointment shall remain un-vacated and un-stayed for an aggregate of ninety (90) days (whether or not consecutive).

Notwithstanding the foregoing, Grantor shall not be deemed to be in Default (except for purposes of late charges and default interest as provided in the Note and for certain other proposes as provided below) under the foregoing subparagraph (a) unless and until Grantor shall have failed to cure such Default within the five (5) days after the due date for such payment as required by the Note or this Deed; and Grantor shall not be deemed to be in Default under the foregoing subparagraphs (b), (c) and (d) unless and until Grantor shall have failed to cure such Default within thirty (30) days (or such longer period, if any, as is reasonably required, but not to exceed 90 days in any event, provided Grantor promptly commences and diligently pursues such cure) after receipt by Grantor of written notice from Lender of such Default; provided, however, immediately upon the occurrence of any event described in the foregoing subparagraphs (a) through (f), and without regard to any time periods or opportunities to cure described in this paragraph, Lender may make written demand upon any and all tenants of the Property to pay to Lender all rents and other sums and to perform for the direct benefit of Lender all obligations of such tenants, as provided in Paragraph 1.07.

2.02    Acceleration of Maturity. If an Event of Default shall have occurred and be continuing, then the entire indebtedness secured hereby shall, at the option of Lender, immediately become due and payable without notice or demand, time being of the essence of this Deed; and no

GSCCCA.org - Image Index

Deed Book 57396 Pg   431

omission on the part of Lender to exercise such option when entitled to do so shall be construed as a waiver of such right.

2.03    Lender's Right to Enter and Take Possession, Operate and Apply Revenues.

(a)    If an Event of Default shall have occurred and be continuing, Grantor upon demand of Lender, shall forthwith surrender to Lender the actual possession of the Property and if, and to the extent, permitted by law, Lender itself, or by such officers or agents as it may appoint, may enter and take possession of all the Property without the appointment of a receiver, or an application therefor, and may exclude Grantor and its agents and employees wholly therefrom, and may have joint access with Grantor to the books, papers and accounts of Grantor.

(b)    If Grantor shall for any reason fail to surrender or deliver the Property or any part thereof after such demand by Lender, Lender may obtain a judgment or decree conferring upon Lender the right to immediate possession or requiring Grantor to deliver immediate possession of the Property to Lender.  Grantor will pay to Lender, upon demand, all expenses of obtaining such judgment or decree, including reasonable compensation to Lender, its attorneys and agents; and all such expenses and compensation shall, until paid, be secured by the lien of this Deed.

(c)    Upon every such entering upon or taking of possession, Lender may hold, store, use, operate, manage and control the Property and conduct the business thereof, and, from time to time (i) make all necessary and proper maintenance, repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and purchase or otherwise acquire additional fixtures, personalty and other property; (ii) insure or keep the Property insured; (iii) manage and operate the Property and exercise all the rights and powers of Grantor to the same extent as Grantor could in its own name or otherwise with respect to the same; and (iv) enter into any and all agreements with respect to the exercise of others of any of the powers herein granted Lender, all as Lender from time to time may determine to be in its best interest. Lender may collect and receive all the rents, issues, profits and revenues from the Property, including those past due as well as those accruing thereafter, and, after deducting (aa) all expenses of taking, holding , managing and operating the Property (including compensation for the services of all persons employed for such purposes); (bb) the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases and acquisitions; (cc) the cost of such insurance; (dd) such taxes, assessments and other similar charges as Lender may at its option pay; (ee) other proper charges upon the Property or any part thereof and (ff) the reasonable compensation, expenses and disbursements of the attorneys and agents of Lender, Lender shall apply the remainder of the monies and proceeds so received by Lender, first to the payment of accrued interest; and second to the payment of overdue installments of principal. Lender shall have no obligation to discharge any duties of a landlord to any tenant or to incur any liability as a result of any exercise by Lender of any rights under this Deed or otherwise. Lender shall not be liable for any failure to collect rents, issues, profits and revenues from the Property, nor shall Lender be liable to account for any such rents, issues, profits or revenues unless actually received by Lender.

(d)    Whenever all that is due upon such interest, deposits and principal installments and under any of the terms, covenants, conditions and agreements of this Deed, shall have been paid and all Events of Default made good, Lender shall surrender possession of the Property to Grantor, its

GSCCCA.org – Image Index

Deed Book 57396 Pg    432

successors or assigns. The same right of taking possession, however, shall exist if any subsequent Event of Default shall occur and be continuing.

2.04    **Performance by Lender of Defaults by Grantor.**  If Grantor shall Default in the payment, performance or observance of any term, covenant or condition of this Deed, Lender may, so long as such Default continues, at its option, pay, perform or observe the same, and all payments made or costs or expenses incurred by Lender in connection therewith, shall be secured hereby and shall be, without demand, immediately repaid by Grantor to Lender with interest thereon at the default rate provided in the Note. Lender shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Lender is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without thereby becoming liable to Grantor or any person in possession holding under Grantor.

2.05    **Receiver.**  If an Event of Default shall have occurred and be continuing, Lender, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right without notice and without regard to the occupancy or value of any security for the indebtedness secured hereby or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Property and to collect and apply the rents, issues, profits and revenues thereof. The receiver shall have all of the rights and powers permitted under the laws of the State of Georgia. Grantor will pay to Lender upon demand all expenses, including receiver's fees, attorney's fees, costs and agent's compensation, incurred pursuant to the provisions of this Paragraph 2.05; and all such expenses shall be secured by this Deed.

2.06    **Enforcement.**

(a)    If an Event of Default shall have occurred and be continuing, Lender, at its option, may sell the Property or any part of the Property at public sale or sales before the door of the courthouse of the county in which the Property or any part of the Property is situated, to the highest bidder for cash, in order to pay the indebtedness secured hereby and accrued interest thereon and insurance premiums, liens, assessments, taxes and charges, including utility charges, if any, with accrued interest thereon, and all expenses of the sale and of all proceedings in connection therewith, including reasonable attorney's fees, if incurred, after advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which sheriff's sales are advertised in said county. At any such public sale, Lender may execute and deliver to the purchaser a conveyance of the Property or any part of the Property in fee simple, with full warranties of title and to this end, Grantor hereby constitutes and appoints Lender the agent and attorney-in-fact of Grantor to make such sale and conveyance, and thereby to divest Grantor of all right, title or equity that Grantor may have in and to the Property and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Grantor. The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, are granted as cumulative of the other remedies provided hereby or by law for collection of the indebtednesses secured hereby and shall not be exhausted by one exercise thereof but may be exercised until full payment of all indebtednesses secured hereby.

GSCCCA.org - Image Index

Deed Book 57396 Pg   433

(b)   If an Event of Default shall have occurred and be continuing, Lender may, in addition to and not in abrogation of the rights covered under subparagraph (a) of this Paragraph 2.06, either with or without entry or taking possession as herein provided or otherwise, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note or the performance of any term, covenant, condition or agreement of this Deed or any other right, and (ii) to pursue any other remedy available to it, all as Lender shall determine most effectual for such purposes.

2.07   Purchase by Lender.   Upon any foreclosure sale, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the indebtedness secured hereby as a credit to the purchase price.

2.08   Application of Proceeds of Sale.   In the event of a foreclosure sale of the Property, the proceeds of said sale shall be applied, first, to the expense of such sale and of all proceedings in connection therewith, including attorney's and trustee's fees, then to insurance premiums, liens, assessments, taxes and charges including utility charges advanced by Lender, then to payment of the outstanding principal balance of the indebtedness secured hereby, then to the accrued interest on all of the foregoing; and finally the remainder, if any, shall be paid to Grantor.

2.09   Grantor as Tenant Holding Over.   In the event of any such foreclosure sale by Lender, Grantor shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over.

2.10   Waiver of Appraisement, Valuation, Stay, Extension and Redemption Laws.
Grantor agrees to the full extent permitted by law, that in case of a Default on the part of Grantor hereunder, neither Grantor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, extension, homestead, exemption or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Deed, or the absolute sale of the Property, or the final and absolute putting into possession thereof, immediately after such sale, of the purchasers thereof, and Grantor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets comprised in the security intended to be created hereby marshaled upon any foreclosure of the lien hereof. Without limiting the generality of the foregoing, Grantor agrees that, in the event of the filing of any voluntary or involuntary petition in bankruptcy by or against Grantor, (i) Grantor shall not assert, and shall not request or cause any other party to assert, that the automatic stay provided by Section 362 of the Bankruptcy Code shall operate or be interpreted to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights Lender has by reason of this Deed, the Note or any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, or any other rights Lender may have, whether now existing or hereafter acquired, against Grantor, or against any collateral (including, without limitation, the Property) owned by Grantor; (ii) Grantor consents to, and Grantor shall not directly or indirectly contest, oppose, object to or otherwise defend against, Lender's efforts to gain relief from the automatic stay imposed under Section 362 of the Bankruptcy Code, and Grantor hereby

GSCCCA.org - Image Index

Page 13 of 17

Deed Book 57396 Pg   434

waives all right to so contest, oppose, object or otherwise defend; (iii) Grantor agrees that Lender shall be entitled to the lifting of such automatic stay without the necessity or requirement of establishing or proving the value of the Property, the lack of adequate protection of Lender's interest in the Property or the lack of Grantor's equity in the Property; and (iv) Grantor shall not seek a supplemental stay or any other relief, whether injunctive or otherwise, pursuant to Section 105 of the Bankruptcy Code, or any other provision of the Bankruptcy Code, or otherwise, to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights Lender has by reason of this Deed, the Note or any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, or any other rights Lender may have, whether now existing or hereafter acquired, against Grantor, or against any collateral (including, without limitation, the Property) owned by Grantor.

2.11   Leases. Lender, at its option, is authorized to foreclose this Deed subject to the rights of any tenants of the Property, and the failure to make any such tenants parties to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be by Grantor, a defense to any proceedings instituted by Lender to collect the sums secured hereby.

2.12   Discontinuance of Proceedings and Restoration of the Parties.   In case Lender shall have proceeded to enforce any right, power or remedy under this Deed by foreclosure, entry or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then and in every such case Grantor and Lender shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of Lender shall continue as if no such proceeding had been taken.

2.13   Remedies Cumulative. Subject to Paragraph 2.18 hereof, no right, power or remedy conferred upon or reserved to Lender by this Deed is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

2.14   Waiver.

(a)   No delay or omission of Lender or of any holder of the Note to exercise any right, power or remedy accruing upon any Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such Default to acquiescence therein; and every right, power and remedy given by this Deed to Lender may be exercised from time to time as often as may be deemed expedient by Lender. No consent or waiver, expressed or implied, by Lender to or of any breach or Default by Grantor in the performance of the obligations thereof hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or Default in the performance of the same or any other obligations of Grantor hereunder. Failure on the part of Lender to complain of any act or failure to act or to declare any Event of Default, irrespective of how long such failure continues, shall not constitute a waiver by Lender of its rights hereunder or impair any rights, powers or remedies consequent on any breach or Default by Grantor.

(b)   If Lender (i) grants forbearance or an extension of time for the payment of any sums secured hereby; (ii) takes other or additional security for the payment of any sums secured

Deed Book 57396 Pg 435

hereby; (iii) waives or does not exercise any right granted herein or in the Note; (iv) releases any part of the Property from the lien of this Deed or otherwise changes any of the terms, covenants, conditions or agreements of the Note or this Deed; (v) consents to the filing of any map, plat or replat affecting the Property; (vi) consents to the granting of any easement or other right affecting the Property; or (vii) makes or consents to any agreement subordinating the lien hereof, any such act or omission shall not release, discharge, modify, change or affect the original liability under the Note, this Deed or any other obligation of Grantor or any subsequent purchaser of the Property or any part thereof, or any maker, co-signer, endorser, surety or guarantor; nor shall any such act or omission preclude Lender from exercising any right, power or privilege herein granted or intended to be granted in the event of any Default then made or of any subsequent Default; nor except as otherwise expressly provided in an instrument or instruments executed by Lender, shall the lien of this Deed be altered thereby. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Property, Lender, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Property or the indebtedness secured hereby, or with reference to any of the terms, covenants, conditions or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any liabilities, obligations or undertakings.

    2.15   Suits to Protect the Property.  Lender shall have power (a) to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Property by any acts which may be unlawful or in violation of this Deed, (b) to preserve or protect its interest in the Property and in the rents, issues, profits and revenues arising therefrom, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Lender.

    2.16   Lender May File Proofs of Claim.  In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Grantor, its creditors or its property, Lender, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Lender allowed in such proceedings for the entire amount due and payable by Grantor under this Deed at the date of the institution of such proceedings and for any additional amount which may become due and payable by Grantor hereunder after such date.

    2.17   WAIVER OF BORROWER'S RIGHTS.  BY EXECUTION OF THIS DEED AND BY INITIALING THIS PARAGRAPH 2.17, BORROWER EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY BORROWER WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED; (B) WAIVES ANY AND ALL RIGHTS WHICH BORROWER MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES (INCLUDING, WITHOUT LIMITATION, THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS FOR THE SEVERAL STATES, OR

GSCCCA.org - Image Index

Deed Book 57396 Pg    436

BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THIS DEED; (C) ACKNOWLEDGES THAT BORROWER HAS READ THIS DEED AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF THIS DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO BORROWER AND BORROWER HAS CONSULTED WITH COUNSEL OF BORROWER'S CHOICE PRIOR TO EXECUTING THIS DEED; AND (D) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OR BORROWER HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY BORROWER AS PART OF A BARGAINED FOR LOAN TRANSACTION.

2.18    Claims Against Lender.    No action at law or in equity shall be commenced, or allegation made, or defense raised, by Grantor against Lender for any claim under or related to this Deed, the Note or any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, or related to the conduct of the parties thereunder, unless written notice of such claim, expressly setting forth the particulars of the claim alleged by Grantor, shall have been given to Lender within sixty (60) days from and after the initial awareness of Grantor of the event, omission or circumstance forming the basis of Grantor for such claim. Any failure by Grantor to timely provide such written notice to Lender shall constitute a waiver by Grantor of such claim.

## ARTICLE 3

3.01    Successors and Assigns.    This Deed shall inure to the benefit of and be binding upon Grantor and Lender and their respective successors and assigns. Whenever a reference is made in this Deed to Grantor or Lender such reference shall be deemed to include a reference to the successors and assigns of Grantor or Lender.

3.02    Terminology.    All personal pronouns used in this Deed whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural, and vice versa. Titles and Articles are for convenience only and neither limit nor amplify the provisions of this Deed itself, and all references herein to Articles, Paragraphs, or subparagraphs thereof, shall refer to the corresponding Articles, Paragraphs or subparagraphs thereof, of this Deed unless specific reference is made to such Articles, Paragraphs or subparagraphs thereof of another document or instrument.

3.03    Severability.    If any provision of this Deed or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Deed and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

3.04    Applicable Law.    This Deed shall be interpreted, construed and enforced according to the laws of the State of Georgia.

Deed Book 57396 Pg 437

3.05  <u>Notices, Demands and Requests.</u>  All notices, demands or requests provided for or permitted to be given pursuant to this Deed must be in writing and shall be deemed to have been properly given or served by depositing in the United States Mail, postpaid and registered or certified return receipt requested, and addressed to the addressees hereinafter set forth. All notices, demands and requests shall be effective upon being deposited in the United States Mail. However, the time period in which a response to any notice, demand or request must be given, if any, shall commence to run from the date of receipt of the notice, demand or request by the addressee thereof. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to be receipt of the notice, demand or request sent. By giving at least thirty (30) days written notice thereof, Grantor or Lender shall have the right from time to time and at any time during the term of this Deed to change their respective addresses and each shall have the right to specify as its address any other address within the United States of America.

For the purposes of this Deed, the address of the Grantor is as set forth on the first page hereof.

For the purposes of this Deed, the address of the Lender is as set forth on the first page hereof.

SIGNATURE PAGE TO FOLLOW

GSCCCA.org - Image Index

Deed Book 57396 Pg   438

IN WITNESS WHEREOF, Grantor has executed this Deed under seal, as of the day and
year first above written.

GRANTOR:

_David Lee Smith_
DAVID LEE SMITH

_Michelle Lopez_
Unofficial Witness

Notary Public,

My Commission expires: 8/25/20

SIGNATURE PAGE TO GEORGIA DEED TO SECURE DEBT

Deed Book 57396 Pg  439
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

EXHIBIT A
LEGAL DESCRIPTION

Property Address:    3795 North Stratford Road
Atlanta, Georgia 30342

All that tract or parcel of land lying and being in Land Lot 44 of the 17th District, Fulton County,
Georgia and being more particularly described as follows:

BEGINNING on the East side of North Stratford Road at a point seven hundred eighty-nine and three-
tenths (789.3) feet North of the Northeast intersection of Old Ivy Road and North Stratford Road; run
thence North along the East of North Stratford Road fifty four (54) feet to a point; run thence East three
hundred (300) feet to a point; run thence South fifty four (54) feet to a point; run thence West three
hundred (300) feet to the East side of North Stratford Road and the POINT OF BEGINNING, which
currently has the address of 3795 North Stratford Road, Atlanta, Georgia.

## LINE OF CREDIT PROMISSORY NOTE

$200,000.00                                                        APRIL *19*, 2017

      **FOR VALUE RECEIVED**, the undersigned **DAVID LEE SMITH** (the "Borrower"), hereby promises to pay to the order of **EDWARD S. SLEDGE, III** ("Sledge"; Sledge and any subsequent holder hereof, as applicable, are referred to herein as the "Holder"), without grace at such place as Holder may direct, in lawful money of the United States of America, the principal amount of **TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($200,000.00)** or so much thereof as heretofore advanced and is advanced hereunder, with interest at the rate and calculated in the manner described herein. Future advances shall be at the option of Holder. Payment of principal and interest shall be in accordance with the following provisions:

      **1.**    **Payment.** The balance of the principal and all accrued and unpaid interest on this Note and all charges hereunder and under the Mortgage (defined herein) shall be due and payable ON DEMAND (the "Maturity Date").

      **2.**    **Interest; Late Charges; Commitment Fee.** Interest from the date hereof until the Maturity Date shall accrue at the rate of one 5percent per annum. Interest on all principal amounts outstanding from time to time hereunder shall be calculated on the basis of a 360-day year applied to the actual number of days upon which principal is outstanding, by multiplying the product of the principal amount and the applicable rate set forth herein by the actual number of days elapsed, and dividing by 360.

      **3.**    **Security.** The indebtedness evidenced hereby is secured by, among other things, real property located in Fulton County, Georgia, and described in that certain Deed to Secure Debt and Security Agreement ("Mortgage") from Borrower to Sledge.

      **4.**    **Event of Default.** The happening of any one or more of the following events shall constitute an "Event of Default" hereunder:

          (a)    Failure to make a payment of the principal of or interest on this Note within ten (10) days of the date on which the same becomes due and payable;

          (b)    The occurrence of any Event of Default specified in the Mortgage or in any other instrument executed in connection with or securing this Note, and the Borrower's failure to cure the same within any applicable cure period specifically provided therein;

          (c)    The failure by the Borrower, the Mortgage, or in any other instrument executed in connection with or securing this Note and the failure to cure the same within any applicable cure period specifically provided therein.

Upon the occurrence of an Event of Default, or at any time thereafter during the continuance of any such Event of Default, the Holder may, with or without notice to the Borrower, declare this Note to be forthwith due and payable, whereupon this Note and the indebtedness evidenced

hereby shall forthwith be due and payable, both as to principal and interest, without presentment, demand, protest, or other notice of any kind, all of which are hereby expressly waived, anything contained herein or in the Mortgage or in any other instrument executed in connection with or securing this Note to the contrary notwithstanding.

     **5.**    **Waivers.**  Borrower and any endorser or guarantor of this Note hereby waive demand, presentment for payment, notice of dishonor, protest, and notice of protest and diligence in collection or bringing suit and agree that the Holder hereof may accept partial payment, or release or exchange security or collateral, without discharging or releasing any unreleased collateral or the obligations evidenced hereby. Borrower and each such endorser and guarantor further waive any and all rights of exemption, both as to personal and real property, under the Constitution or laws of the United States, the State of Alabama or any other state.  No failure of any Holder of this Note to accelerate the indebtedness evidenced hereby or to exercise any other right hereunder shall be construed as a novation or modification of this Note or a waiver of the Holder's right to thereafter insist upon strict compliance with the terms of this Note without prior notice of such intention being given to the Borrower.

     **6.**    **Attorney Fees.**  Borrower and each endorser or guarantor of this Note agree to pay reasonable actual attorneys' fees and costs incurred by the Holder hereof in collecting or attempting to collect this Note, whether by suit or otherwise.

     **7.**    **Applicable Law; Parties; Under Seal.**  This Note is being delivered to, and accepted by, Holder in the State of Alabama, and this Note shall be governed by the laws of the State of Alabama.  It is intended, and the Borrower and Holder specifically agree, that the laws of the State of Alabama governing interest shall apply to this Note and to this transaction. As used herein, the terms "Borrower" and "Holder" shall be deemed to include their respective successors and assigns, whether by voluntary action of the parties or by operation of law. This Note is given under the seal of Borrower, and it is intended that this Note is and shall constitute and have the effect of a sealed instrument according to law.

SIGNATURE PAGE TO FOLLOW

**IN WITNESS WHEREOF,** Borrower has delivered this Note the *17* day of April, 2017 (regardless of the date executed).

**BORROWER:**

WITNESS:

_Michelle Lopez_

_(signature)_

David Lee Smith, individually

STATE OF GEORGIA:
COUNTY OF FULTON:

I, the undersigned Notary Public, in and for said County in said State, hereby certify that **David Lee Smith** is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same voluntarily.

Given under my official hand and seal this *19th* day of April 2017

(AFFIX NOTARIAL SEAL)

_(signature)_

NOTARY PUBLIC
My Commission Expires: *8/23/20*

BRITTANY EVERETTE
NOTARY
MY COMMISSION EXPIRES
8/23/2020
PUBLIC
COBB COUNTY GEORGIA

SIGNATURE PAGE TO LINE OF CREDIT PROMISSORY NOTE

EXHIBIT 1

Fulton County Superior Court
***EFILED***LS
Date: 9/5/2017 1:50:38 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| BRITTON McLEOD, D. HAYDEN SMITH, | ) | |
| Plaintiffs, | ) | Civil Action File |
| v. | ) | No. 2015CV2605502 |
| | ) | |
| DAVID L. SMITH, JR., RESIDENTIAL SOUTH PARTNERS, LLC., RSP I, LLC, RSP ARDEN WAY, LLC, FS RE PARTNERS, LLC, SPRINGLAKE RESIDENTIAL, LLC, 2050 SPRINGLAKE LLC, SPRINGLAKE-LOT 5, LLC, JOHN DOE(S) 1-9, CAMBPELL & BRANNON, LLC, | ) ) ) ) ) ) ) ) | |
| Defendants | ) | |

## **REPORT OF SPECIAL MASTER**

Pursuant to the Order of this Court, the undersigned Special Master reviewed the discovery dispute between the parties. The undersigned reviewed pleadings, court orders, discovery requests, objections and responses, deposition transcripts, written submissions by both parties, and held a hearing with the attorneys for both parties.

The parties cooperated and resolved a number of disputes, including the plaintiffs not seeking further responses to some requests and the defendant agreeing to provide written responses and produce documents responsive to plaintiffs' interrogatories numbers 3, 12 -27, 39 – 43 and 48 and request for production of documents numbers 11 – 13, 17, 19, 27 – 30, and 43 - 45.

*Britton McLeod, et al v. David Smith, et al. - Civil Action File No. 2015CV260502*
*Special Master Report*



The undersigned issued a ruling that required Defendant Smith to provide written responses to plaintiffs' interrogatories numbers 7, 8, 28 – 31 and to produce documents responsive to plaintiffs' request for production of documents numbers 5, 9, 35, 36, and 46.

Discovery in this matter expired on September 1, 2017 pursuant to the Court's End of Discovery Scheduling Order of July 3, 2017. For a number of reasons, this deadline has not been met. Defendants have new counsel who needed time to learn the file, there were scheduling issues (including the Special Master being out of the country) and medical emergencies being dealt with by counsel for Defendants. As a result, the undersigned recommends the following schedule for the remaining discovery:

Defendant to serve supplemental, verified responses to the above stated interrogatories and to produce the responsive documents to Plaintiffs' attorneys' office no later than 5:00 pm on September 11, 2017.

The depositions of the parties will be conducted the week of September 18, 2017.

Discovery will close on September 29, 2017.

The undersigned has provided his ruling on the discovery disputes and his recommendation on the discovery deadlines to the parties in advance of this report. The undersigned is also available to the parties if there are further disputes concerning the supplemental responses and document production or issues that arise concerning the depositions.

This 5th day of September 2017.

/s/ Leigh M. Wilco
Leigh M. Wilco, Special Master

*Britton McLeod, et al v. David Smith, et al. - Civil Action File No. 2015CV260502*
*Special Master Report*

# EXHIBIT "J"

Fulton County Superior Court
***EFILED***LW
Date: 9/26/2017 4:30:51 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| BRITTON McLEOD, D. HAYDEN SMITH, | ) | |
| Plaintiffs, | ) | Civil Action File |
| v. | ) | No. 2015CV260502 |
| | ) | |
| DAVID L. SMITH, JR., RESIDENTIAL | ) | |
| SOUTH PARTNERS, LLC., RSP I, LLC, | ) | |
| RSP ARDEN WAY, LLC, FS RE | ) | |
| PARTNERS, LLC, SPRINGLAKE | ) | |
| RESIDENTIAL, LLC, 2050 SPRINGLAKE | ) | |
| LLC, SPRINGLAKE-LOT 5, LLC, JOHN | ) | |
| DOE(S) 1-9, CAMBPELL & BRANNON, | ) | |
| LLC, | ) | |
| Defendants | ) | |

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS OF SPECIAL MASTER

This report is a supplement to the Special Master Report dated September 5, 2017, previously filed with the Court. This matter was referred to the undersigned Special Master by the Court because of continued discovery disputes between the parties (this report will refer to "both parties" meaning Plaintiffs and all of the Defendants; it will also refer to "the Defendant" meaning David L. Smith, Jr. since the discovery requests in question were just addressed to him). The Special Master held a hearing attended by the attorneys for both parties on August 16, 2017. Following the hearing, both parties provided written submissions concerning their positions on the discovery dispute. The Defendant agreed to withdraw objections to several of the discovery requests and supplement his responses. In addition, the Special Master ordered the Defendant to respond to multiple other interrogatories and requests for production of documents that

*Britton McLeod, et al v. David Smith, et al. - Civil Action File No. 015CV260502*
*Supplemental Report and Recommendations of Special Master*

Page 1 of 5

previously had been served and had either inadequate answers or invalid objections. This was communicated to the parties and additionally was set forth in the Special Master Report of September 5, 2017 that was filed with the Court. Defendant was to provide the supplemental responses and produce the documents no later than 5:00 pm on September 11, 2017.

Despite this clear directive, the supplemental discovery responses were not served when due. They were served eight days late following a conference call between the Special Master and the parties on September 19, 2017, after the Plaintiffs complained that the discovery had not been supplemented. In the telephone conference, the attorney for Defendant stated that he had already completed the supplemental responses and that he thought that he had served them. He assured the Special Master that he would send them immediately upon getting to his computer after the conference call. The supplemental responses were not served until 11:55 pm that day, several hours after the conclusion of the conference call. Additionally, it was made clear to the attorney for the Defendant that the responses needed to be verified and he assured the Special Master that they would be verified, either that day or the next. However, to date, no verification has been served. Additionally, Plaintiffs have raised the inadequacy of the responses to the Defendant and the Special Master and the Defendant's attorney stated in writing that the responses were based on the information he had from his client and that he would forward them to his client again and that he "hoped" to have more thorough responses by the end of the day on September 25, 2017. No further responses have been served. Even if they had, they would have been a full two weeks late.

*Britton McLeod, et al v. David Smith, et al. - Civil Action File No. 015CV260502*
*Supplemental Report and Recommendations of Special Master*

Page 2 of 5

While Defendant has served supplemental responses, the Special Master finds that the responses are inadequate, insufficient, evasive, and inconsistent with the directions given to the Defendant by the Special Master and under the Georgia Rules of Civil Procedure. The supplemental responses provide very little information. In addition, of the twenty-one (21) interrogatories responses (there were more actual interrogatories, but some were grouped because of the similarity of the requests) that were to be supplemented, seven (7) of those interrogatories still had no answer whatsoever. That number includes one response in which Defendant stated that he would provide the information at some unspecified time in the future and to date, has not done so. That is considered a non-response. Additionally, eight (8) other responses had incomplete responses, including not providing dollar amounts or dates as requested in the interrogatories. Three (3) of the interrogatories responses stated that the Defendant "did not recall" the information requested in the interrogatory with no explanation of what steps, if any, Defendant had taken to try to find out the information requested. One of those requests, interrogatory number 28, asked him for information about distributions by the company that he controlled, one of the Defendants in this case, to Defendant Smith himself. Yet his response is simply that he does not recall any information about distributions that he may or may not have received. The three requests to which Defendant responded that he did not recall all involved financial information about companies that are parties to this lawsuit and over which Defendant has control. It is not credible that he could not have found out this information from financial records in his custody and control. Only three (3) out of the twenty-one (21)

*Britton McLeod, et al v. David Smith, et al. - Civil Action File No. 015CV260502*
*Supplemental Report and Recommendations of Special Master*

Page 3 of 5

interrogatories that were to be supplemented had what could be characterized as adequate responses.

In response to all of the requests for production of documents that were to be supplemented, Defendant stated that he had no further documents and has produced no supplemental documents. This was the response even to the requests for production of documents that the Defendant had previously objected to and had not produced any responsive documents. As an example, Plaintiffs have been seeking documents concerning the Metropolitan Project. Defendant had objected to those stating that they were not relevant. The Special Master ruled that for the purposes of discovery, these documents were relevant and needed to be produced. Nevertheless, Defendant stated that he has no documents concerning this development project. The Special Master finds it not credible that the Defendant has no documents in his custody and control concerning the Metropolitan Project.

The Special Master finds that the Defendant's actions in the delayed responses to the discovery and in the substance and quality of the discovery responses that were finally served to be in bad faith.

In addition, the Court ordered that the parties deposit money into the registry of Court to pay the fee of the Special Master. Both parties did so. Following this, the Special Master requested that each party deposit an additional $4,000 for fees. Both parties agreed to deliver to the Special Master $4,000 each for him to hold in his escrow account for future bills. The Plaintiffs forwarded their portion to the Special Master. Despite several reminders and assurances from the attorney for the Defendant that his portion would be paid, including a final

*Britton McLeod, et al v. David Smith, et al. - Civil Action File No. 015CV260502*
*Supplemental Report and Recommendations of Special Master*

written notice to Defendant that the payment had to be received by 5:00 pm on Monday, September 25, 2017, to date it has not been received.

The Special Master recommends that, due to the actions of the Defendant, including the objections raised by his previous attorneys that were later withdrawn by his new attorney after the appointment of the Special Master, all of the fees for the Special Master be charged to the Defendant and reimbursed to the Plaintiffs for the portions already paid.

Because of the inadequacy of the responses to the interrogatories, depositions have been postponed in this case and discovery has not been completed. As a result, it is the recommendation and request of the Special Master that the Court hold an immediate hearing on these issues so that discovery can be completed, any appropriate sanctions can be considered, and this case can move forward to resolution.

Respectfully submitted this 26th day of September, 2017.


/s/ Leigh M. Wilco
Leigh M. Wilco, Special Master

*Britton McLeod, et al v. David Smith, et al. - Civil Action File No. 015CV260502*
*Supplemental Report and Recommendations of Special Master*

Page 5 of 5